UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian tribe,<br><br>                       Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>                     Defendant. | NO.<br><br>COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF CONTRACT |

Plaintiff alleges as follows:

## I. PARTIES

1.1     Plaintiff Swinomish Indian Tribal Community (the "Tribe") is a federally recognized Indian tribe organized pursuant to Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. § 476, which occupies the Swinomish Indian Reservation located on Fidalgo Island in Skagit County, Washington.

1.2     Defendant BNSF Railway Company ("BNSF") is a Delaware corporation that regularly conducts business and keeps a registered agent in Washington.

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

## II.  JURISDICTION AND VENUE

2.1     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

2.2     This Court further has original subject matter jurisdiction pursuant to 28 U.S.C. § 1362 because this action is brought by an Indian tribe with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

2.3     This Court has jurisdiction to grant a declaratory judgment pursuant to 28 U.S.C. § 2201, and to grant injunctive relief pursuant to 28 U.S.C. § 2202.

2.4     Venue is proper pursuant to 28 U.S.C. § 1391(b) as the events or omissions giving rise to the claim occurred, and the property that is the subject of the action is situated, in this judicial district.

## III.  FACTUAL ALLEGATIONS

3.1     The Tribe occupies lands set aside as the Swinomish Indian Reservation (the "Reservation"), which is located on the Southeastern end of Fidalgo Island in Skagit County, Washington.  Certain Tribal lands on the Reservation, including those lands that are the subject of this Complaint, are held in trust for the Tribe by the United States.

3.2     BNSF operates a major freight railroad system in Washington and other states.

3.3     The Tribe and BNSF are parties to a Right-of-Way Easement agreement (the "Easement Agreement") dated July 19, 1991, which was reviewed and approved by the Bureau of Indian Affairs of the U.S. Department of the Interior pursuant to 25 U.S.C. §§ 323–28 and 25 C.F.R. Part 169.  The Easement Agreement grants BNSF the right to run a limited number of trains and attached railcars (as further discussed *infra*) across the Reservation.

3.4     The right-of-way easement ("Right-of-Way") granted by the Easement Agreement is located at the far north end of the Reservation.  The Right-of-Way traverses a part of the Reservation uplands that now constitute the heart of the Tribe's economic development enterprises.   The Right-of-Way is in very close physical proximity to multiple

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

elements of the Tribe's economic infrastructure, including the Swinomish Casino and Lodge, a Chevron station and convenience store, and an RV Park, as well as a Tribal waste treatment plant serving all of these facilities and a Tribal air quality monitoring facility.  Hundreds of guests and employees are present at the economic development facilities at all times, 24 hours a day, 7 days a week.  This economic development infrastructure serves as the primary financial source for funding of the Tribe's essential governmental functions and programs.

3.5     Since time immemorial, the Tribe and its predecessors have occupied and used areas of land and water in the Puget Sound region to support its fishing lifestyle, among other purposes, and Pacific salmon and other marine resources have played central and enduring roles in the Tribe's subsistence, culture, identity, and economy.

3.6     The Tribe is a present day political successor-in-interest to certain of the tribes and bands that signed the Treaty of Point Elliott, 12 Stat. 927 (1855), a treaty with the United States that established the Swinomish Reservation and that reserved to the Tribe, as political successor-in-interest to its predecessor tribes and bands, certain other rights, including without limitation the "right of taking fish at usual and accustomed grounds and stations."  *United States v. Washington*, 459 F.Supp. 1020, 1039, 1041 (W.D. Wash. 1978).

3.7     The Right-of-Way crosses a swing bridge over the Swinomish Channel and a trestle across Padilla Bay, both of which are within the Reservation, and both of which are many decades old.  These water bodies connect with other marine waters of Puget Sound in which the Tribe has usual and accustomed fishing grounds and stations as recognized by this Court in *United States v. Washington*, 459 F.Supp. 1020, 1049 (W.D. Wash. 1978).

3.8     The Easement Agreement came about as the result of a judicially approved settlement of a lawsuit in this Court between the Tribe and the United States of America against BNSF's predecessor-in-interest, Burlington Northern, Inc., in which the Tribe and United States alleged that Burlington Northern had been trespassing on the Reservation since the 1890s by running its trains across the Reservation without the Tribe's or the United States'

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 3

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

consent.  The lawsuit was initially captioned *Swinomish Tribal Community v. Burlington Northern Railroad*, United States District Court for the Western District of Washington, Case No. C76-550V.

