UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian tribe,<br><br>                              Plaintiff,<br>       v.<br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>                              Defendant. | No. C15-543RSL<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY |

This matter comes before the Court on "Defendant's Motion to Dismiss or Stay." Dkt. # 8. Plaintiff alleges that defendant BNSF Railway Company breached a Right-of-Way Easement Agreement ("Easement Agreement") and asserts claims of breach of contract and trespass. Defendant argues that plaintiff's claims of breach fall under the primary jurisdiction of the Surface Transportation Board ("STB") and should be dismissed without prejudice so that the STB may address certain threshold issues. Defendant also argues that plaintiff's claims for monetary relief should be dismissed because the parties agreed to arbitrate all disputes regarding compensation.

Having reviewed the memoranda, declaration, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS OR STAY

## BACKGROUND

Plaintiff occupies land held in trust by the United States as the Swinomish Indian Reservation ("Reservation"), located on Fidalgo Island in Skagit County, Washington. Complaint (Dkt. # 1) at ¶ 3.1. Defendant operates a freight railroad system with tracks that run along the northern edge of the Reservation. Id. at ¶¶ 3.2, 3.4.

Plaintiff and defendant's predecessor-in-interest, Burlington Northern, Inc., are parties to an Easement Agreement dated July 19, 1991. Plaintiff negotiated and the United States granted the easement in settlement of a long-running lawsuit under the authority of 25 U.S.C. §§ 323-328 and 25 C.F.R. § 169. The Easement Agreement granted defendant the right to run its train operations across the Reservation with certain limitations. Complaint at ¶ 3.3. Unless otherwise agreed in writing, the Easement Agreement restricts the number of trains (one in each direction) and number of cars attached to those trains (twenty-five) that may cross the Right-of-Way each day. Id. at ¶ 3.12; Easement Agreement (Dkt. # 9-2) at ¶ 7(c). It also requires defendant to report to plaintiff at least once a year the nature and identity of the cargo transported over the Right-of-Way. Id. at ¶ 3.28; Easement Agreement at ¶ 7(b).

Plaintiff alleges that defendant breached and continues to breach the Easement Agreement in the following ways: defendant is currently operating six 100-car trains per week over the Reservation in each direction and has not provided annual updates regarding the contents of cargo transported over the Right-of-Way. Complaint at ¶¶ 3.16, 3.29. Defendant has ignored demands that it comply with the Easement Agreement and has indicated that the number of trains and cars traveling across the Right-of-Way will increase when a new crude oil off-loading facility opens at March Point, near Anacortes, Washington. Plaintiff filed this lawsuit seeking (1) declaratory judgment, (2) injunctive relief limiting train traffic across the Right-of-Way and barring transportation of crude oil, (3) trespass damages, and (4) breach of contract damages.

## DISCUSSION

**A. Primary Jurisdiction**

Defendant argues that plaintiff's claims for contract damages and injunctive relief, if successful, would effectively regulate the type and volume of traffic defendant can handle on its rail line and may, therefore, be preempted under 49 U.S.C. § 10501(b). Defendant suggests that enforcing the limitations on the volume or nature of cargo crossing the Reservation set forth in the Easement Agreement may cause defendant to violate its common carrier obligations. Defendant does not seek a judicial resolution of these issues, however, instead requesting that this matter be dismissed or stayed so that the Surface Transportation Board ("STB"), the federal agency that regulates rail carriers, has an opportunity to consider them. Defendant maintains that even if the STB decides that preemption does not preclude plaintiff's claims outright, a referral to the STB is appropriate so that the agency "can provide guidance on the scope and meaning of the federal laws and regulations governing common carriers." Dkt. # 8 at 21.

Defendant relies on the primary jurisdiction doctrine, "a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 780 (9th Cir. 2002). Pursuant to the doctrine, district courts may defer to the agency with regulatory authority over the relevant industry or subject matter if technical or policy questions must be resolved. Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). When determining whether to defer, courts in the Ninth Circuit consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." U.S. v. Gen. Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987). Agency competence or expertise alone is not sufficient, however. Id. at 1363. "Rather, the doctrine is reserved for a limited set of

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS OR STAY           -3-

circumstances that requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 760 (9th Cir. 2015) (internal quotation marks and citations omitted). The Court must also consider whether an agency referral would promote efficiency: if a referral would be futile or would cause needless delay in the resolution of the case, application of the doctrine is not appropriate. Id.

