# Exhibit No. 11



IN REPLY REFER TO:

Real Property Mgmt
Tenure & Mgmt.
Burlington Norther
r/w

## United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Western Washington Agency
3006 Colby Avenue - Federal Building
Everett, WA 98201

October 3, 1977

*(stamp: OCT 5 8 03 AM '77 BUREAU OF INDIAN AFFAIRS PORTLAND AREA RECEIVED)*

*(margin: 50186-18)*

Memorandum

To:       Area Director, Portland Area
          Attention:  Real Property Mgmt.

From:     Superintendent, Western Washington Agency

Subject:  Burlington Northern Inc. Application for Railroad Right-
          of-Way across Swinomish Tribal Tidelands.

Enclosed for your information and action is the subject application
along with the stipulation, appraisal, original and two copies of the
map, letter of transmittal dated August 15, 1977 and tribal resolution
#77-08-464, Western Washington interoffice memorandum of April 19, 1977
covering tribal resolution #77-3-431, Western Washington letter dated
September 28, 1977, copy of check #2411 and a copy of Western Washing-
ton letter dated October 3, 1977.

Our letter of September 28, 1977 to Burlington Northern acknowleged re-
ceipt and returned their check certified mail for safe keeping.  The local
review finds this case to be lacking under current CFR regulations in that;

   1.  The appraisal has not been reviewed by the Bureau of Indian
       Affairs appraisal staff.

   2.  The landowners have not concurred.  In fact the tribe organ-
       ized under the IRA has gone on record in tribal resolution
       #77-08463 in requesting removal of said railroad.

As this case is in litigation, please advise if this office can be of
further assistance.

*(signature)*
Superintendent

CONSERVE
AMERICA'S
ENERGY

*Save Energy and You Serve America!*

SITC000008093

# Exhibit No. 12

Native American Rights Fund

1506 Broadway • Boulder, Colorado  80302 • (303) 447-8760

Acting Director
John E. Echohawk

Attorneys
Richard B. Collins
Raymond Cross
Sharon K. Eads
Walter R. Echo-Hawk
Robert B. Greene
Daniel H. Israel
Yvonne T. Knight
Robert S. Pelcyger
A. John Wabaunsee
Jeanne S. Whiteing

Research Associates
Timothy A. LaFrance
Lori V. Roberts

Technical Writer
Lorraine Edmo

Business Manager
James A. Laurie

Washington Office
1712 N Street, N.W.
Washington, D.C. 20036
(202) 785-4166

Attorneys
Lawrence A. Aschenbrenner
Arlinda F. Locklear**
Don B. Miller

Maine Office
37½ Main Street
Calais, Maine 04619
(207) 454-2113

Attorneys
Thomas N. Tureen
Dennis M. Montgomery

*Member of Oregon Bar only.
**Member of North Carolina Bar only.

October 5, 1977

OCT 7 1977

Mr. John Benedetto
Superintendent
Western Washington Agency
Bureau of Indian Affairs
United States Department of the Interior
3006 Colby Avenue - Federal Building
Everett, Washington  98201

> Re: Application by Burlington
> Northern, Inc. for a Railroad
> Right-of-Way Across the
> Swinomish Reservation.

Dear Mr. Benedetto:

We recently received a copy of an application submitted to the Western Washington Agency by Burlington Northern, Inc. for a railroad right-of-way across the Swinomish Reservation. The application states that it is being made pursuant to the Act of March 2, 1899, 30 Stat. 990 (25 U.S.C. §312, et seq.) and that tribal consent is not required even though the Act of February 5, 1948, 62 Stat. 17 (25 U.S.C. §323, et seq.) requires such consent. For some time now the Native American Rights Fund has been representing the Swinomish Tribal Community in negotiations with Burlington Northern for a right-of-way across tribal lands. It is the Tribal Community's position that it is an absolute requirement that tribal consent be obtained before the granting of a right-of-way across Swinomish lands. This position is supported by the applicable statutes and regulations governing rights-of-way across Indian lands and by present federal Indian policies. Enclosed is a memorandum outlining our research on the issue of the necessity of tribal consent for the granting of railroad rights-of-way, particularly where the tribe is organized under the Indian Reorganization Act, 25 U.S.C. §461, et seq. The Swinomish Tribal Community was organized under the Act in the 1930's.

Recently NARF represented the Walker River Paiute Tribe of Indians in a trespass action against Southern Pacific Transportation Company. Subsequent to a Ninth Circuit Court of Appeals decision establishing liability on the part of the

SITC000010994

Mr. John Benedetto
October 5, 1977
Page Two

railroad, Southern Pacific applied to the Western Nevada Agency
for a right-of-way across the Walker River Reservation pur-
suant to the 1899 Act, without tribal consent. The Western
Nevada Superintendancy agreed with NARF and refused to grant
the right-of-way without tribal consent. The matter has
been appealed by Southern Pacific to the Portland Area
Office. The above memorandum was done in connection with
that appeal.

The Swinomish Tribal Community is very concerned
that a right-of-way not be granted to Burlington Northern,
Inc. without the Tribe's consent. If you need any additional
information concerning the Tribe's position, please feel free
to contact me.

Sincerely yours,

Jeanne S. Whiteing

JSW/clr
Enclosure

cc: Landy James, Chairman
    Michael Moyer, Planning Director

SITC000010995

MEMORANDUM

RE:      The Requirement of Tribal Consent for
         Railroad Rights-of-Way

### TRIBAL CONSENT IS A PRECONDITION TO THE
### GRANTING OF A RAILROAD RIGHT-OF-WAY

The Railroad argues that the grant of a railroad right-of-way is governed solely by the terms of the 1899 Act,[1/] and not by the terms of the 1948 Act.[2/]  This is clearly wrong. As a matter of law, the 1899 Act must be construed together with the 1948 Act.  Read together the conclusion is clear that, under present law, tribal consent is a precondition to any railroad right-of-way grant, where the tribe involved is organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461, et seq., and in particular §476.  See, 25 U.S.C. §324.

The legislative history of the 1948 Act shows beyond question that Congress enacted the 1948 Act on the specific recommendation of the Secretary of the Interior that there was a real need "for simplification and uniformity" in the administration of grants of rights-of-way of any nature over Indian lands."  See, S. Rept. No. 823, 1948 U.S. Code and Administrative

---

[1/] Act of March 2, 1899, 30 Stat. 990, 25 U.S.C. §§312, et seq.

[2/] Act of February 5, 1948, 62 Stat. 17, 25 U.S.C. §§323, et seq.

SITC000010996

News 1033, 1036.  The suggestion for a general right-of-way act was initiated by the Secretary of the Interior in a report on a bill dealing solely with the administration of rights-of-way grants over the Osage Reservation.  The Secretary's report suggested "that there is a real need for additional legislation relating not only to the right-of-way on Osage Indian lands but also to the rights-of-way on Indian lands on all reservations . . . ."  S. Rept. No. 823, supra at 1034.  The text of the 1948 Act as finally adopted is the same as the bill drafted by the Secretary and attached to his report and recommendation for general right-of-way legislation.  Id.

The Secretary traced his problems in granting rights-of-way to the fact that his authority to grant any right-of-way

> . . . is contained in many acts of Congress,
> dating as far back as 1875.  Thus, each
> application for a right-of-way over Indian
> land must be painstakingly scrutinized in
> order to make certain that a right-of-way
> sought falls within a category specified
> in some existing statute, which may limit
> the type of right-of-way that may be granted,
> or the character of the land across which
> it may be granted.

Id. at 1036.  The Secretary further pointed out that certain acts were applicable to specific types of Indian lands and not to others for no valid reason.  And finally, the Secretary stated that in many instances when no statutory authority could be found for a particular right-of-way grant, the Secretary was forced to spend an inordinate amount of time and expense obtaining the signatures of all owners of interests in land to obtain an easement deed.  The time and expenses were generally

— 2 —

SITC000010997

not justified by the benefits obtained from the right-of-way.  Id.

Thus, the 1948 Act was specifically designed to address the administrative problems of the Secretary in granting rights-of-way over Indian lands caused by the existence of so many special statutes governing specified rights-of-way over Indian land.  The 1948 Act addresses the problems outlined by the Secretary essentially by vesting in the Secretary the power to make grants of rights-of-way of all kinds across Indian lands as well as the power to establish the conditions for such grants.  Presumably the regulations implementing the Act would simplify and provide uniformity in the granting of rights-of-way across Indian lands.

The 1948 Act does expressly preserve existing statutory authority for rights-of-way, including the 1899 Act. The legislative history reveals that the reason for such preservation was "to avoid any possible confusion which may arise, particularly in the period of transition from the old system to the new . . ." Id.  A second reason was presumably to avoid any question as to the Secretary's authority which might have arisen from a repeal of the preexisting statutes on Indian rights-of-way.[3]

---

[3] Indeed a strong argument can be made that the pre-existing acts were as a matter of law repealed, except to the extent such acts authorized the Secretary to grant specific rights-of-way.  In such an instance, the Secretary would not be bound to adopt as conditions those set forth in the pre-existing acts.

-- 3 --

SITC000010998

Accordingly, the regulations promulgated pursuant to the 1948 Act establish a uniform procedure for the administration of right-of-way grants over Indian lands, but preserve certain provisions of preexisting right-of-way statutes which the Secretary has determined do not affect the uniform administration of right-of-way grants across Indian lands.  See, 25 C.F.R. Part 161.

It is clear from the above described legislative history of the 1948 Act that the intention of Congress was to authorize the Secretary by regulation[4/] to effect the simplifi- and uniformity of the multitide of statutes authorizing rights-of-way over Indian lands, including the 1899 Act.  Moreover, the 1948 Act expressly refers to all such preexisting statutes by stating "nor shall any existing statutory authority empowering the Secretary of the Interior to grant rights-of-way over Indian lands be repealed."  25 U.S.C. §326.  Furthermore, §324 expressly incorporates as part of the 1948 Act the protection afforded tribes organized under the Indian Reorganization Act "to prevent the sale, disposition, lease, or encumbrance of tribal lands, interests in lands, or other tribal assets without the consent of the tribe; . . ."  25 U.S.C. §476.

As stated by the Ninth Circuit in Stevens v. C.I.R., 452 F.2d 741, 744 (1971):

_____

[4/] 25 U.S.C. §328 authorizes the Secretary "to prescribe any necessary regulations for the purpose of administering the provisions of sections 323-327 of this title."

- 4 -

SITC000010999

> Federal policy toward particular Indian
> tribes is often manifested through a
> combination of general laws, special
> acts, treaties, and executive orders.
> All must be construed in pari materia
> in ascertaining congressional intent.
> [Emphasis added.]

The instant case is even simpler because the congressional

intent as to the administration of grants of rights-of-way

over Indian lands is clear from the legislative history and

from the terms of the 1948 Act itself.  Plainly Congress in-

tended that the 1948 Act effectuate a consolidated, simplified

and manageable system of granting rights-of-way across Indian

lands to replace the then existing fragmented and unmanageable

system.  Thus, the 1948 Act, the 1899 Act and all other pre-

existing statutes specially authorizing the grants of rights-

of-way of any nature across Indian lands, and the Indian Reor-

ganization Act of 1934, constitute parts of a single congres-

sional system governing grants of rights-of-way over Indian

lands.  Those statutes are therefore in pari materia and must

be so construed.  See, e.g., Stevens v. C.I.R., supra; Kirkwood

v. Arenas, 243 F.2d 863, 866-867 (9th Cir. 1957); United States

v. Jackson, 280 U.S. 194, 196, 74 L.Ed. 361, 367 (1930); United

States v. Fixico, 115 F.2d 389, 393 (10th Cir. 1940); and

see generally, 2A Sutherland Statutory Construction, §§51.01-

51.05 at 289-320 (1973 Cum.Supp. 1977).

Finally, the following principle of construction is

pertinent to the construction of the 1899 Act and the 1948 Act:

> It is a familiar rule of statutory
> construction that great weight is properly
> to be given to the construction consistently

- 5 -

> given to a statute by the Executive Depart-
> ment charged with its administration
> [citations omitted] and such construction
> is not to be overturned unless clearly
> wrong, or unless a different construc-
> tion is plainly required.

United States v. Jackson, supra at 193.  Accord, Stevens v.
C.I.R., supra at 746.

Construing all applicable statutes together in light
of the intent of Congress in enacting the 1948 Act, and giving
weight to their interpretation by the Department of the Interior
and Interior's long established practice, the conclusion is
inescapable that the consent of tribes organized under 25 U.S.C.
§476 of the Indian Reorganization Act is a precondition to
any grant of a railroad right-of-way across the tribal lands.
This conclusion is, of course, expressly incorporated into
the regulations of the Secretary pursuant to the 1948 Act at
25 C.F.R. §161.3(a) which states:

> No right-of-way shall be granted over
> and across any tribal land, nor shall any
> permission to survey be issued with respect
> to any such lands, without the prior written
> consent of the tribe.

THE 1899 ACT READ TOGETHER WITH 25 U.S.C. §476 OF THE
INDIAN REORGANIZATION ACT MEANS THAT TRIBAL CONSENT IS
A REQUIRED PRECONDITION TO A GRANT UNDER THE 1899 ACT.

Assuming that the 1948 Act does not apply to rail-
road rights-of-way grants, an assumption which we think is
clearly unsupportable, the 1899 Act must nevertheless be read
together with 25 U.S.C. §476 of the Indian Reorganization Act.
25 U.S.C. §476 states in pertinent part:

- 6 -

SITC000011001

> In addition to all powers vested in any
> Indian tribe or tribal council by existing
> law, the constitution adopted by said tribe
> [pursuant to the IRA] shall also vest in
> such tribe or its tribal council the follow-
> ing rights andpowers: . . . to prevent the
> sale, disposition, lease, or encumbrance of
> tribal lands, interests in lands, or other
> tribal assets without the consent of the
> tribe.

In construing the effect of the above language as a

limitation on the granting of rights-of-way across Indian lands,

the Solicitor for the Interior Department in 1936 declared:

> The only limitations which the Reorganization
> Act imposes upon the exercise of authority
> conferred by such specific acts of Congress
> are:  (a) a tribe organized under section 16
> may veto the grant under the broad power
> given it by that section 'to prevent the
> sale, disposition, lease, or encumbrance of
> tribal lands, interests in lands, or other
> tribal assets without the consent of the
> tribe' and (b) a tribe incorporated under
> section 17 may be given the power to make
> such grants without restriction.

Memo. Sol. I.D., September 2, 1936, quoted in Cohen, Handbook

on Indian Law, 105 (1942 ed.).

Based on the above Solicitor's opinion, Cohen in the

1942 edition of the Handbook on Indian Law states:

> [I]t would appear that section 16 of the
> act requires the consent of an organized
> tribe to any grant of right-of-way which
> the Secretary is authorized to make.

Cohen, at 105.

Subsequently, in the 1956 version of Cohen's Handbook,

the Department of the Interior confirms Cohen's opinion by

adding after the previous statement:  "Any doubt that may have

existed [as to whether the IRA requires tribal consent to

- 7 -

grants of rights-of-way] was resolved by the act of February 5, 1948 [25 U.S.C. §324]."  Handbook of Federal Indian Law at 62 (1956 ed.).

Indeed the legislative history of the 1948 Act expressly states that the Act "preserves the powers of those Indian tribes organized under the Indian Reorganization Act of 1934 . . . with reference to the disposition of tribal land." [Emphasis added.]  S. Rept. No. 823, supra at 1036.  The unmistakable implication from this language is that prior to the 1948 Act, IRA tribes had the power to veto grants of rights-of-way of any nature, and Congress wished to make it clear that the 1948 Act did not abrogate that existing power.

Therefore Indian tribes organized under 25 U.S.C. §476 have the power under that section to consent or not consent to any proposed grant of a railroad right-of-way under the 1899 Act.  25 C.F.R. §161.3 simply reflects the existence of that power, and provides a place for it in the procedural scheme of such grants.

SITC000011003

# Exhibit No. 13



Real Property Mgmt.
Tenure & Mgmt.
Pending Right-of-way
Swinomish General

**United States Department of the Interior**

BUREAU OF INDIAN AFFAIRS
Western Washington Agency
3006 Colby Ave., Federal Building
Everett, Washington 98201

October 17, 1978



RECEIVED

OCT 16 1978

Burlington Northern Inc.
Seattle, Washington

Burlington Northern Railroad Company
Attention: Lawrence D. Silvernale,
Associate Regional Counsel
350 Central Building
Seattle, WA 98104

Gentlemen:

The Swinomish Indian Senate in session on October 3, 1978, resolved

that the Swinomish Indian Tribal Community refuses to authorize the

Secretary of the Interior to grant an easement for the right-of-way,

applied for by the Burlington Northern Railroad Company. As tribal

consent is required under both the law and the regulations, we

have no choice but to deny the application.  Accordingly, by copy

of this letter, we will notify our Portland Area Office to return

your original application and attachments thereto without approval.

Sincerely yours,

Superintendent

EXHIBIT A

CONSERVE
AMERICA'S
ENERGY

*Save Energy and You Serve America!*

SITC000006082

# Exhibit No. 14

R E S O L U T I O N   N O  78-10-554

Rejecting Burlington Northern Railroad Company's request for right-of-way across the Swinomish Indian Reservation.

WHEREAS The Swinomish Indian Reservation was established by the Treaty at Point Elliott in 1855, and the Northern boundry was redefined by an Executive Order in 1873; and

WHEREAS the Swinomish Indian Tribal Community is a federally recognized Tribe, organized under a constitution and By-Laws approved by the Secretary of the Interior pursuant to the Indian Reorganization Act; and the Swinomish Indian Senate is the duly constituted governing body of the Swinomish Indian Tribal Community; and

WHEREAS The Seattle and Northern Railroad Company constructed a railroad across tidelands owned by the Swinomish Indian Tribal Community in 1889 without authority from the Commissioner of Indian Affairs and the Swinomish Indian Tribal Community; and

WHEREAS The Burlington Northern Railroad Company is the latest in a continuous stream of successors in-interest to own and use said railroad without proper authorization from the Swinomish Indian Tribal Community, and the United States; and

WHEREAS the Burlington Norther Railroad Company has applied to the Secretary of the Interior for permission to cross Swinomish Indian Tribal Community tidelands, pursuant to the Act of March 2, 1899; and

WHEREAS the Secretary cannot grant such an application without the approval of the Tribe involved; and

WHEREAS The Swinomish Indian Senate has already resolved (Nos. 77-12-487 and 77-08-463) that suit should be brought by the Tribe and the United States against Burlington Northern Railroad Company for ejectment and damages;

NOW THEREFORE BE IT RESOLVED by the Swinomish Indian Senate in session this  3rd  day of  October, 1978, with a quorum present that the Swinomish Indian Tribal Community refuses to authorize the Secretary of the Interior to grant an easement for the right-of-way to the Burlington Northern Railroad Company for the aforesaid railroad located on Swinomish Tribal tidelands.

BE IT FURTHER RESOLVED that the Senate does hereby renew Resolutions # 77-12-487 and 77-08-463, urging the United States government to inter immediate action in its capacity as our trustee to remove the trespasser, Burlington Northern Railroad Company from our Tribal tidelands

_____
Landy James, Chairman
Swinomish Indian Senate

_____
Nancy Wilbur, Secretary

R E S O L U T I O N  #  _ _78-10-554_ _ _ _


C E R T I F I C A T I O N


As Secretary of the Swinomish Indian Senate, I
hereby certify that the above resolution was enacted
at a regular meeting of the Swinomish Indian Senate,
held at LaConner, Washington, on the        day of
1978, at which time a quorum was present, by a vote
of    7    for and   0      against.


_____
Nancy Wilbur, Secretary
Swinomish Indian Senate

SITC000005449

# Exhibit No. 15

1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                   WESTERN DISTRICT OF WASHINGTON

10

11   SWINOMISH TRIBAL COMMUNITY,        )
                                        )
12                       Plaintiff,     )      No.
                                        )
13        v.                            )
                                        )      COMPLAINT FOR INJUNCTIVE
14   BURLINGTON NORTHERN, INC.,         )      AND DECLARATORY RELIEF
                                        )
15                       Defendant.     )
     _____)
16

17        The plaintiff, Swinomish Tribal Community, alleges:

18        1.   This Court has jurisdiction in this matter pursuant to

19   28 U.S.C. §§ 1362 and 1331.  The matter in controversy exceeds,

20   exclusive of interest and costs, the sum of Ten Thousand Dollars

21   ($10,000.00).

22        2.   Declaratory and injunctive relief is requested

23   pursuant to 28 U.S.C. §§ 2201 and 2202.

24        3.   Plaintiff Swinomish Tribal Community is the successor

25   in interest to certain tribes, bands, and groups of Indians which

26   were parties to the Treaty of Point Elliott.  The Swinomish Tribal

SITC000004327

1   Senate is duly recognized by the Secretary of the Interior as the
2   governing body of the Swinomish Indian Reservation and is organized
3   pursuant to § 16 of the Indian Reorganization Act of June 18, 1934,
4   48 Stat. 987, 25 U.S.C. § 476.

5        4.   Defendant Burlington Northern, Inc. is a corporation
6   incorporated under the laws of the State of Delaware and is duly
7   licensed and doing business within the State of Washington as a
8   railway carrier.

9        5.   The Swinomish Indian Reservation was established by
10  the Treaty of Point Elliott between the United States and the
11  Dwamish, Suquamish, and other allied and subordinate tribes of
12  Indians in Washington Territory, dated January 22, 1855, ratified on
13  March 8, 1859, proclaimed by the President on April 11, 1859.
14  12 Stat. 927.  The Treaty of Point Elliott (Article 2) secured and
15  confirmed the Swinomish Tribal Community's predecessors in the
16  possession of a portion of their aboriginal lands described as "the
17  peninsula at the southeastern end of Perry's Island called
18  Sh'ais-quihl".  The Reservation includes, at a minimum, the western
19  one-half of the Swinomish Channel on the east and all surrounding
20  and adjacent tidelands.

21       6.   During all times since 1855, the tidelands surrounding
22  and adjacent to the upland portions of the Swinomish Indian
23  Reservation were, and are, held in trust by the United States on
24  behalf of the Swinomish Tribal Community.

25       7.   A railway and bridge and appurtenant facilities were
26  constructed across the Swinomish Channel and the tidelands on the

COMPLAINT - 2

SITC000004328

1  northern portion of the Swinomish Indian Reservation by the Seattle
2  and Northern Railway Company in 1890.  Burlington Northern, Inc. is
3  the successor in interest to the Seattle and Northern Railway
4  Company.  The railway is presently in use and is maintained and
5  operated by Burlington Northern, Inc.

6       8.  No grant of a right-of-way across the tribally owned
7  tidelands has been made by the Swinomish Tribal Community or the
8  United States to defendant Burlington Northern, Inc. or its
9  predecessors.  Burlington Northern, Inc. and its predecessors have
10 been trespassing on these lands from 1890 to the present.

11       9.  By constructing the railway through tribal lands, the
12 defendant gained the benefit of greatly reduced cost in the
13 construction and annual maintenance of the railway.  Such benefit
14 would not have been gained if the railway facilities had been
15 constructed north of the Reservation.  As a result of said wrongful
16 use and occupation of tribal lands, Burlington Northern, Inc. and
17 its predecessors have been unjustly enriched.

18       10.  By constructing the railway through these tribal
19 tidelands, the defendant severely damaged a prime traditional mussel
20 and shellfish gathering grounds of the Indians residing on the
21 Swinomish Indian Reservation.

22       11.  Plaintiff has no adequate remedy at law to protect
23 itself from said future and presently continuing trespasses except
24 by filing a multiplicity of suits.  In addition, there is a grave
25 danger of irreparable damage to the land and the fishery in Padilla
26 Bay and the Swinomish Channel, upon which the Swinomish Tribal

COMPLAINT - 3

SITC000004329

1  Community relies as their major source of economic stability, should

2  a derailment or accident occur.

3      WHEREFORE, plaintiff Swinomish Tribal Community prays for

4  the following relief against defendant Burlington Northern, Inc.:

5      1. A permanent injunction against the continuing trespass

6  by defendant;

7      2. A judgment against defendant for the possession of

8  said tidelands and channel;

9      3. Monetary damages for trespass, unjust enrichment of

10  the defendant and/or restitution for use and occupation of the land;

11  and

12      4. For costs and such further and additional relief as

13  the Court may deem necessary.

14      DATED:  July 18th, 1978.

15            Respectfully submitted,

16            SHARON K. EADS
          ROBERT S. PELCYGER

17            Native American Rights Fund
          1506 Broadway

18            Boulder, Colorado  80302
          (303) 447-8760

19

20            By _____
            Sharon K. Eads

21

22            PETER J. WILKE
          Swinomish Tribal Community

23            P. O. Box 416
          La Conner, Washington  98257

24            (206) 466-3185

25            By _____
            Peter J. Wilke

26            Attorneys for Plaintiff

COMPLAINT - 4

SITC000004330

# Exhibit No. 16

STATE OF WASHINGTON ) ss.
COUNTY OF KING )

The undersigned, being first duly sworn, on oath states:
That on this day affiant deposited in the mails of the United States
of America a properly stamped and addressed envelope direct-
ed to the attorneys of record of plaintiff defendants containing
a copy of the document to which this affidavit is attached.

Morris J. Bates

Subscribed and Sworn to before me this 13 day of January
19 78.

Jane B. Gough
Notary Public for Washington
Residing at Seattle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SWINOMISH TRIBAL COMMUNITY,       )
                                  )
              Plaintiff,          )        NO. C78-429V
                                  )
       vs.                        )        ANSWER AND COUNTERCLAIM
                                  )        FOR INJUNCTIVE AND
BURLINGTON NORTHERN INC.,         )        DECLARATORY RELIEF
                                  )
              Defendant.          )
                                  )

COMES NOW defendant Burlington Northern Inc., and in answer to plaintiff's complaint states as follows:

I.

Answering paragraphs 1, 2, 3 and 4 of plaintiff's complaint, defendant admits the same.

II.

Answering paragraphs 5, 6, 7, 8, 9, 10 and 11 thereof, defendant denies each and every allegation therein contained.

WHEREFORE, defendant prays that the plaintiff's complaint be dismissed and that defendant recover its costs.

FOR FURTHER ANSWER AND BY WAY OF AFFIRMATIVE DEFENSE, defendant alleges:

WOODROW L. TAYLOR
LAWRENCE D. SILVERNALE
GEORGE C. INMAN, JR.
ROBERT C. WILLIAMS
GERALD A. TROY
350 Central Building
Seattle, Washington 98104
Telephone:  (206) 625-6444

ANSWER AND
COUNTERCLAIM - 1

I.

Burlington Northern Inc. holds a right of way for railroad and telegraph purposes as constructed at all points on or adjacent to said Swinomish Indian Reservation.

II.

If Burlington Northern's right of way for railroad crosses lands over which it does not have record ownership, easement or other interest, there exists an implied license for said right of way.

III.

If Burlington Northern's right of way for railroad crosses lands owned by or held for the benefit of plaintiff, defendant has a valid right of way pursuant to the terms and provisions of the said Treaty of Point Elliott, which provides in part in Article 2:

"If necessary for the public convenience, roads may
be run through the said reserves, the Indians being
compensated for any damage thereby done them."

IV.

If defendant's right of way for railroad crosses lands owned by or held for the benefit of plaintiff, defendant has obtained an easement for right of way purposes by the construction of its railway in 1890 and its application for right of way under the Act of March 2, 1899 (25 U.S.C. 312 et seq., or other applicable statutory right of way grants.

V.

The claims of the plaintiff are barred by laches, estoppel, waiver and the running of the applicable statutes of limitation.

VI.

If it be determined that defendant railroad has no valid right of way and that the lands over which it operates are owned

ANSWER AND
COUNTERCLAIM - 2

SITC000004352

by or held for the benefit of the plaintiff, and further that plaintiff Tribal Community's consent to railroad right of way is essential, said plaintiff Tribal Community has arbitrarily and capriciously refused its consent in violation of the U.S. Constitution and the Indian Civil Rights Act, 25 U.S.C. 1302.

VII.

In respect to areas occupied by defendant's bridge and approaches over the Swinomish Channel, such premises constitute navigable waters of the United States subject to the jurisdiction of the United States Government, and defendant's bridge and approaches were lawfully constructed with plaintiff's knowledge and consent pursuant to a valid Federal permit.

VIII.

The plaintiff has failed to state a claim upon which relief can be granted.

CROSS-COMPLAINT OF BURLINGTON NORTHERN
FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

I.

This court has jurisdiction in this matter pursuant to 28 U.S.C. 1331, 1332, 1343(4) and 1362.

II.

Declaratory and injunctive relief is requested pursuant to 28 U.S.C. 2201 and 2202.

III.

Burlington Northern (hereinafter BN) is a Delaware corporation which owns and operates a transcontinental line of interstate common carrier railroad through, over and across the United States and Canada.  The railroad line herein disputed is an integral part thereof and substantial shippers, receivers and communities rely on the rail service provided.

ANSWER AND
COUNTERCLAIM - 3

FORM 25029

SITC000004353

1     Cross-claim defendant is the governing body of the
2 Swinomish Indian Reservation organized under 25 U.S.C. 476
3 (hereafter referred to as Tribal Community).

4                              IV.

5     In the vicinity of the tidelands and Swinomish Channel
6 herein involved, said railroad was located and constructed in
7 1890 by BN's predecessor.  BN has a valid easement for railroad
8 and telegraph right of way purposes over and across said premises
9 pursuant to said location and construction, pursuant to said
10 treaty and the general right of way statutes or other basis as
11 pleaded by BN in its affirmative defenses to Tribal Community's
12 complaint.

13                              V.

14     The Tribal Community has no right, title or interest in or
15 to said tidelands and channel, or if said Tribal Community has
16 an interest in said tidelands or channel, said Tribal Community
17 has acquiesced in the location, construction and reconstruction
18 of BN's railroad and telegraph lines, or alternatively, said
19 Tribal Community's refusal to consent to said right of way con-
20 stitutes an arbitrary and capricious exercise of discretion in
21 violation of 25 U.S.C. 1302.

22                              VI.

23     The Tribal Community has, since 1975, embarked upon a
24 program of attacking holders of public utility, pipeline, rail-
25 road and other rights of way on or near said reservation with
26 threats to interfere with said public utility, pipeline or
27 railroad operations.  Said activities include threats to inter-
28 fere with BN operations and demands for payment of large sums
29 of money for tribal consent to the continuation of said rights
30 of way.

31
32 ANSWER AND
   COUNTERCLAIM - 4

FORM ····

SITC000004354

VII.

The construction and operation of BN's railroad right of
way over and across the tidelands in question since 1890 has
resulted in significant benefits to the Tribal Community in
that the Tribal Community's lands are served by railroad facili-
ties and such facilities have permitted the Tribal Community to
develop an industrial site adjacent to said railroad premises.

VIII.

BN has no adequate remedy at law to protect itself from
future and continuing threats to interfere with its operations.
Temporary or permanent interruption of BN's common carrier
railroad operations and service to the Tribal Community's lands
and to railroad users east and west of said reservation would re-
sult in irreparable damage to the shipping and receiving public,
several communities, BN and to the citizens of the United States.

WHEREFORE, Burlington Northern prays for the following
relief against said Swinomish Tribal Community:

1. A permanent injunction against activities or threats to
interfere with BN's railroad right of way and railroad operations.

2. A judgment against said Tribal Community for the pos-
session and use of said railroad and telegraph right of way.

3. Monetary damages in amounts to be proved for the Tribal
Community's wrongful interference with BN's operation of its
railroad right of way.

4. For costs and such further and additional relief as
the court may deem necessary.

DATED this 11 TH day of September, 1978.

_Lawrence D. Silvernale_
Lawrence D. Silvernale
Of Attorneys for Defendant
and Cross-Claim Plaintiff
Burlington Northern Inc.

ANSWER AND
COUNTERCLAIM - 5

FORM 25028

SITC000004355

# Exhibit No. 17

**BURLINGTON NORTHERN**

Woodrow L. Taylor, 625-6441
*Regional Counsel*

Lawrence D. Silvernale  625-6444
*Associate Regional Counsel*

George C. Inman, Jr.   625-6440
Robert C. Williams     625-6447
*Assistant Regional Counsel*

Gerald A. Troy         625-6448
*General Attorney*

November 10, 1978

Area Director
Bureau of Indian Affairs
P.O. Box 3621
Portland, Oregon  97208

Dear Sir:

Enclosed is the appeal of Burlington Northern Inc. from
the decision refusing to file an application for right
of way through the Swinomish Indian Reservation, Washington.

Very truly yours,

Lawrence D. Silvernale
Associate Regional Counsel

LDS/mb

Encl.

cc: Mr. P. P. Threestars
    Office of the Solicitor, Portland Region
    Ms. S. K. Eads, Native American Rights Fund
    Mr. P. J. Wilke, Swinomish Tribal Community

Burlington Northern Inc. / 350 Central Building / Seattle, Washington 98104

SITC000006088

1  Woodrow L. Taylor
   Lawrence D. Silvernale
2  350 Central Building
   Seattle, Washington  98104
3  Telephone:  (206) 625-6444

4  Attorneys for Appellant

5

6

7                    DEPARTMENT OF THE INTERIOR
                     BUREAU OF INDIAN AFFAIRS

8

9  In the Matter of Appeal of    )
   Burlington Northern Inc. from  )
10 Decision Refusing to File an   )
   Application for Right of Way   )
11 Through the Swinomish Indian   )
   Reservation, Washington.       )
12 _____)

13

14            APPEAL OF BURLINGTON NORTHERN INC.

15

16     Burlington Northern Inc. (hereinafter BN or Appellant) ap-

17 peals to the Area Director from the decision of October 17, 1978,

18 of the Superintendent of the Western Washington Agency to reject

19 for filing Burlington Northern's application for railroad right

20 of way through tribal lands of the Swinomish Indian Tribal Com-

21 munity in the Swinomish Indian Reservation, Washington.

22

23                  STATEMENT OF THE CASE

24

25     Burlington Northern Inc. tendered for filing on September

26 27, 1977, with the Western Washington Agency an application for

                            - 1 -

SITC000006069

a railroad right of way under the Act of March 2, 1899, Chapter 374, 30 Stat. 990 (25 U.S.C. 312 et seq.), through the tribal land within the Swinomish Indian Reservation.  Duplicate origi- nals of the application, original tracing linen and reproductions of the map of definite location and all other documents tendered to the Agency, including voucher for payment of estimated com- pensation, are herewith re-tendered to the Area Director accom- panying this appeal.[1]

By letter dated October 17, 1978, copy attached as Exhibit A, the Superintendent of the Western Washington Agency refused to file the foregoing documents, advising that without tribal consent he had no choice but to deny the application and that with a copy of his letter he notified the Portland Area Office to return BN's original application and attachments thereto with- out approval.  Although the original application with attachments has not as yet been returned to Burlington Northern, BN treats the Superintendent's letter as a rejection of its application.

By letter dated November 2, 1978, received by the Agency on the 3rd day of November, 1978, BN filed with the Superintendent its timely notice of appeal of the decision rejecting the tendered filing.  Copy of the notice of appeal is attached as Exhibit B. Also filed with this appeal is a certificate of service of the notice of appeal on interested parties, attached as Exhibit C.

---

[1]As of this writing Appellant's original application and attached documents have not been returned.  All will be resubmitted to the Area Director when or if returned.  Appellant's voucher for pay- ment of estimated compensation is herewith resubmitted.

- 2 -

SITC000006070

STATEMENT OF FACTS

The railroad in question was constructed in 1890 by the Seattle and Montana Railroad Company.  The line was subsequently acquired by Great Northern Railway Company, which, through merger, became Burlington Northern Inc. in 1970.  In recent years the Swinomish Indian Tribal Community, represented by attorneys from a group known as the Native American Rights Fund, has contended that BN does not have a valid right of way over and across tide-lands adjacent to the Swinomish Indian Reservation.  Although BN believes it has a valid right of way over the tidelands in ques-tion and further that the Swinomish Tribe does not own the tide-lands, nevertheless BN seeks, by its application for right of way, to put to rest any question as to right of way ownership.

The application and map rejected by the Western Washington Agency Superintendent seeks rights only through tribal land and does not affect allottee land.  The application is for a 60 foot right of way 3,029 feet long plus a right of way over the Swinomish Slough and for telephone and telegraph lines along the right of way.  The application is filed under the Act of March 2, 1899, Chapter 374, 30 Stat. 990 (25 U.S.C. 312 et seq.).

STATEMENT OF REASONS IN SUPPORT OF APPEAL

The reason given for rejection of the filing as set forth in the attached letter of the Superintendent is lack of tribal

- 3 -

SITC000006071

1   consent to the grant.   In response to this objection, Appellant

2   states as follows:

3        I.   Tribal consent to the grant is not required because the

4   Act of 1899 is a grant in praesenti, not conditioned on such

5   consent.

6        The language of the Act of 1899 is that of a grant in

7   praesenti:  "A right of way for a railway, telegraph and tele-

8   phone line through any Indian reservation . . . is granted to

9   any railroad company . . ."  Act of March 2, 1899, Chapter 374,

10  Section 1, 30 Stat. 990 (25 U.S.C. 312) (emphasis ours).   The

11  operation of grants in praesenti was well understood at the time

12  of passage of the 1899 Act.   The language imports a present grant.

13  It passes a present title, not a promise to transfer one in the

14  future.   Schulenberg v. Harriman (1875), 21 Wall. 44; St. Paul &

15  P. R. v. Northern Pac. R. (1891), 139 U.S. 1.   If one or more of

16  the factors necessary to attachment of the grant is lacking, e.g.,

17  lack of definite grantee or route, when these items become ascer-

18  tained the grant attaches.   Jamestown & Northern R. v. Jones

19  (1900), 177 U.S. 125.   By way of comparison, in practically con-

20  temporaneous legislation Congress adopted for highways through

21  reservations a system, not of a present grant, but of discre-

22  tionary permission from the Secretary.   Act of March 3, 1901,

23  Chapter 832, Section 4, 31 Stat. 1084 (25 U.S.C. 311).

24       In response to the foregoing contention, the 9th Circuit

25  held, in United States v. Southern Pacific Transportation Company

26  (CA 9-1976) 543 F.2d 676, not that the Act is not a grant in

— 4 —

SITC000006072

praesenti, but that merely filing articles of incorporation is
not sufficient, and that, "the grantee must in addition comply
with all the provisions of the Act including the requirements
that maps be filed and approved and that compensation be paid
to the Indians."  Indeed, in view of the many Supreme Court cases
construing like acts, the 9th Circuit could hardly hold that the
Act of 1899 was not a grant in praesenti.  The effect of tender-
ing the instant application is to comply with all the provisions
of the Act, i.e., maps, compensation, etc.  Translated into con-
temporary terms, when all the requirements of the Act are met,
the in praesenti effect is to remove from the Secretary any dis-
cretion he might have.  The grantee becomes entitled to the
legislative grant.  On the one hand, tribal consent is not called
for by the Act, while on the other hand, all the requirements of
the Act (and of the 9th Circuit's interpretation of it) are met
by the application and map which have been tendered.

II.  Tribal consent is not required by the Act.  The regula-
tion requiring it is inconsistent with the Act.

25 CFR 161.3 states, "No right-of-way shall be granted over
and across any tribal land . . . without the prior written con-
sent of the tribe."

A reading of the terms of the Act discloses the first impor-
tant fact about this regulation:  nowhere does the Act call for
tribal consent.  In contrast, other acts granting rail rights of
way in Indian reservations do call for tribal consent.  Act of

- 5 -

SITC000006073

1  July 26, 1866, 14 Stat. 289, Section 8.   Thus Congress chose not

2  to impose a consent requirement in this general Act.

3       In the second place, because of its in praesenti mode, for

4  the Secretary to impose additional substantive requirements not

5  present in the Act itself thwarts the operation of the Act, and

6  is thus inconsistent with it.

7       Finally, a comparison of the Act of 1899 with the Right of

8  Way Act of 1948 (Act of Feb. 5, 1948, Chapter 45, 62 Stat. 17,

9  25 U.S.C. 323 et seq.) indicates that Congress reaffirmed its

10 decision not to require tribal consent under the 1899 Act.   The

11 1948 Act specifically provides that as to certain recognized

12 tribes, "No grant of a right-of-way . . . shall be made without

13 the consent of the proper tribal officials." (25 U.S.C. 325).

14 In contrast the Act of 1899 requires, "In case objection to the

15 granting of such right of way shall be made, said Secretary shall

16 afford the parties so objecting a full opportunity to be heard."

17 (25 U.S.C. 312).   Objecting parties were granted a hearing, but

18 not a veto by withholding consent.   Congress expressly kept ex-

19 isting acts on the statute books.   The Act of 1948 states:

20        " . . . nor shall any existing statutory authority
          empowering the Secretary of the Interior to grant
21        rights-of-way over Indian lands be repealed."
          25 U.S.C. 326
22
   The regulation requiring tribal consent is thus inconsistent with
23
   and outside the scope of the Act of 1899, and not reasonably
24
   necessary to effectuate the purposes of the Act.
25
        The legislative history of the 1948 Act contained in the
26
   U.S. Code and Congressional Report clearly evidences an intent

                              - 6 -

that the 1899 and other specific right of way acts were neither
superseded nor repealed by the 1948 Act.  In addition to the
specific proviso preserving the existing acts, the official
Bureau of Indian Affairs explanation to Congress in a letter
written to the President of the Senate on July 22, 1947, 1948
U.S. Code/Congressional Report, pp. 1036, 1037, Undersecretary
of the Interior Oscar Chapman explained that the purpose of the
bill was to simplify and liberalize the process of approving
right of way applications in specific situations, while at the
same time preserving all existing statutory authority relating
to rights of way over Indian lands.  The most that can be said
of the 1948 statute is that it gave the Department of the Interior
a procedure for simplifying right of way grant procedures in cir-
cumstances where prior statutory authorities were complex or
conflicting and where the tribe consented to the grant.

This issue was before the 9th Circuit in Nicodemus v. W.W.
Power, 264 F.2d 614.  There the Indian allottees argued that
Section 323 of Title 25 (the 1948 Act) provided the exclusive
method of obtaining a power line easement and that the consent
of the Secretary of the Interior was a prerequisite.  The 9th
Circuit held that Congress had provided two methods of acquisi-
tion of such easements and that the subsequent enactment of the
1948 law did not repeal or diminish the right of condemnation
granted in the Act of 1901 (25 U.S.C. 357).

IV.  Under the facts of this case it would be an abuse of
discretion for the Secretary to deny the legislative grant.

- 7 -

SITC000006075

1    Assuming, arguendo, that the Secretary has discretion to
2  refuse the legislative grant even after all the requirements of
3  the Act have been met, it would be an abuse of discretion for him
4  to do so in the facts of this case.  The "facts" which Appellant
5  is prepared to prove are as follows:

6        The rail line has been in continuous operation since
7        1890.  No additional operations or uses have been im-
8        posed that have not been present for the entire life
9        of every person who might be affected by the presence
10       of the line.  The people in the reservation are not
11       subjected to any greater danger, noise, etc., than
12       any other persons situated near the Burlington
13       Northern's line in any other rural community.

14

15       Although the Swinomish Tribal Community is duly rec-
16       ognized by the Secretary of the Interior as the gov-
17       erning body of the Swinomish Indian Reservation or-
18       ganized pursuant to Section 16 of the Indian Reor-
19       ganization Act of June 18, 1934, 48 Stat. 987, 25
20       U.S.C. 476, and presumably has long had knowledge
21       of its claim to own the tidelands adjacent to said
22       reservation, said tribe made no effort to oppose or
23       alter the U.S. Army Corps of Engineers' permit for
24       the reconstruction of Appellant's railroad bridge
25       in 1950.

26

- 8 -

SITC000006076

This railway line provides the only rail service to
Anacortes, Washington, a substantial community which
includes numerous rail-served industries, including
two large oil refineries.  Said Swinomish Tribal Com-
munity permitted persons in the vicinity of Anacortes
to make large investments in plants and facilities
located on the railroad line providing a significant
source of employment to that community.  Such indus-
tries are economically tied to rail service for their
continued existence.

This railway line provides the only rail service to
the Swinomish Indian Reservation and to Anacortes and
its vicinity.  The United States Government has
granted the Swinomish Tribal Community substantial
sums ($750,000) for the development of an indus-
trial park adjacent to Appellant's line of railway.
The grant was predicated in substantial part on the
availability of rail service--the very service to
which the Tribal Community now arbitrarily and un-
reasonably refuses its consent to a right of way
grant.

In view of the extraordinary costs of new rail con-
struction and the fact that any railroad to Anacortes
must pass over the Swinomish Indian Reservation or

- 9 -

SITC000006077

1   its claimed tidelands, it is impossible to provide

2   rail service to said reservation or Anacortes,

3   Washington, without crossing reservation owned or

4   claimed lands.

5

6        In view of the foregoing, if the Secretary has discretion to

7   deny the legislative grant, it would be an abuse of discretion

8   for him to do so.

9        Moreover, if one argues that the Secretary has an area of

10  discretion, this becomes an additional argument against the

11  validity of the regulation requiring tribal consent.  An agency

12  with discretionary power to decide cases must act case by case

13  and may not limit its discretion by general rules.  Work v.

14  United States ex rel. Mosier (1923) 261 U.S. 352; Herkness v.

15  Irion (1928) 278 U.S. 92.  Here the regulations (requiring tribal

16  consent) is outside anything required by the legislation and acts

17  to thwart the proper exercise of any discretion.

18       If the Secretary has an area of discretion to reject Ap-

19  pellant's application for right of way under the Act of 1899, it

20  is a manifest abuse of discretion to deny the application for

21  lack of tribal consent based solely on Appellant's refusal to

22  meet the tribe's exorbitant compensation demands.  The Act of

23  1899 in 25 U.S.C. 314 makes specific provision for the method

24  of appraisement by disinterested referees subject to further

25  de novo review by either party if dissatisfied.

26

- 10 -

SITC000006078

1   Where, as here, the refusal of tribal consent is predicated

2   entirely on a dispute as to the amount of compensation for past

3   and future occupancy, the Secretary abuses its discretion in re-

4   fusing to accept the application for filing, rather than proceed-

5   ing to an appropriate determination of compensation under Section

6   314.  Attached as Exhibit D is a copy of the land appraisal pre-

7   pared by Appellant's M.A.I. appraiser showing just compensation

8   at $20,858.  Attached as Exhibit E is a letter written on behalf

9   of the tribe demanding compensation which converted to present

10  value exceeds one million dollars for a right of way lease which

11  expires in 40 years.

12      IV.  Other reasons given for rejecting the application are

13  erroneous.

14      If the reason for rejecting the application is that it

15  should be made under the 1948 Act, such reason is erroneous.

16  The Department cannot repeal the 1899 Act any more than it can

17  refuse to observe and administer it.  Congress declined to remove

18  this legislation (i.e., the method of the 1899 Act) from the

19  statute books.

20      As will be seen from the application itself, the stipula-

21  tions required by the regulations in connection with the 1899

22  Act were all agreed to.  See 25 CFR 161.23 and the attached ap-

23  plication.  Regulation 161.23 specifies that grants under the

24  1899 Act will be subject to "other pertinent sections" of part

25  161, but the "stipulations" of 161.5 are not "other sections",

26  and nowhere do the regulations specify what "other" sections are

- 11 -

SITC000006079

1   pertinent.  Additionally many of the stipulations of 161.5 are

2   duplicative of those found in 161.23, and others have to do with

3   original construction, obviously not pertinent here.  Therefore,

4   by the Department's own regulations the stipulations of 161.5 are

5   not applicable to grants under the Act of 1899.

6       V.  The Act of 1899 can apply to railroads already con-

7   structed at the time of passage of the Act.

8       It is anticipated that the Tribe will contend that the Act

9   of 1899 cannot apply to a railroad already constructed at the

10  passage of the Act.  Such arguments are based on interpretations

11  of the language of the Act.  All such linguistic arguments were

12  laid to rest by the holding of the 9th Circuit in United States

13  of America v. Southern Pacific Transportation Company, (CA 9-

14  1976) 543 F.2d 676, where the court reviewed such contentions

15  and held:

16      "We do not find much assistance in this language (of
        the Act), however.  Some of the provisions cited do
17      not refer to construction at all but only specify
        conditions precedent . . . This provision by itself
18      (for filing of maps and payment of compensation)
        does not preclude the grant's becoming effective
19      long after construction of the railroad.

20      Other provisions seem to presume that the railroad
        is to be constructed in the future without neces-
21      sarily precluding application of the Act to an ex-
        isting railroad."

22
23  Thus such contentions have been rejected by the 9th Circuit.

24      Although the court in the Walker River Paiute case declined

25  to rule directly, the court's opinion is heavily suggestive that

    the Act should apply.  For example, the court notes that the
26

                              - 12 -

SITC000006080

1  General Right of Way Act of 1875 has been held to apply to rail-
2  roads constructed before 1875, citing Rio Grande R. R. v.
3  Stringham (1910) 38 Utah 113, 110 Pac. 868, affirmed, 239 U.S.
4  44 (1915).

5      More importantly, the 9th Circuit seems to say that all
6  other considerations militate toward applicability of the Act.
7  The court noted:

8      "The only alternatives to obtaining a right-of-way
       under the 1899 Act would be to seek a special act
9      of Congress or to forego a right-of-way altogether.
       The first alternative is inconsistent with the pur-
10     pose of the two general railroad right-of-way acts;
       to free Congress from the burden of applications
11     for special right-of-way legislation. See H.R. Rep.
       No. 1896, 55th Cong., 3d Sess. 1 (1899). The second
12     is contrary to the congressional policy of encourag-
       ing western settlement by promoting the extension of
13     railroads."

14     In short, the court appears to hold that if the Act of 1899
15  does not apply, Congressional policy will be frustrated.  It
16  follows that the Act should be available for already constructed
17  lines.

18     VI.  Conclusion.

19     The application and map of definite location of Burlington
20  Northern Inc. for right of way through tribal lands in the
21  Swinomish Indian Reservation, Washington, should be accepted for
22  filing and acted upon by the Department.

23                     Respectfully submitted,

24

25                     _____
                       Lawrence D. Silvernale
26                     350 Central Building
                       Seattle, Washington  98104

                              - 13 -

SITC000006081



Real Property Mgmt.
Tenure & Mgmt.

United States Department of the Interior  Pending Right-of-way
Swinomish General

BUREAU OF INDIAN AFFAIRS
Western Washington Agency
3006 Colby Ave., Federal Building
Everett, Washington 98201

October 17, 1978



RECEIVED

OCT 1 6 1978

Burlington Northern Inc.
Seattle, Washington

Burlington Northern Railroad Company
Attention:  Lawrence D. Silvernale,
            Associate Regional Counsel
350 Central Building
Seattle, WA 98104

Gentlemen:

The Swinomish Indian Senate in session on October 3, 1978, resolved

that the Swinomish Indian Tribal Community refuses to authorize the

Secretary of the Interior to grant an easement for the right-of-way,

applied for by the Burlington Northern Railroad Company. As tribal

consent is required under both the law and the regulations, we

have no choice but to deny the application.  Accordingly, by copy

of this letter, we will notify our Portland Area Office to return

your original application and attachments thereto without approval.

Sincerely yours,

Superintendent

EXHIBIT A

CONSERVE
AMERICA'S
ENERGY

*Save Energy and You Serve America!*

SITC000006082

**BURLINGTON NORTHERN**

Woodrow L. Taylor, 625-6441
*Regional Counsel*

Lawrence D. Silvernale   625-6444
*Associate Regional Counsel*

George C. Inman, Jr.   625-6440
Robert C. Williams   625-6447
*Assistant Regional Counsel*

Gerald A. Troy   625-6448
*General Attorney*

November 2, 1978



RECEIVED
NOV 3 1978

Mr. Peter P. Threestars
Superintendent
Western Washington Agency
Bureau of Indian Affairs
Federal Building
Everett, Washington  98201

Dear Mr. Threestars:

Please refer to your letter of October 17, 1978, to Burlington
Northern Railroad Company, Attention Lawrence D. Silvernale,
Associate Regional Counsel, your file Real Property Management,
Tenure and Management, Pending Right of Way, Swinomish General.
As you know, I am an attorney for Burlington Northern Inc. with of-
fices at 350 Central Building, Seattle, Washington 98104.  My
telephone number is 206-625-6444.  All further correspondence
and communication in this matter should be with me.

Pursuant to 25 CFR 2.3 and following sections, Burlington Northern
Inc. hereby appeals to the Area Director the decision set forth in
your letter of October 17, 1978, to reject for filing the applica-
tion for grant of right of way to Burlington Northern Inc. through
tribal lands in the Swinomish Indian Reservation.  In due course
we will file our appeal with the Area Director, the original cer-
tificate of service pertaining to this notice of appeal, and the
duplicate originals of the tendered application and accompanying
documents if they are returned by the Area Director.

Will you please stamp as "Received" the attached copy of this let-
ter and return it to me in the enclosed stamped, self-addressed
envelope.  Please telephone me if you should wish to discuss this
matter.

Very truly yours,

Lawrence D. Silvernale
Associate Regional Counsel

EXHIBIT B

LDS/mb

Encl.
cc:  Area Director, Portland, Bureau of Indian Affairs
     Office of the Solicitor, Portland Region
     Ms. Sharon K. Eads, Native American Rights Fund
     Mr. Peter J. Wilke, Swinomish Tribal Community

350 Central Building / Seattle, Washington 98104

SITC000006083

```
 1                  DEPARTMENT OF THE INTERIOR
                    BUREAU OF INDIAN AFFAIRS
 2

 3
     In the Matter of Appeal of    )
 4   Burlington Northern Inc. from  )
     Decision Refusing to File an   )
 5   Application for Right of Way    )
     Through the Swinomish Indian   )
 6   Reservation, Washington.       )
                                    )
 7   ───────────────────────────────

 8
                        AFFADAVIT OF MAILING
 9
     STATE OF WASHINGTON  )
10                        )  ss.
     COUNTY OF KING       )
11

12       The undersigned, being first duly sworn on oath states that

13   on November 2, 1978, she deposited in the mails of the United

14   States of America properly stamped and addressed envelopes,

15   certified mail with return receipt requested, containing the

16   notice of appeal of Burlington Northern Inc. in the above matter,

17   addressed to the following persons:

18       Mr. Peter P. Threestars      Area Director
         Western Washington Agency    Bureau of Indian Affairs
19       Bureau of Indian Affairs     P.O. Box 3621
         Everett, Washington  98201   Portland, Oregon  97208
20
                    Ms. Sharon K. Eads
21                  Native American Rights Fund
                    1506 Broadway
22                  Boulder, Colorado  80302

23

24                              _____
                                     Mavis J. Bates
25       SUBSCRIBED AND SWORN TO before me this 9th day of November,
     1978.
26                              _____
                                Notary Public in and for the State
                                of Washington, residing at Seattle


                        EXHIBIT C
```

SITC000006084

*John E. Miller*

MEMBER—AMERICAN INSTITUTE OF
REAL ESTATE APPRAISERS

· September 6, 1977

PHONE - 734-3420
1401 ASTOR AT "J"
BELLINGHAM, WASHINGTON 98225

Western Washington Indian Agency
Everett, Washington

RE: Burlington Northern Railway Right of Way
    Swinomish Tidelands

Dear Sir:

At the request of Burlington Northern Inc., I have examined and appraised
the property occupied by Burlington Northern trackage across tidelands
in front of the Swinomish Indian Reservation in Section 2, Township 34
North, Range 2 East, W.M., Skagit County, Washington, for the purpose of
determining the current Fair Market Value and damages, if any, as a basis
for deposit of estimated consideration pursuant to Title 25 CFR, Section
161.14.  As of the date of this letter, I find the value of the lands to
be acquired by Burlington Northern to be $20,858.  This computation is
based upon a right-of-way 60 feet wide and approximatly  3,029 feet long,
a total of 4.17 acres

I have determined that the lands remaining will not sustain any severance
damages by reason of the location, construction and operation of Burlington
Northern, and I have further determined that no damages will result from
the survey, if any, for location and construction of said railway.

I have also examined the area of Swinomish Slough which is occupied by
Burlington Northern's bridge and approaches, and it is my conclusion that
as long as the Slough is burdened with a navigational servitude, the under-
lying fee has no recognizable market value and the use of the Slough for
purposes of construction and operation of a railroad bridge does not damage
or diminish the value of the underlying fee in any respect.

I therefore certify that the market  value as of the date of this certifi-
cate totals --------------------------- $ 20,858.00 -----------------------

Very truly yours,

John E. Miller, M.A.I.

JEM:ab

EXHIBIT D

# Native American Rights Fund

1506 Broadway • Boulder, Colorado  80302 • (303) 447-8760

Thomas N. Fredericks

Attorney
Richard B. Collins
Raymond Cross
Sharon K. Eads
John E. Echohawk
Walter R. Echo-Hawk
Daniel H. Israel
Yvonne T. Knight
Robert S. Pelcyger
A. John Wabaunsee
Jeanne S. Whiteing

Technical Writer
Lorraine Edmo

Business Manager
James A. Laurie

Washington Office
1712 N Street, N.W.
Washington, D.C. 20036
(202) 785-4166

Staff Attorneys
Lawrence A. Aschenbrenner
Arlinda F. Locklear
Don B. Miller

Maine Office
173 Main Street
Calais, Maine 04619
(207) 454-2113

Staff Attorneys
Thomas N. Tureen
Dennis M. Montgomery

June 29, 1977



RECEIVED
LAW DEPT.
JUL 5 1977
BURLINGTON NORTHERN INC.
Seattle, Washington

Mr. Lawrence D. Silvernale
Associate Regional Counsel
Burlington Northern, Inc.
350 Central Building
Seattle, Washington   98104

Re:  Swinomish Indian Right-of-Way

Dear Mr. Silvernale:

It appears that we are at an impasse.  I have
discussed the situation again with my client and we have
decided to set down the terms of our final offer in one
last attempt to avoid needless litigation.

1.  Past damages of $350,000;

2.  Future right-of-way for a period of 40
years with an option in Burlington Northern to renew for
an additional 40 years;

3.  Future rent of $38,470 per year for the first
five years, reappraisals at five year intervals to adjust
the base rent up or down, the minimum rent to be $30,000
per year.

I do not know why my letter of May 13 should
have been such a shock to you.  The $38,000+ for future
rental is most certainly based on the current appraised
value of the tribal tidelands in the Swinomish Industrial
District of $1 per square foot.  It is the figure that
we have insisted on throughout our negotiations.  We have
consistently stated that the Tribal Community would not
lease its lands to Burlington Northern for any less than
the comparable lands within the Industrial District.  The
going rate is $1 per square foot, which is supported by
a M.A.I. appraisal and we will not accept any less.

I did describe to you how the figure of $600,000
was calculated.  It is based on Mr. Miller's appraisal
with the modifications indicated in my letter of May 13.
In order to reach a compromise resolution in an area that
is necessarily difficult to prove with exactitude, the
Tribal Community has agreed to accept $350,000 for past
damages.

EXHIBIT E

SITC000006086

Mr. Silvernale
June 29, 1977
Page two

With regard to the Slough, first of all I do
not think that it is in Burlington Northern's interest
to limit the right-of-way to 3,390 feet.  I thought that
we all wanted to settle this matter once and for all.  If
the right-of-way granted by the Tribal Community excluded
the Slough and our ownership of it was subsequently con-
firmed, we would be back negotiating or litigating another
trespass claim.  Let's resolve this once and for all.
Certainly, our claim to ownership of at least the western
half of the Slough is well founded simply as a matter of
law.  Choctaw Nation v. Oklahoma, 397 U.S. 620, 631 n.8
(1970); Choctaw Nation v. Cherokee Nation, 393 F.Supp. 224
(E.D.Okla. 1975).  The Tribal Community will not abandon,
waive or grant its rights to any lands for which it is
not adequately compensated.

I would ask you to consider the consequences
of our failure to reach agreement.  The title issue seems
so clear that little can be gained by litigating.  We
would wind up in the same position in which we now find
ourselves after having expended needless time, energy and
resources.  The Tribal Community truly believes that this
final offer is fair to all concerned.  It is based on
fair market value for past and future use which you have
insisted on from the outset of our negotiations.  Although
the railroad may be an asset to the Industrial District,
the Tribal Community has resolved that the railroad will
not be allowed to use tribal lands for any less than the
terms presented in this letter.  If litigation is initiated
and we are successful, the Tribal Community will, in all
probability, insist on greater monetary compensation.

The Tribal Community has also indicated that if
we are required to resort to the courts, once we are suc-
cessful in establishing our title we will require that if
Burlington Northern stays on the reservation, it must re-
construct part of the railroad line, specifically the
bridge span, so that larger ships will have access to the
Slough and to the Tribal Community's potential deep water
port in the northern part of the reservation fronting on
Padilla Bay.

Sincerely yours,

Robert S. Pelcyger

RSP:sal

SITC000006087