# Exhibit No. 31

# NATIVE AMERICAN RIGHTS FUND

1506 Broadway
Boulder, Colorado 80302-6296
(303) 447-8760
Fax # (303) 443-7776

## TELECOPIER COVER SHEET

Date: 6-5 COVER SHEET + 17 PAGES

ATTENTION: Allan Olson

FIRM:

FROM: Rick Dauphinais

RE:

If you do not receive all pages specified above, please call back as soon as possible. Thank you.

Telephone No. (303) 447-8760

Telecopier operator Debbie

NOTES:

MEMORANDUM

TO: Allan Olson

FROM: RD

RE: BN

DATE: June 5, 1989

---

Executive Director
John E. Echohawk

Deputy Director
Richard Dauphinais

Attorneys
Ethel J. Abeita
Robert T. Anderson
Jerilyn DeCoteau
Walter R. Echo-Hawk
Kim Jerome Gottschalk
Yvonne T. Knight
Melody L. McCoy
Don B. Miller
Steven C. Moore
Robert M. Peregoy
Donald R. Wharton

Development Officer
Mary Hanewall

Controller
Susan R. Hart

# Native American Rights Fund

1506 Broadway • Boulder, Colorado 80302-6296 • (303) 447-8760 • Fax (303) 443-7776

Washington Office
1712 N Street, N.W.
Washington, D.C. 20036-2976
(202) 785-4166

Attorneys
Henry J. Sockbeson
Faith R. Roessel
(Also a member of New Mexico bar)
Thomas L. LeClaire

Anchorage Office
310 K Street, Suite 708
Anchorage, AK 99501
(907) 276-0680

Attorneys
Lawrence A. Aschenbrenner
Bart K. Garber

Of Counsel
Richard B. Collins
Charles F. Wilkinson

5 June 1989

Lawrence D. Silvernale
Rosenow, Hale & Johnson
1620 Key Tower
1000 2nd Ave.
Seattle, WA 98104

Re: Swinomish

Dear Mr. Silvernale:

I am sorry that we were unable to respond sooner. As indicated in our last letter there are a few items we would like to add to the Settlement Agreement and Right-of-Way. Enclosed are revised versions of those documents including our changes (additions are shaded and deletions are struck through). The following is a brief description of the changes.

**RIGHT-OF-WAY EASEMENT**

1. In paragraph 2 setting out the Term of the easement, we have added a holdover clause.

2. In paragraph 5 we have added two sub-paragraphs. The first sets up a system by which the Railroad notifies the Tribe of the substances being carried across the Reservation. The second deals with scheduling of the Reservation crossings.

**SETTLEMENT AGREEMENT**

In paragraph 2 we have added a sub-paragraph that states that nothing in the Settlement Agreement or Right-of-Way supercedes any federal law.

Finally, there is one matter that we need to discuss although there is probably no need to deal with in the settlement documents. We would like the Railroad to withdraw its adverse comments to federal agencies on the Tribe's marina project.

Perhaps the easiest way to wrap this up is to set up a conference call sometime next week after you have had a chance to review the revised documents.

Sincerely,

Richard Dauphinais

RD/der

**SETTLEMENT AGREEMENT - BURLINGTON NORTHERN**

This Settlement Agreement by and between the UNITED STATES OF AMERICA, the SWINOMISH INDIAN TRIBAL COMMUNITY and BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware corporation, is executed this ______ day of ____________________, 1988.

**R E C I T A L S**

A. Burlington Northern ("BN"), The Swinomish Indian Tribal Community (the "Tribe") and the United States of America (the "United States") have been engaged in a dispute concerning whether or not the existing line of railroad of BN passes through lands forming part of the Swinomish Indian Reservation held in trust by the United States for the benefit of the Tribe, without appropriate permission or easements having been granted to BN.

B. The dispute has taken the form of a lawsuit entitled _Swinomish Tribal Community vs. Burlington Northern Railroad, et al._, United States District Court for the Western District of Washington, Cause No. C76-550V (the Action).

C. The parties hereto desire to agree upon a settlement of all differences, dismissal of the lawsuit and issuance by the United States and the Tribe of a Right-of-Way Easement to BN on the terms and conditions herein agreed upon.

D. As usd in this agreement "land" or "lands" shall include submerged lands, tidelands and uplands.

The United States of America and the Tribe will:

1. Issue a Right-of-Way Easement to Burlington Northern for a period of forty (40) years for land shown and

SITC000011034

desscrived on attached Exhibit A. Such right-of-way, 60 feet wide, shall extend across the Northerly tidelands claimed by the Tribe from the Easterly line of the Swinomish Channel, Northwesterly to the Westerly boundary of the Reservation, all as shown on attached Exhibit A.

2. The Right-of-Way Easement shall be issued in the form of Right-of-Way Easement as attached to this Agreement and marked as Exhibit B.

3. The Tribe and the United States will promptly process and obtain necessary approvals of The Department of Interior required under Federal law.

The BN will:

1. Pay the sume of ONE HUNDRED TWENTY FIVE THOUSAND DOLLARS ($125,000), upon execution and approval of the U.S. Department of the Interior hereof, reflecting payment in full for all rent, damages and compensation of any sort, due for past occupancy of the right-of-way from date of construction in 1889 until January 1, 1989.

2. Pay an annual rental commencing on the 1st day of January 1989, totaling a minimum of TEN THOUSAND DOLLARS ($10,000) per year, an a like or adjust sum on each January 1st thereafter during the term of this easement.

a. On each January 1st after January 1, 1989, the rental will be increased by an amount equal to the increase above the previous year's rental resulting from the application to the previous year's rental of the percentage change in the All Urban,

Consumers - All Item Index of the United States Department of Labor, Bureau of Labor Statistics for the Seattle - Tacoma, WA area (or, if not available, the most nearly comparable index) of the previous year. Should the index not be computed for that month, the most recent computation of the index should be used.

b. In addition to the annual increases described in part (a) of this paragraph, the rental shall be subject to adjustment at five (5) year intervals to reflect changes in property values reflected by the market, the acquistion of applicable permits for the improvement of nearby property and/or by proposed, or actual, marina construction, or other land development adjacent to said right-of-way. Such annual rental shall be increased to an amount equal to TWELVE PERCENT (12%) of the value of land immediately adjacent to the right-of-way, such value to be determined by normal real estate appraisal methods.

An additional sume shall also be paid annually to reflect damage to remaining lands which amount shall be based upon 12% of the actual damages as determined by normal real estate appraisal methods considering the highest and best use of such adjacent lands.

Development proposed for the property north and south of the Railroad may include several separate and distinct land uses including a marina boat basin (with approximately 800 boat slips) to the north and to the south an upland commerical development, and in the event the "South Lagoon" (adjacent to and south of the Railroad) is developed, an additional marina basin

providing additional boat slip poorage facilities. The Railroad right-of-way is located between and adjacent to these land areas and uses. Acreage values used to calculate rental adjustments shall be based on the use and development of lands either to the north or south of the Railroad, whichever has the higher appraised value.

In the event it becomes profitable to construct additional marina facilities in the area described as the South Lagoon on attached Exhibit A, and in the further event the Tribe secures the necessary Federal permits for such construction, the BN shall either provide a ____ foot wide boat acess at a location acceptable to the Tribe to said Lagoon with an appropriate bridge, which will admit at tide levels of mean higher high water boats with masts of sixty (60) feet or less, or as damage to that portion of remaining lands, compensate the Tribe for net income loss attributable to the inability to construct the South Lagoon portin of the marina. Such loss shall be compensated on the basis of expected rental less cossts of planning, development, construction, management, and operation.

c. Either the Tribe or BN may initiate changes in the annual rental payment by a written proposal forwarded by U.S. Mail during the last six months or any five (5) year increment or the Tribe at any tim eafter receiving all necessary federal permits for the development of thelands adjacent to the right-of-way. If a party chooses to initiate changes inthe rental before the last six months of any five (5) year period, a

new five (5) year increment will begin when the new rental begins.

If a proposal for a change in the rental is made but the parties are unable to agree upon a rental adjustment, such adjustment shall be determined in accordance with the principles determined herein by binding arbitration. Arbitration shall be initiated when one party, or the other, nominates an arbitrator in writing, and requests that other party nominate any member of the American Arbitration Association residing in the State of Washington. Thereafter, ~~beyh~~ [illegible] arbitrators nominated shall met and select a third arbitrator. If they are unable to agree, a third arbitrator will be selected under applicable rules of the American Arbitration Association. Arbitration proceedings shall be conducted informally with each party presenting evidence as may be appropriate to its proposed annual rental payment. The arbitration award shall be in effect for the ensuing five (5) year period and shall not be subject to judicial review or other appeal unless it be determined that the arbitrators have ignored, or failed to enforce, any of the provisions of this Settlement Agreement.

All Notices shall be forwarded to the parties at the addresses shown below.

Burlington Northern
General Manager
2200 First Interstate Center
999 Third Avenue
Seattle, WA 98104

Swinomish Tribal Community
950 Moorage Way
P.O. Box 817
LaConner, WA 98257

SITC000011038

d. Notwithstanding any other provisions in this agreement, the right-of-way rental shall not be less than that prescribed by applicable federal laws or regulations as they may now exist or may hereafter be changed.

e. Nothing in this Settlement Agreement or the associated Right-of-way Easement shall supersede any federal law or regulation. BN and the Tribe will comply with all applicable federal laws and regulations.

3. Nothing in this Settlement Agreement shall waive, affect or bar any claim or defense except those specifically covered by the Settlement Agreement.

SUBSCRIBED AND SWORN this ____ day of ____________________, 1988.

By ______________________________
RICHARD DAUPHINAIS
Native American Right Fund

By ______________________________
ALLAN OLSON
Swinomish Tribal Community

Attorneys for the Swinomish Tribal Community

By ______________________________
LAWRENCE D. SILVERNALE
Burlington Northern Railroad Company

By ______________________________
KURT W. KROSCHEL
Burlington Northern Railroad

SITC000011039

JUN 5 '89 14:01 PAGE.011

Company

By ______________________________
UNITED STATES OF AMERICA

7

SITC000011040

**RIGHT-OF-WAY EASEMENT - BURLINGTON NORTHERN**

This Right-of-Way Easement is between the United States of American, the Swinomish Indian Tribal Community and Burlington Northern Railroad Company, a Delaware corporation.

**R E C I T A L S**

A. Burlington Northern ("BN"), the Swinomish Indian Tribal Community (the "Tribe"), and the United States have been engaged in a dispute concerning whether or not the existing line of railroad of BN passes through lands forming part of the Swinomish Indian Reservation held in trust by the United States for the benefit of the Tribe, without appropriate permission or easements having been granted to BN.

B. The dispute has taken the form of a lawsuit entitled: Swinomish Tribal Community v. Burlington Northern Railroad, et al., United States District Court for the Western District of Washington, Cause Number: C76-550V (the "Action").

C. Burlington Northern, the Tribe and the United States have now settled the dispute among them pursuant to the settlement agreement dated ____________________ (the "Settlement Agreement"). The Settlement Agreement provides, among other things, for the dismissal of the Action by and against BN and the granting of a forty (40) year right-of-way easement with a forty (4) year option to Burlington Northern for its existing railroad over and across any and all lands of the Tribe held in trust for its benefit by the United States that such railway crosses.

D. This right-of-way easement is intended to grant and

SITC000011041

convey to BN, despite any questions of survey, or any uncertainty as to the location of (a) the boundaries of the Swinomish Indian Reservation, and (b) any lands within the Reservation (whether tidelands, submerged lands, or uplands) held in trust by the United States for the benefit of the Tribe, a forty (4) year easement with a forty (40) year option over any and all lands comprising part of the Swinomish Indian Reservation and held in trust by the United States for the benefit of the Tribe over which the existing railway of BN passes.

**NOW THEREFORE**, in consideration of the sum deposited with the application for this right-of-way easement and the agreement and covenants contained in said application and in this agreement, the United States hereby grants and conveys to BN, under authority of the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323-328) and the regulations in 26 C.F.R. 161 promulgated thereunder, a right-of-way easement as follows:

1. Legal Description: The easement hereby conveyed shall be sixty (60) feet in width, being thirty (30) feet on the North Side and thirty (30) feet on the South Side of the center line described in Exhibit "A" hereto, located in Skagit County, Washington.

2. Term: The term of this easement is forty (40) years from the date hereof.

In the event that Burlington Northern fails to surrender and vacate the lands covered by this agreement, pursuant to the provisions hereof, after expiration of either the original term

SITC000011042

[redacted]

3. <u>**Options**</u>: In addition to the forty (40) year term, BN shall have an option to extend such term twenty (20) years. Each option may be exercised by giving written notice to the United States and the Tribe as provided in paragraph 7 below; no later than thirty (30) days prior to the expiration of the prior term and by paying, as consideration for the option period

$____________ as adjusted (upward but not downward) based upon the change in the Consumer Price Index for the Seattle-Tacoma area issued by the U.S. Department of Labor, Bureau of Labor Statistics (or if not available, the most nearly comparable index), from the date of this lease to the date of the commencement of the option term.

4. <u>Rights of BN</u>: Under this easement BN, its successors and assigns: (a) shall have the right to maintain, operate, inspect, repair, protect, and remove the existing line of railroad and to replace the existing line with another line for the transportation of general commodities by railroad or other comparable successor methods of transportation; to keep the right-of-way easement clear of underbrush and trees; to have the right of ingress and egress to and from the same for the aforesaid purposes; to construct and reconstruct bridges, culverts and other facilities necessary for the operation of the railroad; said right-of-way easements and privileges herein granted being assignable or transferable; and (b) shall have an exclusive easement across and over said right-of-way easement and no further easements maybe granted on said strip except as provided in paragraph 5 following. Upon discontinuance of the right-of-way granted under this Agreement, BN or its successors, may at its option, leave the railroad or other installations provided for herein on the ground or may pick up and remove said railroad.

5. <u>Rights of the United States and the Tribe</u>:

The United States and the Tribe may permit the construction, operation, repair and maintenance of utility lines, streets, or roadways across (as distinguished from running lengthwise along) said right-of-way easement. Should the United States or the Tribe wish to place or alter any body of water over the right-of-way easement, it will first present to BN, for review and comment, detailed plans and drawings of any proposal. If said crossing or changes in any body of water ar made, it is agreed that the United States and the Tribe will reimburse, or cause BN to be reimbursed, for all of the reasonable and necessary costs for labor and materials incurred by BN in altering, or protecting, said railroad from said activities. Should the United States or the Tribes cause any damages to the railroad, they shall indemnify and hold BN harmless from any and all actual damages caused to said railroad by the United States or the Tribe. It is agreed that neither the United States or the Tribe will permit any permanent buildings, or other structures, trees, underbrush, or any other unreasonable obstructions, to be placed upon the right-of-way easement. Should the United States or the Tribe wish to have the railroad relocated within the Reservation, BN will relocate the railroad provided the United States or the Tribe provides or secures for BN an alternate, feasible right-of-way with all necessary permits that gives BN all the rights it enjoys under this right-of-way easement at no additional cost to BN and with no interruption of service and provided further that the United States or the Tribe pays all

costs directly, or indirectly, associated with said relocation.

[illegible redacted text]

6. **Liability of BN**: BN will protect, indemnify and hold harmless the United States an ~~and~~ the Tribe against any loss, damage or expense that may be incurred, suffered or had by either of them, resulting from the death or injury to any person or

6

SITC000011046

persons or any loss, damage or injury to property, from any negligent acts or omissions of BN its agents, servants or employees.

7. __Notices__: Any notices provided for in this agreement shall be given as follows:

TRIBE:

UNITED STATES:

BURLINGTON NORTHERN RAILROAD COMPANY:

DATED this ____ day of ______________________, 1987.

UNITED STATES OF AMERICA

______________________________

BURLINGTON NORTHERN RAILROAD COMPANY

By ____________________________

Its ____________________________

# Exhibit No. 32

MEMORANDUM

TO: Allan

FROM: RD RD

RE: BN

DATE: June 28, 1989

---

ROSENOW, HALE & JOHNSON
LAWYERS

JACK G. ROSENOW
JEFFREY F. HALE
A. CLARKE JOHNSON
JOHN C. GRAFFE
WAYNE VAVRICHEK
CHRISTOPHER W. KEAY
PATRICIA I. MCCOTTER
MARILYN W. SCHULTHEIS

LAWRENCE D. SILVERNALE
OF COUNSEL

SUITE 301
TACOMA MALL OFFICE BUILDING
4301 SOUTH PINE STREET
TACOMA, WASHINGTON 98409
TELEPHONE (206) 473-0725
FROM SEATTLE 838-1767

1620 KEY TOWER
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 223-4770

REPLY TO: Seattle Office

June 22, 1989

Mr. Richard Dauphinais
Deputy Director
Native American Rights Fund
1506 Broadway
Boulder, Colorado 80302-6296

Re: **Swinomish Tribal Community v. Burlington Northern, et al.**

Dear Mr. Dauphinais:

Your letter of June 8, 1989 with enclosures has generated a strong feeling of discouragement that we have lost all of the progress made in settling this matter. Previously, we seem to have gotten down to the question as to the width and height of the bridge opening to be required. You can image therefore, how surprised and disappointed I was to have a number of issues re-raised which I thought we had thoroughly discussed and disposed of.

Nonetheless, I will make the following response. In the Settlement Agreement I do not object to the changes in the periodic rental language, nor the added release language. You will want to change the word pipeline to railroad on Page 7, Paragraph 7.

On the new matters proposed in the Right-of-Way Agreement, specifically Paragraph 7b, at Page 10, requiring BN to inform the Tribe in advance of the shippers and contents of railroad cars crossing Reservation lands. It is virtually impossible for BN to accomplish this. In the nature of railroading shipping documents often do not arrive until the car is ready for delivery. Often the car will be transported on a shipping order with the bill of lading to follow. BN is well aware of the nature of the commodities which are routinely handled to and from the refineries in question, and we are willing to make a full disclosure as to current and anticipated shipments. You are aware the basic hazardous materials

handled are propane tank cars, both loaded and empty. I do not believe that we will be handling any exotic materials to and from the refineries, but we have no objection to making a disclosure to the Tribe as to the nature of the commodities. We simply cannot provide this information on a shipper and car by car basis in advance of shipment since we do not have the knowledge until the train is actually made up, just before departure. I am sure that you are aware that all cars handled have to be classified, packaged, and loaded, in accordance with the DOT-FRA Rules and Regulations. These rules and regulations for handling hazardous materials have been developing for more than 140 years and as a common carrier railroad, Burlington Northern is obliged to handle such cars properly classified, package and loaded to all destinations. I cannot imagine what the Tribe would want to do with this information and we have long felt that widespread dissemination of such information increases the risk of sabotage. In any event, can't we work out some kind of an arrangement by which we will make a periodic disclosure to the Tribe as to the nature of the commodities being handled, without going to some form of individual car and commodity notification?

We cannot agree to a single train limitation, or to a limitation on the number of cars. At times, depending upon business at the refineries, we must have flexibility with regard to the number of cars, which may exceed twenty-five or thirty. On occasion, I can image that more than one movement will be necessary depending upon a number of factors in railroad operations. It seems to me that our current level is one train each way per day. If more trains should start operating (which we doubt) it would seem to me that this could be the subject of a rent adjustment based upon the greater burden to the property adjacent to the right-of-way.

You also provide that trains shall not travel at speeds in excess of 5 miles per hour. This limitation is extremely undesirable and in fact, will create serious hazards. It is undesirable because the transit time across the Reservation will go from approximately 2 minutes to something in the vicinity of 7 minutes. This would mean that your grade crossings will be blocked 3 times as long during train operations. It has been my experience that most communities would prefer that trains move as fast as possible consistent with safety minimums, and that where slow switching movements exist over public crossings, the slowness of the movements create significantly greater problems to citizens than faster movements. We have found that where trains are moving very slow, such as 5 miles per hour, a speed we regard as switching speed, that pedestrians tend to take great risks in attempting to cross the tracks. We also get problems with youngsters attempting to board and ride trains moving at that speed. These are hazards

which we do not experience at speeds of 15 miles per hour or greater.

Finally, it is extremely difficult to operate a train at 5 miles per hour. The engineer has to carefully regulate both throttle and brakes. The braking in these circumstances would generate a greater fire risk and at least some risk that the train might go into emergency braking and come to a complete stop, thus blocking crossings until the train can get its air back. As you can see, we would strongly prefer to continue operating trains at our existing operation. This speed is based upon the limitations of the bridge over the slew and should provide maximum safety to people using crossings or for people who are on or about the right-of-way.

Lastly, you provide that BN will provide appropriate landscaping. We are not aware of what this implies, although we are willing to cooperate with you in appropriate landscaping at such time as your construction program is completed. We do require an area clear of brush and flammables to a distance of a minimum of 15 feet on either side of the center line of the railroad.

I will be gone until the 5th of July, but would like to get together with you and Tribal representatives promptly after that time to review these matters to see if prompt agreement cannot be reached.

Very truly yours,

ROSENOW, HALE & JOHNSON

John Groff for LDS

Lawrence D. Silvernale

LDS:kmr

# Exhibit No. 33

ROSENOW, HALE & JOHNSON
LAWYERS

JACK G. ROSENOW
JEFFREY F. HALE
A. CLARKE JOHNSON
JOHN C. GRAFFE
WAYNE VAVRICHEK
CHRISTOPHER W. KEAY
MARILYN W. SCHULTHEIS

LAWRENCE D. SILVERNALE
OF COUNSEL

SUITE 301
TACOMA MALL OFFICE BUILDING
4301 SOUTH PINE STREET
TACOMA, WASHINGTON 98409
TELEPHONE (206) 473-0725
FROM SEATTLE 838-1767
FAX (206) 473-0728

1620 KEY TOWER
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 223-4770

REPLY TO Seattle Office

July 10, 1989

Mr. Richard Dauphinais
Deputy Director
Native American Rights Fund
1506 Broadway
Boulder, Colorado 80302-6296

Alan Olson, Esquire
Swinomish Tribal Community
P.O. Box 817
950 Moorage Way
La Conner, Washington 98257

Re: **Swinomish Tribal Community v. Burlington Northern**

Gentlemen:

The following is the language proposed for Sections 7(b) and 7(c) of Page 10 of the Right of Way Easement:

"7(b)" Burlington Northern will keep the Tribe informed as to the nature and identity of contents of placarded cars crossing the Reservation. Initially, Burlington Northern shall prepare a summary of all such commodities expected to cross the Reservation. Thereafter, the disclosure shall be updated periodically as different products, or commodities, are added or deleted. Burlington Northern will comply strictly with all Federal and State Regulations regarding classifying, packaging and handling of placarded cars so as to provide the least risk and danger to persons, property and the natural environment of the Reservation.

"7(c)" Burlington Northern agrees that, unless otherwise agreed in writing, only one eastern bound train, and one western bound train, (of twenty-five (25) cars or less) shall cross the Reservation each day. The number of trains and cars shall not be increased unless required by shipper needs. The Tribe agrees not to arbitrarily withhold permission to increase the number of trains or cars when necessary to meet shipper needs. Train speeds over Reservation grade crossings shall not exceed ten (10) miles per hour.

Mr. Richard Dauphinais
Alan Olson, Esquire
July 10, 1989
Page Two

I will initiate the conference call, scheduled for Wednesday, July 19, 1989 at 2:00 p.m., to further discuss these matters.

Very truly yours,

ROSENOW, HALE & JOHNSON

Lawrence D. Silvernale

Lawrence D. Silvernale

LDS:kmr

cc: Kurt W. Kroschel, Esquire
Mr. J.D. O'Dell

SITC000007970

# Exhibit No. 34



XVI Shannon
2-21-80

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| SWINOMISH TRIBAL COMMUNITY<br>Plaintiff,<br><br>v.<br><br>BURLINGTON NORTHERN, INC.<br>Defendant. | ) | CIVIL NO. C78-429V |

MOTION OF THE
INTERSTATE COMMERCE COMMISSION
FOR LEAVE TO INTERVENE

Peter M. Shannon, Jr.
Michael L. Martin
Daniel S. Linhardt
Interstate Commerce Commission
12th and Constitution Ave., NW
Washington, D.C. 20423
Telephone (202) 275-7799

Robert S. Griswold, Jr.
Interstate Commerce Commission
Suite 500, 211 Main Street
San Francisco, CA 94105
Telephone (415) 556-5515

Stephen L. Day
Interstate Commerce Commission
858 Federal Building
915 Second Avenue
Seattle, WA 98174
Telephone (206) 44205480

Attorneys for the
Interstate Commerce Commission

The Interstate Commerce Commission (Commission) hereby moves this Court for leave to intervene as of right, pursuant to Fed. R. Civ. P. 24(a)(2), in the above-entitled action to preserve the exclusive jurisdiction of the Commission to determine whether the abandonment sought by plaintiff is in the public interest under Title 49, U.S. Code, § 10903 1/ and to prevent an abandonment of a line of railroad in derrogation of that section.

The Motion for Leave to Intervene is based upon the following grounds:

1. The Commission is an administrative agency of the United States created pursuant to Section 10301(a) of the Interstate Commerce Act (Act). 49 U.S.C. § 10301(a), formerly 49 U.S.C. § 11. Under the provisions of the National Transportation Policy, 49 U.S.C. § 10101, formerly 49 U.S.C., section preceding § 1, the Commission is charged with ensuring "the development, coordination and preservation of a transportation system that meets the transportation needs of the United States, including the United States Postal Service and national defense."

2. The plaintiff, The Swinomish Tribal Community (Tribe), filed its Complaint in the instant case on July 26, 1978, seeking <u>inter alia</u>, a permanent injunction against continued "trespass" by Burlington Northern, Inc. (BN), on its lands.

---

1/ Many references in this pleading cite provisions of the Interstate Commerce Act prior to its recodification. The Act of October 13, 1978, Public Law 95-473, recodified the Interstate Commerce Act. However, as the preamble of the Revised Interstate Commerce Act states, no substantive changes occurred by the reenactment.

...

...

3. Section 10903(a) provides the Commission with the exclusive jurisdiction to determine whether the abandonment of a line of railroad or discontinuance of rail transportation is in the national interest. If this Court grants the Tribe's prayer for injunctive relief against continuing trespass, BN will be forced to commit an abandonment of its operations without giving the Commission an opportunity to exercise its jurisdiction to weigh whether such abandonment is in the national interest. Thus, as a practical matter, the disposition of this matter could result in the loss of the Commission's jurisdiction in a matter exclusively within its domain, contrary to federal statute.

4. The BN, as a private litigant, represents only its own parochial interest. Thus, the interest of the Commission is not represented by any party to this proceeding. Adequate representation of the Commission's interest requires that the Commission be permitted, as a matter of right, to intervene in the instant case.

...

...

...

...

...

...

...

...

...

...

...

...

...

WHEREFORE, the Commission prays that this Court grant it leave to intervene as a party defendant in the instant case, and for such other and further relief as this Court may deem just and proper. This motion is based upon an accompanying Memorandum of Points and Authorities.

Respectfully submitted,

Peter M. Shannon, Jr.
Director

Michael L. Martin
Chief
Section of Litigation

Daniel S. Linhardt
Senior Trial Attorney

By: [signature]
Daniel S. Linhardt

Robert S. Griswold, Jr.
Regional Counsel

Stephen L. Day
Senior Trial Attorney

By: ____________________
Stephen L. Day

Attorneys for the
Bureau of Investigations and Enforcement
Interstate Commerce Commission
858 Federal Building
Seattle, WA 98174

Dated this day of , 1980

...

...

...

...

☆ GPO : 1966 O - 234-962