1    THE HONORABLE ROBERT S. LASNIK

2

3

4

5

6

7

8                UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
9                       AT SEATTLE

10   SWINOMISH INDIAN TRIBAL
     COMMUNITY, a federally recognized
11   Indian tribe,

                              Plaintiff,          No. 2:15-cv-00543-RSL
12
     v.                                           **DEFENDANT BNSF RAILWAY
13                                                COMPANY'S MOTION UNDER
     BNSF RAILWAY COMPANY, a                      FRCP 56(d) FOR REASONABLE
14   Delaware corporation,                        CONTINUANCE OF OR DENIAL WITH
                                                  LEAVE TO RE-NOTE SUMMARY
15                            Defendant.          JUDGMENT MOTION**

16                                                **NOTE ON MOTION CALENDAR:
                                                  Friday, March 25, 2016**
17

18

19

20

21

22

23

24

25

26

DEFENDANT BNSF RAILWAY COMPANY'S                        DLA Piper LLP (US)
MOTION UNDER FRCP 56(d) FOR REASONABLE              701 Fifth Avenue, Suite 7000
CONTINUANCE                                    Seattle, WA  98104-7044 | Tel: 206.839.4800
No. 2:15-cv-00543-RSL

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS.......................................................... 2

      A.    BNSF Has Diligently Pursued Discovery ............................................ 2

      B.    The Tribe's Delay in Producing Documents Has Hampered BNSF's
            Ability to Pursue Non-Party Discovery and Efficiently Depose the Party
            and Non-Party Witnesses Relevant to the Summary Judgment Motion ............. 4

      C.    A New Discovery Dispute May Result in Further Delay in
            BNSF Obtaining the Discovery It Needs .......................................... 5

III.  ARGUMENT ................................................................................................... 6

      A.    Legal Standard ...................................................................................... 6

      B.    The Court Should Deny the Summary Judgment Motion or Defer
            Consideration of It Until Additional Discovery is Completed ........................... 7

IV.   CONCLUSION .............................................................................................. 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*,
  210 F.R.D. 506 (S.D.N.Y. 2002) .........................................................................5

*Blank v. Sharp Yacht Sales & Servs., Inc*.,
  No. C05-1055JLR, 2006 WL 1207913
  (W.D. Wash. May 4, 2006) ..................................................................................6

*In re Kidder Peabody Sec. Litig.*,
  168 F.R.D. 459 (S.D.N.Y. 1996) .........................................................................5

*Metabolife Int'l, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ...............................................................................7

*Moore v. Safeco Ins. Co. of Am.*,
  549 F. App'x 651 (9th Cir. 2013) ........................................................................6

*Tarutis v. Wal-Mart Stores, Inc.*,
  No. C12-5076 RJB, 2013 WL 247710
  (W.D. Wash. Jan. 23, 2013) .................................................................................6

*United States v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002) ...............................................................................6

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*,
  784 F.2d 1472 (9th Cir. 1986) .............................................................................7

**OTHER AUTHORITIES**

43 CFR 2.84(d) ............................................................................................................5

Fed. R. Civ. P. 56(d) ........................................................................................1, 6, 7, 10

Rule 56(f) .....................................................................................................................6

Rule 26(f) .....................................................................................................................2

1

# I.      INTRODUCTION

Defendant BNSF Railway Company ("BNSF") respectfully requests that plaintiff's Motion for Summary judgment be continued or denied with leave to re-note pursuant to Fed. R. Civ. P. 56(d) and LCR 7(j).[1]  Plaintiff Swinomish Indian Tribal Community (the "Tribe") filed its summary judgment motion prematurely, before it completed its production of relevant documents responsive to BNSF's longstanding document requests, and before BNSF has had a reasonable chance to depose the few living percipient witnesses who participated in the negotiation and drafting of the Settlement Agreement and Right-of-Way Agreement (the "Easement"), which resolved the lengthy litigation that occurred decades ago between the Tribe and BNSF's predecessor in interest.  The substance of those settlement negotiations, and specifically what the Tribe knew of the common-carrier obligations of Burlington Northern (BNSF's predecessor in interest), was placed front and center by the Tribe in its motion, yet discovery on this issue is far from complete.  BNSF has diligently pursued discovery in this matter, and the resolution of the Tribe's summary judgment motion—which seeks to resolve one of the core issues in the liability phase of this bifurcated proceeding—should not occur until the parties have had an adequate opportunity to fully develop the record.

The Ninth Circuit has made it clear that Rule 56(d) requests should be freely granted where, as here, the party opposing summary judgment has been diligent in its pursuit of the at-issue discovery.  Accordingly, for the reasons set forth herein, BNSF respectfully requests that the Court continue the Tribe's summary judgment motion until, or deny the Tribe's summary judgment motion with leave to re-note after, such time as (1) the Tribe completes its long outstanding document production, (2) BNSF completes its depositions of individuals the Tribe

---

[1] BNSF's counsel reached out to the Tribe's counsel in an effort to work out a specific discovery schedule to allow BNSF to respond to the Tribe's summary judgment motion and obviate the need for the Court to resolve this issue. The Tribe is unwilling to allow BNSF any additional time to continue pursuing its discovery, but has agreed in concept to an unspecified "brief extension" to accommodate certain scheduling conflicts the current March 28, 2016 summary judgment opposition deadline poses for BNSF's counsel.  *See* Declaration of Andrew R. Escobar in Support of BNSF's Motion Under FRCP 56(d) for Reasonable Continuance of or Denial with Leave to Re-Note Summary Judgment Motion ("Escobar Decl."), ¶ 10.

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 1
No. 2:15-cv-00543-RSL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044  Tel: 206.839.4800

1    identified as having participated in or having knowledge of the prior litigation's settlement

2    negotiations, and (3) BNSF is able to complete its non-party discovery relating to the

3    negotiations and drafting of the Settlement Agreement and Easement.

4    **II.    STATEMENT OF RELEVANT FACTS**

5    **A.    BNSF Has Diligently Pursued Discovery.**

6    The Tribe filed this lawsuit on April 7, 2015.  Dkt. No. 1.  On May 15, 2015, BNSF

7    moved the Court for a referral under the primary jurisdiction doctrine to the Surface

8    Transportation Board to consider certain threshold issues relating to the conflict between the

9    Tribe's claims and requests for relief and the regulation of railroads under the Interstate

10   Commerce Commission Termination Act ("ICCTA").  Dkt. No. 8.  In light of BNSF's referral

11   motion, the parties agreed to stay discovery until after the Court ruled on BNSF's motion. Dkt.

12   No. 12.  The Court ruled on BNSF's motion on September 11, 2015.  *See* Dkt. No. 19.

13   The parties held their Rule 26(f) conference on October 13, 2015.  Escobar Decl., ¶ 2.

14   Shortly thereafter, on November 9, 2015, BNSF served the Tribe with BNSF's First Set of

15   Requests for Production of Documents and First Set of Interrogatories.  *Id.*  BNSF's discovery

16   requests include the following:

17
18
    1)   Documents relating to the prior litigation between the Tribe and Burlington
         Northern (Request for Production ("RFP") No. 1);

19
20
21
    2)   Documents relating to the drafting and/or negotiation of the Settlement
         Agreement and Right-of-Way Agreement (the "Easement" already defined at
         1:8), including internal communications related to these agreements,
         communications with third parties related to these agreements, communications
         with BNSF, and any notes from meetings at which the drafting and/or
         negotiation of these agreements was discussed (RFP Nos. 3, 4);

22
23
    3)   Identification of persons who were involved in drafting and/or negotiating the
         Settlement Agreement and the Easement (Interrogatory Nos. 1, 2);

24
25
    4)   Communications related to the Tribe's decision to withhold its consent to
         increased rail traffic over the Easement and to oppose the shipment of crude oil
         over the Easement (RFP Nos. 14, 15, 16, 17, 18, 19);

26
    5)   Documents related to the regulation of rail transportation by the Surface
         Transportation Board (the "STB"), or the STB's predecessor, the Interstate

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 2
No. 2:15-cv-00543-RSL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044  Tel: 206.839.4800

1    Commerce Commission (the "ICC") and in particular with respect to the
2    Easement (RFP No. 26);

3    6)  Documents related to meetings by the Tribe during which rail traffic over the
     Easement was discussed, including meetings that discussed the Tribe's refusal to
4    grant consent under the Easement to increased rail traffic and the shipment of
     crude oil over the Easement (RFP Nos. 35, 36, and Interrogatory Nos. 5, 6); and

5    7)  Identification of persons who participated in the Tribe's decision to withhold its
6    consent to the increased rail traffic over the Easement and the shipment of crude
     oil over the Easement (Interrogatory Nos. 3, 4).

7    *See* Escobar Decl., Exhs. A, B.  After the Tribe requested and received an extension from
8    BNSF, the Tribe served its written responses to BNSF's discovery requests on December 11,
9    2015 and its verification of interrogatory responses on January 14, 2016.  Escobar Decl., ¶ 2,
10   Exhs. A, B.

11       In its written responses to BNSF's document requests, the Tribe agreed to produce all of
12   its responsive, non-privileged documents for almost every request, but refused to produce *any*
13   of these documents until the Court entered a stipulated protective order, regardless of whether
14   any of the documents it was withholding were in fact confidential.[2]  *See* Escobar Decl., Exh. A
15   at 9 (Response to RFP No. 1.).  In light of the Tribe's universal protective-order objection,
16   BNSF promptly prepared and circulated to the Tribe on December 17, 2015 a proposed
17   stipulated protective order that was based on this Court's model form.  Escobar Decl., ¶ 3.

18       Plaintiff did not respond to BNSF regarding its proposed stipulated protective order
19   until January 5, 2016.  Escobar Decl., ¶ 3.  The parties filed the stipulated protective order on
20   January 12, 2016, and the Court entered it the next day.  Dkt. Nos. 26, 28.  BNSF did not
21   receive the Tribe's first set of documents until almost two weeks later, on January 25, 2016.
22   Escobar Decl., Exh. D.  BNSF received additional document productions from the Tribe on
23   February 18, 2016, and February 22, 2016.  *Id.*, Exhs. E, F.  According to the cover letters
24   transmitted with each of the three document productions, the documents produced to date are

25

26   _____
     [2] None of the documents the Tribe has produced to date have in fact been designated "Confidential" under the
     protective order entered by the Court.  Escobar Decl., ¶ 4.

     DEFENDANT BNSF RAILWAY COMPANY'S                              DLA Piper LLP (US)
     MOTION UNDER FRCP 56(d) FOR REASONABLE                      701 Fifth Avenue, Suite 7000
     CONTINUANCE - 3                                     Seattle, WA  98104-7044  Tel: 206.839.4800
     No. 2:15-cv-00543-RSL

1   only the "historical" documents from the prior litigation, *i.e.*, the Tribe's decades-old litigation

2   file, which includes briefs, correspondence between the parties, and historical records.   In

3   addition, some of the documents in the material the Tribe produced are redacted, but the Tribe

4   has not provided a privilege or redaction log for this material that sets forth the basis for its

5   redactions or identifies any privileged "historical" documents or communications that the Tribe

6   is withholding from production.  Escobar Decl., ¶ 5.  Thus, despite being served with BNSF's

7   discovery requests over four months ago, the Tribe has yet to produce any documents or

8   communications other than the "historical" documents; nor has it provided BNSF with a date

9   by which it expects to complete its rolling production.  *Id.*[3]

10
11
> **B.**     **The Tribe's Delay in Producing Documents Has Hampered BNSF's Ability to Pursue Non-Party Discovery and Efficiently Depose the Party and Non-Party Witnesses Relevant to the Summary Judgment Motion.**

12        Receipt of an opposing party's production of documents is the starting point for then

13   being able to conduct complete and thorough depositions and efficiently pursue non-party

14   discovery.  Here, the Tribe's document production in response to BNSF's document requests is

15   far from complete, and it was not until the Tribe filed its summary judgment motion and

16   supporting papers that BNSF was informed that the Tribe claims to have completed producing

17   its "historical" documents.  *See* Declaration of Christopher I. Brain in Support of Motion for

18   Summary Judgment ("Brain Decl."), 1:21–26.  Although BNSF needs the Tribe's past and

19   more recent communications relating to the Settlement Agreement and Easement before it can

20   fully pursue and complete non-party discovery and depositions, BNSF was left with no choice

21   but to serve document and deposition subpoenas on the Tribe's counsel from the prior

22   litigation, Richard Dauphinais and the Native American Rights Fund ("NARF"), earlier today.

23   Escobar Decl., Exhs. G (Dauphinais deposition noted for April 1, 2016), H (NARF deposition

24

25   [3] The Tribe did not serve its written discovery requests on BNSF until February 8, 2016.  Given the broad scope encompassed by the Tribe's document requests and interrogatories, BNSF requested, and the Tribe agreed, to
26   extend BNSF's deadline to serve its written responses and initial document production until April 13, 2016. Escobar Decl., ¶ 6.

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 4
No. 2:15-cv-00543-RSL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044  Tel: 206.839.4800

1    noted for March 30, 2016).  BNSF also intends to subpoena the Bureau of Indian Affairs

2    ("BIA") for documents and deposition testimony regarding the Settlement Agreement and the

3    Easement, but cannot do so under the Department of Interior's rules until BNSF can show that

4    the desired information is not obtainable from another source[4]—a showing BNSF cannot make

5    until it (1) receives the totality of the Tribe's documents and communications regarding the

6    prior litigation, the Settlement Agreement and the Easement, (2) deposes the Tribe's living

7    percipient witnesses on these issues (including its then-in-house attorney and current General

8    Manager, Allan Olson), and (3) deposes Richard Dauphinais and NARF and receives their

9    documents.

10         **C.    A New Discovery Dispute May Result in Further Delay in BNSF Obtaining
                   the Discovery It Needs.**

11

12         It is unlikely that BNSF will be able to depose the Tribe's living percipient witnesses

13   regarding the prior litigation and its resolution, or complete the depositions of the NARF and

14   Mr. Dauphinais, until the parties can resolve a privilege waiver issue that arises directly from

15   the Tribe's summary judgment motion.  Specifically, the Tribe's reliance on the declaration of

16   its former in-house attorney and current General Manager, Mr. Olson, and his assertions

17   regarding what the Tribe knew and believed during the settlement negotiations has placed

18   directly at issue his communications with the Tribe's decision makers and outside counsel

19   regarding the settlement process and drafting of the Settlement Agreement and Easement.  *See,*

20   *e.g.*, *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) ("The waiver may

21   be found even if the privilege holder does not attempt to make use of a privileged

22   communication; he may waive the privilege if he makes factual assertions the truth of which

23   can only be assessed by examination of the privileged communication") (citing *Hearn v. Rhay*,

24   68 F.R.D. 574, 580–81 (E.D.Wash. 1975)); *see also Bank Brussels Lambert v. Credit Lyonnais*

25

26   [4] *See* 43 CFR 2.84(d) (to receive documents or testimony from the BIA, a party must "[s]how that the desired
     testimony or records are not reasonably available from any other source").

**DEFENDANT BNSF RAILWAY COMPANY'S**                          DLA Piper LLP (US)
**MOTION UNDER FRCP 56(d) FOR REASONABLE**              701 Fifth Avenue, Suite 7000
**CONTINUANCE - 5**                                Seattle, WA  98104-7044  Tel: 206.839.4800
No. 2:15-cv-00543-RSL

1  *(Suisse), S.A.*, 210 F.R.D. 506, 510 (S.D.N.Y. 2002) (stating waiver of privilege can occur

2  when: "(1) the very subject of privileged communications is critically relevant to the issue to be

3  litigated, (2) there is a good faith basis for believing such essential privileged communications

4  exist, and (3) there is no other source of direct proof on the issue.").

5       BNSF sent a letter to the Tribe's counsel earlier today to request a meet-and-confer

6  about this issue.  Escobar Decl., Exh. I.  While BNSF hopes to quickly resolve this issue with

7  the Tribe, this is a threshold issue that must be resolved before discovery necessary to address

8  the Tribe's motion, such as Mr. Olson's deposition, can proceed efficiently.

9                           **III.   ARGUMENT**

10      **A.      Legal Standard.**

11      The Ninth Circuit's jurisprudence on Rule 56(d) relief is extensive and strongly favors

12  granting relief in circumstances like those presented here.  The purpose of Rule 56(d) is to

13  "provide[] a device for litigants to avoid summary judgment when they have not had sufficient

14  time to develop affirmative evidence."  *United States v. Kitsap Physicians Serv.*, 314 F.3d 995,

15  1000 (9th Cir. 2002); *see also Tarutis v. Wal-Mart Stores, Inc.*, No. C12-5076 RJB, 2013 WL

16  247710, at *2 (W.D. Wash. Jan. 23, 2013) ("The primary purpose of Rule 56(d) is to ensure

17  that parties have a reasonable opportunity to prepare their case and to ensure against a

18  premature grant of summary judgment.").  "Where ... a summary judgment motion is filed ...

19  before a party has had any realistic opportunity to pursue discovery relating to its theory of the

20  case, district courts should grant any Rule 56[(d)] motion fairly freely."  *Moore v. Safeco Ins.*

21  *Co. of Am.*, 549 F. App'x 651, 654 (9th Cir. 2013) (internal citations and quotations omitted);

22  *see also Blank v. Sharp Yacht Sales & Servs., Inc.*, No. C05-1055JLR, 2006 WL 1207913, at *1

23  (W.D. Wash. May 4, 2006) ("Courts grant motions for continuances almost as a matter of

24  course unless the non-moving party has not diligently pursued discovery of the evidence.")

25  (internal quotations omitted) (granting then Rule 56(f), now Rule 56(d), motion where plaintiffs

26  filed a summary judgement motion a month and a half prior to the discovery cut-off).

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 6
No. 2:15-cv-00543-RSL

The Ninth Circuit has explained that "[a]lthough [Rule 56(d)] facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as *requiring*, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)).  Thus, "the denial of a [Rule 56(d)] application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986).

**B.      The Court Should Deny the Summary Judgment Motion or Defer Consideration of It Until Additional Discovery is Completed.**

The Tribe's motion raises several factual issues regarding the parties' settlement discussions in the prior litigation, which resulted in the Settlement Agreement and Easement. Specifically, the Tribe maintains via the Olson Declaration that (1) it would not have signed the Settlement Agreement and consented to the Easement had the Tribe known the extent of Burlington Northern's (and its successor, BNSF's) common-carrier obligations, and (2) Burlington Northern did not fully inform the Tribe about these obligations during the prior litigation. *See* Mot. at 7:26–8:2, 13:12–17, 24:18–26, Olson Decl. at 3:2–9.

The Tribe relies on these factual claims to underpin several of its legal arguments: First, the Tribe claims that ICCTA cannot preempt claims based on private contracts "because such voluntary commitments are themselves an admission by the railroad that their enforcement would not unreasonably interfere with railroad operations."  Mot. at 11:7–9. Assuming *arguendo* that such a statement of the law were true, it presupposes that Burlington Northern voluntarily entered into a contract that restricted its ability (and that of its successor, BNSF) to meet its statutorily mandated common-carrier obligations.  But if Burlington

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 7
No. 2:15-cv-00543-RSL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044  Tel: 206.839.4800

1   Northern entered into the Settlement Agreement and Easement after informing the Tribe and its

2   counsel that it had common-carrier obligations that it must be able to honor, then the Tribe's

3   argument crumbles.   This appears to have been the case, though not yet tested through

4   depositions:  in Exhibit 32 to the Brain Declaration, Burlington Northern's counsel informed

5   the Tribe's outside counsel, Richard Dauphinais, during the settlement negotiations that

6   Burlington Northern is a common carrier railroad that "is obliged to handle such cars [that

7   contain hazardous materials] properly classified, package[d] and loaded to all destinations" and

8   that "depending on the business at the refineries, we must have flexibility with regard to the

9   number of cars, which may exceed twenty-five or thirty."   Brain Declaration, Exh. 32 at

10  SITC000011050.[5]  Thus, subject to what is further unearthed through discovery impeded until

11  now by the pace of the Tribe's document production, it appear that the Tribe's outside counsel

12  was aware of Burlington Northern's common-carrier obligations and the challenges they posed

13  with respect to the Settlement Agreement and Easement.   BNSF believes that pending

14  discovery will show that the Tribe either learned—or should have learned from its outside and

15  in-house counsel—about Burlington Northern's common-carrier obligations and analyzed the

16  impact that they could have on the Settlement Agreement and the Easement.

17       Second, the Tribe argues that "the ICCTA cannot 'preempt' the Tribe's rights and

18  remedies under the Indian Right-of-Way Act ("IRWA")."  See Mot. At 1:19–20.  The Tribe

19  maintains that IRWA is relevant here because tribal consent for a right-of-way is required

20  under IRWA and the Tribe supposedly would never have given its consent if it had known the

21  extent of Burlington Northern's common-carrier obligations.  See Mot. at 7:26–8:2, 13:12–17,

22  24:18–26, Olson Decl. at 3:2–9.  This argument assumes a fact that is the subject of on-going

23  discovery, namely that the Tribe's consent to the Easement was based on an utter lack of

24

25

26  _____

[5] Mr. Dauphinais forwarded this letter to the Tribe's then in-house counsel and current General Manager, Allan Olson, under a cover memorandum that the Tribe has completely redacted.  See Brain, Exh. 32 at SITC000011048.

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 8
No. 2:15-cv-00543-RSL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044  Tel: 206.839.4800

1    knowledge about Burlington Northern's common-carrier obligations when negotiating the

2    Settlement Agreement and Easement.

3        Third, the Tribe asserts that BNSF is estopped from, in its words, "disavowing" the

4    terms of the Easement because "[i]n persuading the Tribe to consent to the Right-of-Way, BN

5    knew about the 'common carrier' obligations …. Yet, in an effort to get the Tribe's consent, it

6    represented that it could honor those limitations …. The Tribe was of course ignorant that

7    BNSF would later take the inconsistent position that the conditions of the Easement are

8    unenforceable, and it granted its consent to the Right-of-Way in reliance of the railroad's

9    representations." Mot. 24:18–24. The Tribe's equitable estoppel argument thus directly

10   depends on Burlington Northern's and the Tribe's knowledge at the time of the Settlement and

11   Easement negotiations.

12       BNSF is at a disadvantage in rebutting the factual claims that underlie the Tribe's

13   arguments. To BNSF's knowledge, all of the Burlington Northern employees who took part in

14   the settlement negotiations and its prior outside counsel (Lawrence Silvernale) are deceased.

15   Moreover, BNSF—which was formed in 1995 by a merger between Burlington Northern, Inc.

16   and Santa Fe Pacific Corp.—has been unable to locate any of Burlington Northern's records

17   from the prior litigation and settlement process. Declaration of James Obermiller, ¶¶ 3-4.

18   Thus, unlike the Tribe, BNSF does not have any documents or individuals to consult outside of

19   the discovery process regarding what information was conveyed to the Tribe's counsel and, by

20   extension, the Tribe regarding Burlington Northern's common-carrier obligations. BNSF is

21   therefore wholly dependent on document and deposition discovery against the Tribe and non-

22   parties such as the Tribe's prior counsel and the BIA to inform itself fully about these

23   negotiations to rebut the factual assertions that the Tribe uses to advance its summary judgment

24   arguments.

25       The Tribe has offered the declaration of its former in-house attorney and current

26   General Manager, Allan Olson, to support its factual claims about the prior settlement

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 9
No. 2:15-cv-00543-RSL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044  Tel: 206.839.4800

1   negotiations.   However, BNSF has yet to depose Mr. Olson, including asking him about
2   specific documents that appear to rebut his declaration testimony that Burlington Northern did
3   not inform the Tribe about the extent of its common-carrier obligations.  Mr. Olson appears to
4   be the key witness for the Tribe on this issue, and the Tribe has directly placed at-issue Mr.
5   Olson's knowledge and communications about these matters with the Tribe and its outside
6   counsel, Mr. Dauphinais.   In fact, Mr. Olson admits in his declaration that he was "very
7   involved in the negotiation of both agreements." Olson Decl., ¶ 2.  Mr. Olson also participated
8   in the Tribe's decision in 2012 to not consent to increased rail traffic or the shipment of crude
9   oil over the Easement.  *See* Escobar Decl., Exh. B (Response to Interrogatory No. 3).   In
10   addition to Mr. Olson, the Tribe identified in its interrogatory responses five current or former
11   living senators and its counsel from the NARF, Richard Dauphinais, as individuals who
12   participated in or have knowledge of the prior litigation's settlement negotiations.  *See id.*
13   (Response to Interrogatory Nos. 1, 2).

14       Mr. Olson and these other individuals are still with the Tribe, and BNSF intends to
15   depose them on their knowledge, the "historical" documents, and any internal and external
16   communications—whether at the time or more recently—that they have had about the prior
17   settlement negotiations.  (The Tribe has not produced any of the internal communications,
18   which are responsive to BNSF's Request for Production Nos. 1, 3, 4, 12, 13, 26, 38.  *See*
19   Escobar Decl., Exh. A).  Before BNSF can depose any of these individuals—and, specifically,
20   Mr. Olson—BNSF needs these written communications—not to mention other contemporary
21   documents which could shed further light on the past negotiations.

22       Without receiving the remainder of the Tribe's documents regarding the settlement
23   negotiations, and being able to depose Mr. Olson at the very least, BNSF is left to try to rebut
24   the Tribe's legal arguments that are based on asserted facts that are in the Tribe's sole
25   possession and are the subject of discovery that has not yet been completed.  This situation falls
26   squarely within Rule 56(d)'s purview.  BNSF respectfully submits that the Court should adhere

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 10
No. 2:15-cv-00543-RSL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044  Tel: 206.839.4800

1   to Ninth Circuit precedent by continuing the Tribe's summary judgment motion until such time

2   as (1) the Tribe completes its long outstanding document production, (2) BNSF completes its

3   depositions of Mr. Olson and the Tribal members identified in response to Interrogatory Nos. 1

4   and 2, (3) BNSF receives documents from and completes its depositions of the NARF and

5   Richard Dauphinais, and (4) BNSF has the opportunity to seek documents from the BIA and

6   depose BIA or former-BIA officials.

7                          IV.    CONCLUSION

8          For all of the foregoing reasons, BNSF respectfully requests that the Tribe's summary

9   judgment motion be denied or continued pending the completion of additional discovery.

10

11          Respectfully submitted this 17th day of March, 2016.

12                              s/ Stellman Keehnel
                                s/ Andrew R. Escobar
13                              s/ Jeffrey B. DeGroot
                                Stellman Keehnel, WSBA No. 9309
14                              Andrew R. Escobar, WSBA No. 42793
                                Jeffrey B. DeGroot, WSBA No. 46839
15                              DLA PIPER LLP (US)
                                701 Fifth Avenue, Suite 7000
16                              Seattle, Washington  98104
                                Tel:    206.839.4800
17                              Fax:    206.839.4801
                                E-mail:  stellman.keehnel@dlapiper.com
18                              E-mail:  andrew.escobar@dlapiper.com
                                E-mail:  jeff.degroot@dlapiper.com
19
                                Attorneys for defendant BNSF Railway Company
20

21

22

23

24

25

26

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 11
No. 2:15-cv-00543-RSL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044  Tel: 206.839.4800

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on March 17, 2016, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

attorneys of record for the parties.

5

    Dated this 17th day of March, 2016.

6

7

                  *s/ Stellman Keehnel*

8

                  Stellman Keehnel, WSBA No. 9309

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT BNSF RAILWAY COMPANY'S
MOTION UNDER FRCP 56(d) FOR REASONABLE
CONTINUANCE - 12
No. 2:15-cv-00543-RSL

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044  Tel: 206.839.4800