1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

_____
                                     )
SWINOMISH INDIAN TRIBAL              )
COMMUNITY,                           )        No. C15-0543RSL
                                     )
             Plaintiff,              )
        v.                           )
                                     )
BNSF RAILWAY COMPANY,                )        ORDER REGARDING BNSF'S
                                     )        MOTION TO COMPEL DISCOVERY
             Defendant.              )
_____)

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

   This matter comes before the Court on "BNSF Railway Company's Motion to Compel
Discovery." Dkt. # 42. BNSF served discovery on the Tribe in November 2015 seeking a wide
array of information, including "[a]ll documents related to BNSF running trains across the
Tribe's reservation" and "[a]ll internal communications related to the Easement." Dkt. # 42-1,
RFP Nos. 2 and 12. To the extent BNSF sought documents protected by a privilege and/or
documents created after this action was filed, the Tribe objected.

   On March 10, 2016, the Tribe filed a motion for summary judgment regarding BNSF's
contention that this lawsuit is preempted by the Interstate Commerce Commission Termination
Act ("ICCTA") because enforcement of the Easement Agreement negotiated between the parties
in 1990 would impede BNSF's ability to satisfy its common carrier obligations. The Tribe
argues that a railway's voluntary contractual commitments are enforceable, that the terms of the
Easement Agreement are clear, that the ICCTA cannot preempt the Indian Right-of-Way Act

ORDER REGARDING BNSF'S
MOTION TO COMPEL DISCOVERY

("IRWA") that governs this case, and that BNSF is estopped from asserting a preemption defense. In support of the first and fourth arguments, the Tribe discusses the intent of the parties and asserts that it had no reason to suspect that BNSF would later claim that the limitations contained in the agreement were unenforceable due to its status as a common carrier. The Tribe provided details regarding the course of the negotiations between the parties and the chronology of events that resulted in the Easement Agreement. In addition, it submitted the declaration of Allan Olson, its current General Manager and the Tribe's in-house attorney at the time the Easement Agreement was executed. Mr. Olson states in relevant part:

> The specific terms and conditions contained in the Easement Agreement were very important to the Tribe. Absent those conditions, the Tribe would not have given its consent for a right-of-way grant to BN. Instead, the Tribe would have continued with the litigation of its trespass claims. Had the Tribe known that BNSF would later take the position that the Easement Agreement conditions were unenforceable due to BNSF's common carrier obligations, the Tribe never would have consented to the Right-of-Way.

Dkt. # 32 at ¶ 6. BNSF argues that the Tribe has put its otherwise privileged communications at issue and should be compelled to turn over any and all communications with counsel that analyze or discuss BNSF's common carrier obligations and the impact they could have on enforcement of the Easement Agreement. In addition, BNSF argues that the Tribe has a continuing obligation to produce responsive documents, even if they are generated or received after litigation commences.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

**A. Privileged Documents and Communications**

In a case involving a federal question, "[t]he common law – as interpreted by United States court in the light of reason and experience – governs a claim of privilege" absent a contrary provision in the United States Constitution, federal statutes, or rules prescribed by the

ORDER REGARDING BNSF'S
MOTION TO COMPEL DISCOVERY                -2-

1 Supreme Court. Fed. R. Ev. 501. The Ninth Circuit applies the so-called Hearn test when

2 determining whether there has been an implied waiver of the attorney-client privilege. U.S. v.

3 Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (citing Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.

4 Wash. 1975)). Under that test, the privilege is waived where "(1) assertion of the privilege was

5 the result of some affirmative act, such as filing suit, by the asserting party; (2) through this

6 affirmative act, the asserting party put the protected information at issue by making it relevant to

7 the case; and (3) application of the privilege would have denied the opposing party access to

8 information vital to his defense." Hearn, 68 F.R.D. at 581. The overarching goal is to prevent

9 parties from using the privilege as both a sword and a shield: if a party affirmatively uses

10 privileged information to support a claim or defeat a defense, it cannot protect related

11 information that must be disclosed if the opposing party is to have a fair chance to refute the

12 privileged evidence. Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992);

13 Hearn, 68 F.R.D. at 581.[1]

14       In Home Indem. Co. v. Lane Powell Moss and Miller, 43 F.3d 1322, 1326 (9th Cir.

15 1995), the plaintiffs arguably put into issue privileged information concerning their state of mind

16 and motivations during settlement negotiations. The Ninth Circuit found that such reliance on

17 privileged communications would satisfy the first and second prongs of the Hearn test, but found

18 that the information was not sufficiently vital to the opposing party's defense to satisfy the third

19

20       [1] The Hearn test has, as the Tribe pointed out, been criticized in other circuits. In the Third

21 Circuit's view, Hearn appears to abrogate the privilege based on little more than a finding of relevance
and unfairness. Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994). The

22 Second Circuit has noted that "Hearn is problematic insofar as there are very few instances in which the
Hearn factors, taken at face value, do not apply and, therefore, a large majority of claims of privilege

23 would be subject to waiver." In re County of Erie, 546 F.3d 222, 227 (2d Cir. 2008)). The courts of this

24 circuit have not applied Hearn in a sweeping manner, however, and take care that waiver does not
swallow the common law attorney-client privilege. The undersigned recognizes the competing interests

25 and applies the test in light of the needs of the case and with a good measure of common sense and
restraint.

26

ORDER REGARDING BNSF'S
MOTION TO COMPEL DISCOVERY          -3-

1   prong of the test. In this case, the Tribe has similarly relied on privileged information regarding

2   prior settlement negotiations in its effort to obtain judgment on BNSF's preemption defense.

3   Contrary to the Tribe's argument, filing suit is not the only affirmative act a party may

4   undertake: seeking judgment on a claim or defense is also an affirmative act. The first prong of

5   the Hearn test is therefore met. With regards to the second prong, the Tribe authorized its

6   counsel to disclose information regarding their communications, making the content of those

7   communications relevant to the case. The clear implication of Mr. Olson's declaration is not

8   only that BNSF's predecessor never told the Tribe that the railroad might not be able to comply

9   with the negotiated limits in the Easement Agreement (a topic discussed in paragraph 7 of the

10  declaration that does not implicate attorney/client communications), but also that the Tribe had

11  no inkling of such a possibility from any source and that the negotiated limitations were essential

12  to the Tribe's consent. Paragraph 6 of the Olson Declaration squarely placed at issue the Tribe's

13  state of mind as to the importance of the limitations and whether counsel, being aware of

14  BNSF's common carrier status, informed the Tribe that the railway's obligations might trump

15  the terms of the negotiated settlement once a right-of-way came into existence.

16          The question then becomes whether communications related to those that the Tribe

17  introduced into the litigation are "vital" to BNSF's ability to respond to the motion for summary

18  judgment. Protected communications are considered vital when they contain information about a

19  disputed issue that is not available from any other nonprivileged source. Amlani, 169 F.3d at

20  1195-96. The Tribe argues – with the support of Mr. Olson's declaration – that (1) BNSF's

21  voluntary undertakings in the Easement Agreement are clear and should be enforced, (2) BNSF

22  should be estopped from raising a preemption argument because its predecessor acted

23  inconsistently when negotiating the settlement, and (3) the Tribe would not have consented to

24  the right-of-way had it been aware that BNSF would argue that the negotiated limitations were

25  illusory. Mr. Olson's statements regarding what the Tribe's knowledge and motivation at the

26

ORDER REGARDING BNSF'S
MOTION TO COMPEL DISCOVERY          -4-

1  time it negotiated the Easement Agreement go to all of these arguments. As the record now

2  stands, discovery regarding related communications is vital to BNSF's ability to respond to the

3  privileged materials offered by the Tribe.

4  The Tribe argues that, as was the case in Home Indem. Co., 43 F.3d at 1327, the

5  privileged information is not "vital" because the Tribe's interpretation of the Easement

6  Agreement and reasonable reliance are amply supported by non-privileged evidence. In Home,

7  the trial court warned plaintiff that if it attempted to justify its actions on the basis of counsel's

8  recommendations, the privilege would be waived. If, however, Home litigated the

9  reasonableness of its actions "on objective terms apart from the advice of counsel, the attorney-

10 client privilege would be protected." Id. Here, the Tribe argues that it could have moved for

11 summary judgment based solely on non-privileged evidence, such as the docket of the previous

12 litigation and the non-privileged communications between the parties. The Court will, therefore,

13 give the Tribe the same choice that was presented to Home: if it chooses to withdraw paragraph

14 6 of the Olson Declaration, its attorney-client privileged communications will not be at issue and

15 there will be no need for the discovery sought by BNSF. If, however, the Tribe continues to rely

16 on the declaration of counsel regarding what the Tribe knew regarding the impact of BNSF's

17 common carrier status and the importance of the negotiated limitations to the Tribe's

18 decisionmaking, a waiver will have occurred, and the motion to compel will be granted.

19 **B. "Time Period Objection"**

20 The Tribe has objected to producing any documents that were created after this litigation

21 was filed on the ground that they are not relevant. As BNSF points out, there is no blanket

22 prohibition on discovery of post-litigation documents. There are a vast array of situations in

23 which evidence supporting or disproving a claim could come into existence after litigation is

24 joined and be subject to discovery. For example, an insured that has asserted a bad faith claim is

25 permitted to take discovery regarding the manner in which an insurer is handling its claim and an

26

ORDER REGARDING BNSF'S
MOTION TO COMPEL DISCOVERY        -5-

alleged tortfeasor in a personal injury suit is entitled to discover whether the plaintiff has engaged in activities that are incompatible with the injuries alleged. It is also possible to imagine "that at some point in most civil suits the focus of the principals' discussions shifts from the acts or omissions giving rise to the claims to the prosecution or defense of the lawsuit." Capitol Records, Inc. v. MP3tunes, LLC, 261 F.R.D. 44, 51 (S.D.N.Y. 2009). Once that point is reached, most, if not everything, is then subject to the attorney/client privilege and/or the work product doctrine. The small chance that some discoverable document may exist is outweighed by the burdens of having to collect and log the vast majority of documents that is not discoverable. Given the increased emphasis on proportionality in the Federal Civil Rules of Procedure, the Court takes seriously the need to balance the parties' interests.

In this case, the primary issues are the interpretation of the Easement Agreement, preemption, and whether the Tribe acted arbitrarily when it refused to consent to an expansion of BNSF's use of the right-of-way. The first issue will be decided based on the language of the agreement and the intent of the parties a quarter century ago. BNSF speculates that Mr. Olson may have summarized his memories of the relevant events for purposes of this litigation, but such work would clearly be protected and is not subject to the waiver discussed above. The second issue will be informed by federal law. As to the third issue, BNSF argues that the reasonableness of the Tribe's decision to withhold consent must be evaluated on an on-going basis, presumably up to the date of trial. If that were the case, current events and activities would arguably be relevant to the analysis. BNSF offers no authority or other support for the extraordinary proposition that a contractual provision requiring a party to act reasonably (or prohibiting arbitrariness) imposes a duty to reevaluate an action every day going forward and to undo or override it if circumstances have changed. Such an interpretation would be unreasonable, if not impossible. The Court finds that the Easement Agreement imposes only an obligation to act reasonably or non-arbitrarily at the time the decision was made. At the very

1    latest, the Tribe's opposition to any expansion solidified by the time it filed this lawsuit. An

2    April 7, 2015, cutoff date for discovery is, therefore, appropriate.

3

4         For all of the foregoing reasons, the Tribe may, within seven days of the date of this

5    Order, file a notice withdrawing paragraph 6 of the Olson Declaration. If the paragraph is

6    withdrawn, the Court will neither consider nor rely upon it when evaluating plaintiff's motion

7    for summary judgment. If the Tribe does not withdraw paragraph 6, it shall, within twenty-one

8    days of the date of this Order, supplement its discovery responses to provide documents over

9    which the Tribe had previously claimed a privilege regarding or reflecting the Tribe's

10   knowledge of Burlington Northern's common carrier status, its understanding of how that status

11   might impact the railway's ability to limit the type or volume of cargo shipped across the right-

12   of-way, and/or the importance the Tribe placed on the negotiated limitations in deciding whether

13   to consent to the right-of-way. The Tribe's "Time Period Objection" is upheld.

14

15        Dated this 6th day of May, 2016.

16

17                                          _Mht S Lasnik_____
                                            Robert S. Lasnik
18                                          United States District Judge

19

20

21

22

23

24

25

26

ORDER REGARDING BNSF'S
MOTION TO COMPEL DISCOVERY            -7-