THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SWINOMISH INDIAN TRIBAL
COMMUNITY, a federally recognized Indian
tribe,

                      Plaintiff,

v.

BNSF RAILWAY COMPANY, a Delaware
corporation,

                    Defendant.

NO. 2:15-cv-00543 - RSL

**OPPOSITION TO DEFENDANT
BNSF RAILWAY COMPANY'S
MOTION TO COMPEL**

**NOTE ON MOTION CALENDAR:
Friday, July 22, 2016**

## I.     RELIEF REQUESTED

The Court has already once determined that Paragraph 7 of the Declaration of Allan Olson in support of Plaintiff Swinomish Indian Tribal Community's (the "Tribe") motion for summary judgment does not implicate the attorney client privilege. Now, Defendant BNSF Railway Company's ("BNSF") argues that the final sentence of the paragraph — in which Mr. Olson states that the Tribe would never have agreed to the parties' right-of-way easement agreement if Burlington Northern had indicated the agreement may be unenforceable due to common carrier obligations — could only have been based on privileged communications. BNSF's argument is nonsensical. As Mr. Olson testified, Burlington Northern never once raised the possibility that it might one day argue that its voluntary agreement was unenforceable due to common carrier obligations. Therefore, the issue never came up at all and was never the subject of any communications between Mr. Olson and the Tribe whatsoever. On the contrary, Mr.

OPPOSITION TO DEFENDANT BNSF RAILWAY
COMPANY'S MOTION TO COMPEL (No. 15-00543) - 1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
TEL. (206) 682-5600 ● FAX (206) 682-2992

Olson's statement was based on his knowledge, as the Tribe's in-house counsel, that the Tribe wanted and expected its agreement with Burlington Northern to be enforceable. The Tribe respectfully requests that the Court deny Defendant BNSF's motion to compel.

## II.    FACTS

The Court is well-versed in the facts pertaining to this matter.  To summarize, the Tribe and BNSF's predecessor, Burlington Northern ("BN"), entered into a right-of-way easement agreement (the "Easement Agreement") under the auspices of the Indian Right of Way Act ("IRWA"), in order to resolve litigation regarding the railroad's decades-long trespass upon the Tribe's treaty-reserved trust lands.  BNSF has flouted the agreed-upon limitations on train traffic contained in the Easement Agreement.  BNSF does not dispute that it has done so.  Instead, in response to the Tribe's efforts to enforce the Easement Agreement's terms and conditions, BNSF asserts that the Tribe knew or should have known that BNSF would be entitled to ignore those agreed-upon conditions based on its "common carrier" obligations.

Any party who enters into a contract expects it to be enforceable.  Allan Olson stated as much in Paragraph 7 of his declaration in support of the Tribe's summary judgment motion, in which he stated:

> Never once did BN indicate to the Tribe that it might not be able to comply with the limitations contained in the Easement Agreement due to common carrier obligations, or that it considered the Easement Agreement to be subordinate to ICC or common carrier obligations.  If BN had done so, the Tribe would never have granted its consent to the Right-of-Way.

After BNSF's previous motion to compel, the Court concluded that Paragraph 7 does not implicate the attorney-client privilege.  *See* May 6, 2016 Order Regarding BNSF's Motion To Compel Discovery, at pg. 4, lines 9-10 (Docket #47).  Nevertheless, BNSF now asserts that the final sentence of Paragraph 7 — that the Tribe would never have agreed to the Easement Agreement if BN had indicated the agreement may be unenforceable due to common carrier obligations — could only have been based on privileged communications.  BNSF's argument is nonsensical.  BNSF does not dispute that "[n]ever once did BN indicate to the Tribe that it might

OPPOSITION TO DEFENDANT BNSF RAILWAY
COMPANY'S MOTION TO COMPEL (No. 15-00543) - 2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

not be able to comply with the limitations contained in the Easement Agreement due to common carrier obligations." Since BN never brought up the possibility, there was never any reason for the Tribe to discuss it or even consider it.

Thus, far from being based on hypothetical communications that could never have taken place, Mr. Olson's statement was based on his knowledge, as the Tribe's in-house attorney, that the Tribe — like any party that enters into a contract — desires and expects that contract to be enforceable.

### III.    ARGUMENT

**A.    BNSF Is Seeking Hypothetical Privileged Communications That Do Not Exist**

Paragraph 7 of Mr. Olson's declaration essentially consists of two propositions. Proposition A is that BN never once indicated that it might be able to back out of the Easement Agreement based on its common carrier obligations. Proposition B is that *if* BN *had* indicated that it might be able to back out of the Easement Agreement based on its common carrier obligations, the Tribe never would have entered into the Easement Agreement.

BNSF now argues that Mr. Olson could only have become aware of the basis for Proposition B through communications with the Tribe. In other words, BNSF seems to be saying that, at some point, the Tribe communicated to Mr. Olson something along the lines of: "By the way, if BN happens to tell you that it can back out of the Easement Agreement due to common carrier obligations, we will not enter into the agreement." But this is patently absurd. As Mr. Olson stated in Proposition A, any alleged limitations BN might have had based on common carrier obligations ***never came up at all***. BNSF does not, and cannot, dispute the truth of this statement. Therefore, there was never any reason for the Tribe and its counsel to have any communications on the subject. In essence, BNSF asserts a waiver on the basis of a communication that cannot possibly have taken place.

BNSF turns to Mr. Olson's deposition testimony to support its proposition that Mr. Olson could only have based Proposition B on communications with the Tribe. But BNSF's

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

highly selective quotes of Mr. Olson's testimony do not tell the whole story.  First, Mr. Olson confirmed the fact that BN never raised the specter of any ability to back out of its agreement due to common carrier obligations.

> Q.     Did Mr. Silvernale ever express to the tribe that BN needed to fulfill its common-carrier obligations in connection with any settlement that was reached?
>
> A.     I don't recall that, no.

*See* Declaration of Paul W. Moomaw, at Exhibit A, pg. 76:18-21.

And, because BN never raised the possibility, it was not something the Tribe ever discussed or even considered.  As Mr. Olson testified:

> Q.     Okay. Was the status of BN as a common carrier ever brought up at a tribal senate meeting?
>
> A.     Not to my knowledge.

*Id*. at Exhibit A, pg. 77:5-7.

> Q.     Okay.  Did the tribe in connection with the settlement negotiations ever undertake to research what B — what BN's common-carrier obligations were under federal law?
>
> A.     My recollection is they did not. There was some discussion about Burling — the rules that apply to — to Burlington Northern's ability to abandon the railroad and to take the tracks up and — and not provide service. I believe the tribe understood there were some rules that applied to Burlington Northern about its ability to abandon service. The tribe didn't — not know, to my recollection, what those rules were or how they operated.

*Id*. at Exhibit A, pp. 80:13-81:6.

> Q.     Did the tribe when it agreed to approve — strike that. On or before August 1, 1989, when the tribe approved the settlement's agreement and Right-of-Way Agreement, had the tribe undertaken any research or made an attempt to get an understanding of what impact BN's common-carrier obligations could have on a 25-car limitation?
>
> A.     Not to my knowledge.
>
> Q.     And so the tribe as of that point in time, you know, the summer of 1989, had it ever undertaken to research or analyze whether the terms of the right-of-way easement would be subordinate to the ICC or BN's common-carrier obligations?
>
> A.     Not to my knowledge.

**OPPOSITION TO DEFENDANT BNSF RAILWAY COMPANY'S MOTION TO COMPEL** (No. 15-00543) - 4

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

*Id*. at Exhibit A, pg. 82:2-13.

In other words, because BN never brought the issue up, it was simply never a topic of inquiry or communication.  And this is exactly the point.  If BN knew that there were any limitations on its ability to comply with the Easement Agreement, it had an obligation to alert the Tribe to those limitations — just as BN had done in discussions of a potential abandonment of the rail line — so that the Tribe could make an informed decision about whether it wanted to consent to the agreement in light thereof.  But BN never did so.  And because it never did so, the Tribe had no choice but to take BN's explicit promises contained in the Easement Agreement at face value.

Therefore, contrary to BNSF's suggestion, Mr. Olson did not base the last sentence of Paragraph 7 on some privileged communication with the Tribe.  Mr. Olson's deposition testimony quoted above states that there never was any such communication.  Instead, he based it on his knowledge, as the Tribe's attorney, that ***the Tribe wanted and expected its agreements with BN to be enforceable***.  As he testified:

> Q.     What's the basis for your knowledge here of the end of [Paragraph 7]? If BN had done so, the tribe would have never granted consent?
>
> A.     The limitations on cars and trains and notice were critical elements to the compromise the tribe ultimately agreed to in entering into this agreement. They were critical. ***If — if the tribe had thought that these provisions could not be fully enforced, they would not have made the compromises they did to sign this agreement***. Again, their — their goal was to not have the railroad there at all. This was a compromise. It needed to be, quote, taken to the bank, and this had to be absolutely enforceable. ***If not, it's — it would have been an illusory contract and the tribe would not have signed it***.

*Id*. at Exhibit A, pg. 83:3-16 (emphasis added).

This proposition is so self-evident that it frankly seems absurd that it is the subject of yet another discovery motion.  Of course the Tribe wanted the Easement Agreement to be enforceable.  Every party that enters into an agreement wants and expects it to be enforceable.  That is the entire premise behind contract law.  And there are few parties more sensitive to the imperative of honoring contractual commitments than tribes with a history of seeing fundamental treaty promises disregarded.  Thus, Mr. Olson's knowledge that the Tribe would

OPPOSITION TO DEFENDANT BNSF RAILWAY
COMPANY'S MOTION TO COMPEL (No. 15-00543) - 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

not have signed the agreement if it thought it might not be enforceable is not based on any particular communication.  It is the knowledge of an in-house tribal lawyer who was working with his client to negotiate an enforceable agreement, and who was painfully aware of the history of the dealings between the Tribe and BN.  As the lengthy history of the litigation surrounding BN's trespass and its efforts to get a right-of-way without Tribal consent makes clear, the Tribe had no intention of consenting to a right-of-way at all, and only did so based on the agreed-upon terms and conditions of the Easement Agreement.  Plainly, Mr. Olson knew this.

Mr. Olson made it clear in his deposition testimony that he had no communications with the Tribe on the subject of what the Tribe may have done if BN had indicated the agreement was not enforceable due to common carrier obligations, because BN never brought it up.  And he again made it clear that the Tribe simply expected BN to be able to live up to its voluntary agreement.

> Q.     Any other — is there any other source of information for the statements aside from the executive sessions that the tribal senate had?
>
> A.     You can ask — ask me in the deposition this afternoon. I mean, Rick and I talked about it a lot. It was — it was absolute clarity on the need for this to be fully enforceable. *I mean, again, the word is "if" BN had done so, BN did not*; they never talked to us about that. This was a complicated set of regulations, I suspect, and *we relied on Burlington coming to the table and entering into agreement and making the promises and being able to carry out the promises that they made*.

*Id*. at <u>Exhibit A</u>, pp. 83:21-84:7 (emphasis added).

**B.     A Privilege Waiver Should Be Narrowly Tailored**

As the Tribe pointed out in its response to BNSF's previous motion to compel, even if the Court is inclined to find a waiver of attorney-client communications between Mr. Olson and the Tribe, the waiver must be narrowly tailored to address the specific issue BNSF has placed at issue: communications between Mr. Olson and the Tribe that go to (a) any indication by BN that it could not comply with the Easement Agreement as a result of its common carrier obligations, and (b) whether the Tribe would have entered into the Easement Agreement if it had known the

**OPPOSITION TO DEFENDANT BNSF RAILWAY COMPANY'S MOTION TO COMPEL** (No. 15-00543) - 6

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 ● FAX (206) 682-2992

railroad would later take the position that it could not comply with the Easement Agreement as a result of its common carrier obligations.  As the court stated in *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003):

> [T]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.  Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to suit that purpose.  Courts, including ours, that have imposed waivers under the fairness principle have therefore closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question.

*Bittaker*, 331 F.3d at 720—21 (citing *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 405 (1976); *Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 652 (9th Cir. 1978)).

Again, as discussed in Mr. Olson's deposition testimony, because BN never brought the issue up at all, there is no reason to think that any such communications exist and, therefore, it would be an inefficient waste of time and resources for the Tribe to sift through hundreds of documents to seek out anything relevant or responsive.  But in any event, BNSF cannot employ the alleged waiver that is the subject of its motion as leverage to gain access to communications that are plainly beyond its scope.

## C. If the Court Orders That the Last Sentence of Paragraph 7 from Mr. Olson's Declaration Be Stricken or the Privilege Waived, the Tribe Will Be in a Position to Make an Informed Decision as to Striking the Sentence

After BNSF's previous motion to compel, the Court resolved the issue by giving the Tribe the option to strike Paragraph 6 of Mr. Olson's declaration, to avoid a waiver of the attorney-client privilege. As cited above, the Court specifically found that Paragraph 7 did not implicate the privilege.

BNSF seems to assert that, because its counsel already gave the Tribe's counsel the opportunity to strike the last sentence of Paragraph 7 before it brought the instant motion, the Court should not do so now.  This assertion is meritless.  Plainly, as discussed at length above, the Tribe vehemently disputes that any portion of Paragraph 7 was based on privileged communications.  Ultimately, whether it is or is not is the Court's decision.  Therefore, it is only the Court that can order the Tribe either to strike the passage in question or divulge the

OPPOSITION TO DEFENDANT BNSF RAILWAY
COMPANY'S MOTION TO COMPEL (No. 15-00543) - 7

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

1  hypothetical privileged materials.  Further, the Tribe would of course benefit from the Court's

2  analysis before making a determination. If the Court determines that the passage implicates the

3  attorney-client privilege, the Tribe will be in a position to make an informed decision as to

4  striking that sentence, just as it did with Paragraph 6.

### IV.    CONCLUSION

For the foregoing reasons, the Tribe respectfully requests that the Court deny BNSF'

motion to compel.

DATED this 18th day of July, 2016.

**TOUSLEY BRAIN STEPHENS PLLC**

By: _/s/ Christopher I. Brain_____
     Christopher I. Brain, WSBA #5054
     cbrain@tousley.com

By: _/s/ Paul W. Moomaw_____
     Paul W. Moomaw, WSBA #32728
     pmoomaw@tousley.com
     1700 Seventh Avenue, Suite 2200
     Seattle, Washington  98101-1332
     T:  206.682.5600
     F:  206.682.2992

**OFFICE OF THE TRIBAL ATTORNEY,
SWINOMISH INDIAN TRIBAL COMMUNITY**

By: _/s/  Stephen T. LeCuyer_____
     Stephen T. LeCuyer, WSBA #36408
     slecuyer@swinomish.nsn.us
     11404 Moorage Way
     LaConner, WA  98257
     T:   360.466.1058
     F:   360.466.5309
     *Attorneys for Plaintiff*

*5973/001/338265.1*

**OPPOSITION TO DEFENDANT BNSF RAILWAY
COMPANY'S MOTION TO COMPEL** (No. 15-00543) - 8

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-1332
TEL. (206) 682-5600 • FAX (206) 682-2992

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that on July 18, 2016, I electronically filed the foregoing with the Clerk

4  of the Court using the CM/ECF system which will send notification of such filing to all counsel

   of record.

5

6      DATED at Seattle, Washington, this 18th day of July, 2016.

7

8                          *TOUSLEY BRAIN STEPHENS PLLC*

9

10                         By:  */s/ Paul W. Moomaw*
                           By:  */s/ Christopher I. Brain*
11                         Christopher I. Brain, PS WSBA #5054
                           cbrain@tousley.com
12                         Paul W. Moomaw, WSBA #32728
                           pmoomaw@tousley.com
13                         1700 Seventh Avenue, Suite 2200
                           Seattle, Washington  98101-1332
14                         T:  206.682.5600
                           F:  206.682.2992
15

16

17

18

19

20

21

22

23

24

25

26

27