3.9     In the absence of the Easement Agreement, BNSF would have no legal right to run trains across the Reservation.  Even though BNSF's predecessor(s)-in-interest had constructed and been using a railroad line on Tribal trust lands for many decades without the Tribe's or the United States' permission, the land's status as property held in trust by the United States for the Tribe precluded title to the property underlying the railroad line from vesting in the railroad company via adverse possession or otherwise. BNSF and its predecessors-in-interest could not have obtained the right to cross the Reservation without the consent of the United States and the Tribe.

3.10    Under the terms of the Easement Agreement, BNSF is entitled to use the Right-of-Way for an initial 40-year term, along with two 20-year option periods.  Because the parties executed the Easement Agreement in 1991, it will terminate in accordance with its own terms no later than 2071.  BNSF pays annual rent for its use of the Right-of-Way, which is subject to periodic adjustments based on the value of the property burdened by the Right-of-Way and remainder/severance damage to adjacent Tribal lands.

3.11    The Right-of-Way was granted under the auspices of — and is governed by — 25 U.S.C. §§ 323–28 and 25 C.F.R. Part 169.  Burlington Northern was required by the parties' settlement agreement and by 25 C.F.R. Part 169 to apply to the Bureau of Indian Affairs of the Department of the Interior for formal approval of the Right-of-Way.

3.12    The Easement Agreement places limitations on the number of trains — and the number of cars attached to those trains — that may cross the Right-of-Way each day.  It provides:

> Burlington Northern agrees that, unless otherwise agreed in writing, only one
> eastern bound train, and one western bound train, (of twenty-five (25) cars or
> less) shall cross the Reservation each day. The number of trains and cars shall
> not be increased unless required by shipper needs. The Tribe agrees not to

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 4

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

2a4f6621de989c53

1  arbitrarily withhold permission to increase the number of trains or cars when
2  necessary to meet shipper needs.

Easement Agreement, at ¶ 7(c).

3  3.13    BNSF never notified the Tribe that it intended to exceed the limitation of one
4  train of 25 cars or less, nor did it request permission from the Tribe before it began to do so.

5  3.14    The Tribe learned in 2012 from a media report that the Tesoro refinery at
6  March Point, near Anacortes, Washington — which is served by the BNSF line over the Right-
7  of-Way — had begun to receive "unit trains" of 100 cars or more, each of which had to cross
8  over the Right-of-Way to reach the Tesoro refinery.  BNSF did not seek the Tribe's agreement
9  to run 100-car unit trains on the Right-of-Way in contravention of the Easement Agreement
10  before it began to do so. Although the Tribe promptly informed BNSF of the continuing
11  requirements of the Easement Agreement, and although the Tribe has repeatedly demanded
12  that BNSF immediately cease the unauthorized use, BNSF has failed and refused to do so. The
13  Tribe has never granted BNSF permission to exceed the express limitations contained in
14  Paragraph 7(c) of the Easement Agreement.

15  3.15    BNSF has acknowledged the requirements of the Easement Agreement and the
16  Tribe's demands, but has informed the Tribe in writing, including as recently as March 13,
17  2015, that it will continue running trains over the Right-of-Way at current levels regardless of
18  the acknowledged limitations in the Easement Agreement.

19  3.16    Currently, BNSF is reportedly running six 100-car unit trains per week over the
20  Right-of-Way in each direction.  This is four times as many railcars per day as are permitted
21  under the explicit terms of the Easement Agreement.

22  3.17    BNSF has indicated that the number of tank cars crossing the Reservation will
23  be increased to ten to twelve 100-car unit trains per week in each direction upon completion of
24  a proposed new crude oil off-loading facility at the Shell Oil Products US Puget Sound
25  Refinery located at March Point.

26
27

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

3.18     The substantial increase in train traffic across the Right-of-Way is the result of BNSF's decision to transport large quantities of crude oil to the Tesoro refinery at March Point (and, in the future, to the Shell refinery described in paragraph 3.17).  The 100-car unit trains referenced above are dedicated entirely to the shipping of crude oil, and each unit train carries approximately 2,898,000 to 3,402,000 gallons (69,000 to 81,000 barrels)  of crude oil.

3.19     The particular type of crude oil BNSF is shipping across the Right-of-Way is known as "Bakken" crude ("Bakken Crude"), so named for having originated in the Bakken Shale Formation located in parts of Montana, North Dakota, and southern Canada.

3.20     Crude oil is a notoriously dangerous cargo to ship by rail.  A May 7, 2014 Emergency Restriction/Prohibition Order (Docket No. DOT-OST-2014-0067) (emphasis added) issued by the U.S. Department of Transportation states:

> The number and type of petroleum crude oil railroad accidents described below that have occurred during the last year is startling, and the quantity of petroleum crude oil spilled as a result of accidents is voluminous in comparison to past precedents.  Due to the volume of crude oil currently being shipped by railroads, the demonstrated recent propensity for rail accidents involving trains transporting crude oil to occur, and the subsequent releases of large quantities of crude oil into the environment and the imminent hazard those releases present, this Order requires that railroads take the action described above to assist emergency responders in mitigating the effects of accidents involving petroleum crude oil trains.  **Releases of petroleum crude oil, subsequent fires, and environmental damage resulting from such releases represent an imminent hazard as defined by 49 U.S.C. 5102(5), presenting a substantial likelihood that death, serious illness, severe personal injury, or substantial endangerment to health, property, or the environment may occur**.

3.21     A July 2014 report prepared by the U.S. Pipeline and Hazardous Materials Safety Administration indicates that Bakken Crude is even more dangerous to ship than other types of crude oil.  As that report states:

> [Bakken] crude has a higher gas content, higher vapor pressure, lower flashpoint and boiling point and thus a higher degree of volatility than most other crudes in the U. S., which correlates to increased ignitability and inflammability. The Congressional Research Service has reported that the properties of Bakken shale oil are highly variable, even within the same oil field.

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 6

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

3.22     The United States Department of Transportation has recognized in its May 07, 2014 Emergency Restriction/Prohibition Order "the unique hazardous characteristics of Bakken crude oil and the risks presented by large quantities of this commodity being transported in single trains."

3.23     A U.S. Department of Transportation discussion of mainline train derailments (Pipeline and Hazardous Materials Safety Administration [Docket No. PHMSA-2012-0082] (HM-251) (July 2014)) states:

> There is reason to believe that derailments of HHFTs [high-hazard flammable trains] will continue to involve more cars than derailments of other types of trains. There are many unique features to the operation of unit trains to differentiate their risk. The trains are longer, heavier in total, more challenging to control, and can produce considerably higher buff and draft forces which affect train stability. In addition, these trains can be more challenging to slow down or stop, can be more prone to derailments when put in emergency braking, and the loaded tank cars are stiffer and do not react well to track warp which when combined with high buff/draft forces can increase the risk of derailments.

3.24     Upon information and belief, rail tank cars of two different designs, the DOT-111 and the CPC-1232, are used to transport crude oil.  More than 20 years ago the National Transportation Safety Board ("NTSB") observed that the inadequacy of DOT-111A tank cars for dangerous products "has been evident for many years in accidents investigated by the Safety Board" (NTSB Safety Recommendation R-91-19 at 2), and more recent modeling and simulation shows that the shell of a DOT-111 tank car will puncture at 7.4 mph and the heads at 7.6 mph (July 2014 Draft Regulatory Impact Analysis, Hazardous Materials: Enhanced Tank Car Standards and Operational Controls for High-Hazard Flammable Trains, Notice of Proposed Rulemaking, page 73).

3.25     The NTSB and rail industry representatives have reportedly determined that the CPC-1232 tank car is also not as robust as is needed.  For example, in a March 6, 2014 Senate subcommittee hearing, NTSB vice chairman Christopher Hart testified that "the NTSB is not convinced [the CPC-1232 tank cars] offer significant safety improvements" over the DOT-111 cars.  *Enhancing Our Rail Safety: Current Challenges for Passenger and Freight Rail:*

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 7

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

*Hearing Before the Subcommittee on Surface Transportation and Merchant Marine Infrastructure, Safety, and Security, 113 Cong.,* S. Hrg. 113-376.  At the same hearing, Edward Hamberger, president and chief executive officer of the Association of American Railroads ("AAR"), testified that the AAR believes safety standards for tank cars need to "go beyond" the CPC-1232 standards. *Id.*

3.26    Upon information and belief, since July 1, 2014, Tesoro has been using the CPC-1232 cars for rail shipments of Bakken Crude to the March Point refinery.

3.27    Regardless of the type of railcar used, the transport of crude oil by rail has resulted in repeated and continuing catastrophic derailments, explosions and spills causing death and injury to human populations, destruction of structures, and contamination of aquatic and terrestrial environments, including the following reported events:

    a.    On March 7, 2015, a Canadian National Railway Company train carrying crude oil derailed in northern Ontario, with multiple cars on fire and some leaking oil into a waterway.  A bridge over a waterway had been damaged and five tank cars landed in the water, with some on fire. The accident involved the purportedly "safer" CPC-1232 tank cars.

    b.    On March 5, 2015, a BNSF unit train carrying Bakken Crude derailed near Galena, Illinois. Twenty-one CPC-1232 railcars left the tracks and at least five of them ruptured and caught fire.

    c.    On February 16, 2015, a CSX Transportation, Inc. unit train loaded with Bakken Crude derailed in Fayette County, West Virginia, causing a number of CPC-1232 cars to explode and catch fire, and spilling crude oil into the Kanawha River.

    d.    On July 24, 2014, the locomotive and three tank cars of a BNSF unit train carrying Bakken Crude to the Anacortes refinery derailed in

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 8

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

Seattle, even though the train reportedly was going slower than five mph and derailed while traveling on newly upgraded track.

e.  On April 30, 2014, a 105-car CSX unit train full of Bakken Crude derailed in Lynchburg, Virginia, resulting in another explosive crude oil fire, spilling up to 30,000 gallons of oil from CPC-1232 cars into the James River, and forcing the evacuation around 300 of the town's residents.

f.  On December 30, 2013, a two-train collision near Casselton, North Dakota caused the derailment of a 106-car BNSF unit train carrying Bakken Crude.  Eighteen of the train's DOT-111 cars ruptured and burst into flames, prompting the evacuation of half of the town's residents, and an estimated 400,000 gallons of crude oil was released into the environment.

g.  On November 8, 2013, a unit train hauling 90 DOT-111 tank cars loaded with Bakken Crude derailed near Aliceville, Alabama. Several of the tank cars exploded, and hundreds of thousands of gallons of crude oil spilled into adjacent wetlands.

h.  On July 6, 2013, a Montreal, Maine & Atlantic Railway unit train shipping large volumes of Bakken Crude in DOT-111 cars derailed in the Canadian town of Lac-Megantic, Quebec. The ensuing explosion and fire killed 47 people and destroyed the downtown area of Lac-Megantic.  It wasn't until four days after the accident that the fires finally subsided.

3.28    The Easement Agreement requires BNSF to report at least once annually to the Tribe as to the nature and identity of all cargo transported over the Right-of-Way:

Burlington Northern will keep the Tribe informed as to the nature and identity of all cargo transported by Burlington Northern across the Reservation. Initially, Burlington

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 9

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

> Northern shall prepare a summary of all such commodities expected to cross the Reservation and the quantities of such commodities. Thereafter, the disclosure shall be updated periodically as different products, or commodities, are added or deleted. Such updates shall occur at least annually. The disclosure updates shall identify any previously shipped cargo that is different in nature, identity or quantity from the cargo described in previous disclosures.

Easement Agreement, at ¶ 7(b).

3.29    Since at least 1999, the Tribe regularly requested that BNSF provide an annual summary of all materials transported by BNSF across the Reservation, as required by the Easement Agreement.  Despite these regular requests since 1999, and in contravention of Paragraph 7(b) of the Easement Agreement, BNSF provided the Tribe with just four of the annual update reports required by the Easement Agreement.

3.30    Upon information and belief, BNSF began shipping Bakken Crude over the Right-of-Way sometime in 2012.  However, BNSF never identified, in accordance with Paragraph 7(b) of the Easement Agreement, the materially different nature of the Bakken Crude when it first started shipping it.  The Tribe has never received any written disclosure from BNSF pursuant to the Easement Agreement as to the specific nature of the crude oil being transported across the Right-of-Way, despite the high variability of Bakken crude oil.

3.31    Based on the demonstrated hazards of shipping Bakken Crude by rail, paired with the proximity of the Right-of-Way to the Tribe's critical economic and environmental resources and facilities — and the substantial numbers of people who use those resources and facilities on a daily basis — the Tribe is justifiably and gravely concerned with BNSF's shipment of Bakken Crude across the Right-of-Way in a manner and in quantities at odds with the explicit terms of the Easement Agreement.

3.32    The Tribe's withholding of permission to amend the Easement Agreement to increase the number of trains or cars is not arbitrary.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

## IV.  FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

4.1.    <u>Reallegation</u>.  The Tribe hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

5.    <u>Declaratory Judgment</u>.

5.1    The Easement Agreement contains explicit limitations on the number of trains and attached railcars that may cross the Right-of-Way each day, and authorizes the Tribe to withhold permission to an increase in those limitations, so long as the Tribe's withholding of permission is not "arbitrary."  In addition, the Easement Agreement requires BNSF to report at least once annually to the Tribe as to the nature and identity of all cargo transported over the Right-of-Way.

5.2    There is a real and justiciable dispute between the parties with respect to (1) whether BNSF has materially breached the terms and conditions of the Easement Agreement by failing to abide by the explicit limitations on train traffic contained therein, (2) whether BNSF has materially breached the Easement Agreement by failing to notify and request the permission of the Tribe in advance of its intended expansion of the limited number of trains and cars on the Right-of-Way, and by its continued expanded use over the Tribe's objection thereto, (3) whether BNSF has materially breached the terms and conditions of the Easement Agreement by failing to report at least once annually to the Tribe as to the nature and identity of all cargo transported over the Right-of-Way, and specifically failing to report Bakken crude oil that is different in nature, identity or quantity from the cargo previously transported, and (4) whether, based on the facts alleged herein, the Tribe's withholding of permission for BNSF's increased burden on the Right-of-Way easement is "arbitrary."

5.3    The Tribe is entitled to a declaratory judgment finding and concluding (1) that BNSF has failed to comply with the terms and conditions of the Easement Agreement, and is in material breach thereof, and (2) that the Tribe's withholding of permission to increase

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 11

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

the burden on the Right-of-Way easement is not "arbitrary" and, thus, is fully justified under the terms of the Easement Agreement.

## V.  SECOND CLAIM FOR RELIEF
### (Injunctive Relief)

6.    <u>Reallegation</u>.   The Tribe hereby incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

7.    <u>Injunctive Relief</u>.

7.1    In doing the things herein alleged, BNSF has materially breached the Easement Agreement by (1) exceeding the explicit limitations on train traffic contained in the Easement Agreement and (2) failing to advise the Tribe of the Bakken Crude cargo.

7.2    The Tribe is entitled to a permanent injunction prohibiting BNSF from (1) running more than one train of twenty-five cars or less in each direction over the Right-of-Way per day and (2) shipping Bakken Crude across the Reservation.

## VI.  THIRD CLAIM FOR RELIEF
### (Trespass Damages)

8.    <u>Reallegation</u>.   The Tribe hereby incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

9.    <u>Trespass</u>.   BNSF's overburdening of the Right-of-Way easement constitutes a trespass.

10.    <u>Damages</u>.   As a direct and proximate result of BNSF's trespass, the Tribe is entitled to damages in an amount to be determined at trial.

## VII.  FOURTH CLAIM FOR RELIEF
### (Breach of Easement Agreement)

11.    <u>Reallegation</u>.   The Tribe hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

12.    <u>Breach</u>.   In doing the things herein alleged, BNSF is in material breach of the Easement Agreement.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 ● FAX (206) 682-2992

13.     <u>Damages</u>.   As a direct and proximate result of BNSF's breach, the Tribe is entitled to damages in an amount to be determined at trial.

**VIII.  RELIEF REQUESTED**

The Tribe requests that the Court grant the following relief:

A.     Enter a declaratory judgment finding and concluding that BNSF is in material breach of the explicit limitations and reporting obligations contained in the Easement Agreement;

B.     Enter a declaratory judgment finding and concluding that the Tribe's withholding of permission for an increased burden on the Right-of-Way is not "arbitrary" and, thus, fully justified under the Easement Agreement;

C.     Enter a permanent injunction against BNSF prohibiting it (i) from running more than one train of twenty-five cars or less in each direction over the Right-of-Way per day, and (ii) from shipping Bakken Crude over the Reservation;

D.     Enter judgment against BNSF for trespass in an amount to be proven at trial;

E.     Enter judgment against BNSF for breach of contract in an amount to be proven at trial;

F.     Award attorneys' fees and costs to the Tribe, to the extent allowed by law;

G.     Grant leave to amend the Complaint to conform to the evidence produced at trial; and

H.     Grant such other and further relief as the Court may deem appropriate.

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 13

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 ● FAX (206) 682-2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DATED this 7th day of April, 2015.

**TOUSLEY BRAIN STEPHENS PLLC**

By:  /s/ Christopher I. Brain
     Christopher I. Brain, WSBA #5054
     cbrain@tousley.com

By:  /s/ Paul W. Moomaw
     Paul W. Moomaw, WSBA #32728
     pmoomaw@tousley.com
     1700 Seventh Avenue, Suite 2200
     Seattle, Washington  98101-1332
     T:  206.682.5600
     F:  206.682.2992

**OFFICE OF THE TRIBAL ATTORNEY,
SWINOMISH INDIAN TRIBAL
COMMUNITY**

By:  /s/  Stephen T. LeCuyer
     Stephen T. LeCuyer, WSBA #36408
     slecuyer@swinomish.nsn.us
     11404 Moorage Way
     LaConner, WA  98257
     T:   360.466.1058
     F:   360.466.5309
     *Attorneys for Plaintiff*

COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, TRESPASS, AND BREACH OF
CONTRACT - 14