Defendant argues that the STB has expertise regarding the duties of common carriers and is well placed to determine whether the relief plaintiff requests will adversely impact defendant's performance of those duties and/or whether the claim is preempted. Pursuant to § 10501(b) of the Interstate Commerce Commission Termination Act ("ICCTA"), the STB has exclusive jurisdiction over "transportation by rail carriers," and the remedies provided by the act "with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." Courts regularly defer to the STB on issues related to common carrier obligations. Chlorine Institute, Inc. v. Soo Line R.R., 2014 WL 2195180, at *2 (D. Minn. May 27, 2014) (collecting cases). Some courts also refer preemption issues to the STB (Boston and Maine Corp. v. Town of Ayer, 191 F. Supp.2d 257 (D. Mass. 2002)), although most make the determination themselves (Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150 (4th Cir. 2010); Franks Inv. Co. LLC v. Union Pac. R. Co., 593 F.3d 404 (5th Cir. 2010); Green Mountain R.R. Corp. v. Vermont, 404 F.3d 638 (2nd Cir. 2005); B&S Holdings, LLC v. BNSF Ry. Co., 889 F. Supp.2d 1252, 1257 (E.D. Wash. 2012)).

In the context of this case, referral to the STB is neither efficient nor necessary. The preemption issue can be decided by this Court: it is, at base, a legal question that can be resolved without the delay of initiating a separate agency action. Defendant offers no reason to believe that the relevant facts related to its operations are complex or that an intimate knowledge of transportation policy is required to adjudicate the preemption issue. If plaintiff's breach of

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS OR STAY                -4-

contract claim and request for injunctive relief are not preempted, their resolution will require a thorough knowledge of Washington contract law and a balancing of the various interests represented by the ICCTA and the Indian Right-of-Way Act of 1948. Based on defendant's arguments here, it may also be necessary to evaluate whether defendant could have obtained a right to use Reservation land from any source other than the Easement Agreement (which may require an evaluation of various right-of-way enactments dating back more than a century), the resolution of disputes regarding easements granted by the Bureau of Indian Affairs, and the effect of representations made to the Honorable Walter T. McGovern when settling the first action between the parties. While the STB would be able to shed light on the nature of the common carrier's obligations and the importance of uniformity in the regulation of rail transportation, those issues are addressed in the statute and published agency decisions.[1] The STB has no expertise in the other areas of law that will govern the outcome of this case, and in fact has recognized the primacy of the Bureau of Indian Affairs in handling disputes regarding rights-of-way granted by that agency. Alaska R.R. Corp. - Constr. and Operation Exemption - Rail Line Between N. Pole and Delta Junction, FD 34658, 2010 WL 24954, at *57 (STB Jan. 5, 2010).[2] Because the STB is not better equipped to handle the variety of issues that will arise in this action, the Court will not decline the exercise of jurisdiction. Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1164 (9th Cir. 2007).

---

[1] If it later appears that a matter of first impression uniquely within the expertise of the STB exists, a narrower request for referral may be appropriate.

[2] The other cases cited by defendant pertaining to Native American land rights and interests discuss only a process for consulting with the Tribes regarding the impact of railroad operations occurring on neighboring lands.

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS OR STAY             -5-

## B. Improper Venue

Federal Rule of Civil Procedure 12(b)(3) allows a court to dismiss a complaint for improper venue. "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." Scherk v. Alberto-Culver, 417 U.S. 506, 519 (1974). Defendant argues that plaintiff's claims for monetary relief – whether based in contract or in tort – must be resolved through arbitration pursuant to the terms of the Easement Agreement. Plaintiff maintains that the agreement to arbitrate applies to a specific type of dispute in specific circumstances that are not at issue here. At oral argument, the parties agreed to bifurcate issues related to damages in favor of resolving the preemption and liability issues first. The request for dismissal under Rule 12(b)(3) is therefore denied without prejudice to it being raised again should the preemption and liability issues be resolved in plaintiff's favor.

## CONCLUSION

For all of the foregoing reasons, Defendant's "Motion to Dismiss or Stay" (Dkt. #8) is DENIED.

Dated this 11th day of September, 2015.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge