UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SWINOMISH INDIAN TRIBAL
COMMUNITY, a federally recognized
Indian Tribe,

        Plaintiff,

     v.

BNSF RAILWAY COMPANY, a Delaware
corporation,

        Defendant.

Case No. C15-0543RSL

ORDER GRANTING PLAINTIFF'S
MOTION FOR RECONSIDERATION

This matter comes before the Court on "Plaintiff's Motion for Reconsideration." Dkt. # 77. The Swinomish Indian Tribal Community filed this lawsuit in April 2015 alleging that BNSF Railway Company breached provisions of a Right-of-Way Easement Agreement ("Easement Agreement") that governed BNSF's access to tribal lands. The Tribe asserted breach of contract and trespass claims and sought damages, declaratory judgment, and injunctive relief. BNSF raised preemption as an affirmative defense, arguing that the Tribe's claims are barred by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10501 *et seq*. The Tribe filed a motion for a summary determination of the preemption defense. BNSF cross-moved on the preemption issue and sought judgment in its favor on the breach of contract, trespass, and injunctive relief claims.

ORDER GRANTING PLAINTIFF'S
MOTION FOR RECONSIDERATION - 1

After considering the cross-motions and hearing the arguments of counsel, the Court found that there was no genuine issue of fact regarding the existence of a breach. Contrary to the terms of the Easement Agreement, BNSF neither apprised the Tribe of its cargo nor obtained the Tribe's written agreement to an increase in the number of trains and the number of cars in those trains. Dkt. # 75 at 6. The Tribe's claims for damages related to those breaches and to compel future productions and rental adjustments could proceed. The Court found, however, that the Tribe's state law claims for an injunction limiting the number of cars and/or the type of cargo that cross the reservation were preempted under 49 U.S.C. § 10501(b) because such an injunction would interfere with the carrier's operations and unreasonably burden interstate commerce. The Tribe could pursue the same type of relief under the Indian Right of Way Act of 1948, 25 U.S.C. §§ 323-328 ("IRWA"), even though the remedies afforded by the IRWA, namely the enforcement or cancellation of the terms of the right of way pursuant to 25 C.F.R. Part 169, would significantly impact BNSF's operations and rail transportation in the region.

The Tribe filed this motion for reconsideration, arguing that its breach of contract and trespass claims were asserted under federal, not state, law and that the Court's preemption analysis was inapposite. Motions for reconsideration are disfavored in this district and will be granted only upon a "showing of manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the Court's] attention earlier without reasonable diligence." LCR 7(h)(1). The Tribe has shown manifest error: the Court incorrectly analyzed the breach of contract and trespass claims as if they arose under state law. Issues pertaining to tribes, including actions for trespass on tribal lands, are the exclusive province of federal law. See Oneida Cnty v. Oneida Indian Nation of N.Y., 414 U.S. 661, 667 (1985); U.S. v. Milner, 583 F.3d 1174, 1182 (9th Cir. 2009).

The question then becomes whether this distinction makes a difference to the outcome of the case. An injunction enforcing the terms of the Easement Agreement under federal law will affect BNSF's rail operations to the same extent and in exactly the same way as would a similar

ORDER GRANTING PLAINTIFF'S
MOTION FOR RECONSIDERATION - 2

injunction issued under state law. BNSF argues that the analysis and result of the state and federal claims should be the same, pointing out that the ICCTA expressly preempts "remedies provided by Federal or State law." As discussed more fully in the underlying order, however, neither the Surface Transportation Board ("STB") nor the courts view the reference to federal law in § 10501(b) as an explicit preemption of all federal law.[1] Preemption is a function of the Supremacy Clause of the United States Constitution, Art. VI cl. 2, and applies to state laws that conflict or interfere with the "supreme Law of the Land," namely the Constitution, federal laws, and treaties. Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 604 (1991) (citing Gibbons v. Ogden, 22 U.S. 1 (1824)). Where, as in this case, a treaty is pitted against a federal statute,[2] there is no issue of preemption. See Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp., 724 F.3d 230, 234-35 (D.C. Cir. 2013) ("The Constitution places treaties and federal statutes on equal legal footing – both are 'the supreme Law of the Land.'") (quoting).

The correct analysis when considering the Tribe's treaty-based federal common law claim is not whether the requested relief would interfere with rail transportation, but whether Congress intended to repeal the Treaty of Point Elliott when it enacted the ICCTA. The Court finds that it did not. The express reference to preemption of federal law in § 10501(b) does not necessarily invalidate or repeal other federal law. To the extent BNSF is arguing that the ICCTA implicitly

---

[1] See BNSF Ry. Co. v. Albany & E. R.R. Co., 741 F. Supp. 2d 1184, 1198 (D. Or. 2010) (antitrust challenge to a rail line sale transaction that the STB had deemed exempt was not preempted); CSX Trans., Inc., FD 34662, 2005 WL 584026, at *8 (STB Mar. 14, 2005) ("[A]lthough a literal reading of section 10501(b) might suggest that it supersedes other federal law, the Board and the courts have rejected such an interpretation as overbroad and unworkable. Instead, the Board and the courts have harmonized section 10501(b) with federal statutes . . . ."); Boston and Me. Corp., FD 33971, 2001 WL 458685, at *5 (STB Apr. 30, 2001) ("[N]othing in section 10501(b) is intended to interfere with the role of state and local agencies in implementing Federal environmental statutes . . . ."); Borough of Riverdale, FD 33466, 1999 WL 715272, at * 5 (STB Sept. 9, 1999) (". . . Congress did not intend to preempt federal environmental statutes such as the Clean Air Act and the Clean Water Act.").

[2] The Treaty of Point Elliott of 1855 established the Swinomish Reservation for the Tribe's "exclusive use," and it is this right that the Tribe seeks to enforce under federal law. 12 Stat. 927, 1859 WL 10138 at *2 (signed Jan. 22, 1855).

ORDER GRANTING PLAINTIFF'S
MOTION FOR RECONSIDERATION - 3

repealed the Treaty or the Tribe's treaty rights, there is a long-standing presumption against implicit abrogation of treaty rights that can be overcome only by a clear showing that Congress intended to invalidate or modify the right in question. U.S. v. Dion, 476 U.S. 734, 738-39 (1986). See also Trans World Airlines, Inc. v. Franklin Mint Corp., 466 U.S. 243, 252 (1984) ("Legislative silence is not sufficient to abrogate a treaty."); Menominee Tribe v. U.S., 391 U.S. 404, 412 (1968) (in the absence of an explicit statement, "the intention to abrogate or modify a treaty is not to be lightly imputed to the Congress"); Cook v. U.S., 288 U.S. 102, 120 (1933) ("A treaty will not be deemed to have been abrogated or modified by a later statute unless such purpose on the part of Congress has been clearly expressed."); Owner-Operator Indep., 724 F.3d at 234 ("Both our precedents and the Supreme Court's routinely characterize the presumption against implicit abrogation of international agreements as a clear statement rule.").

The Treaty of Point Elliott is not mentioned in the ICCTA, nor is any treaty or agreement with Indian nations. The fact that rail lines cross tribal lands throughout the United States was known at the time the ICCTA was passed, as were the tribe's treaty rights to exclusive use of those lands. Yet Congress expressly addressed the intersection of railroad rights of way and tribal lands only through the IRWA, a statute which pre-dated the ICCTA by almost half a century. Under the IRWA, if an individual or entity uses tribal lands without obtaining the necessary permissions, the unauthorized use is a trespass and the Tribe "may pursue any available remedies under applicable law. . . ." 25 C.F.R. § 169.413. Thus, the congressional pronouncement that specifically addresses tribal rights vis-a-vis a railroad right of way leaves intact the Tribe's right to pursue a treaty-based trespass action under federal law.

As the Court previously noted, there is no evidence from which one could conclude that Congress intended to abrogate the Tribe's treaty right of exclusive use through the ICCTA. Dkt. # 75 at 16. "What is essential is clear evidence that Congress actually considered the conflict between its intended action on the one hand and Indian treaty rights on the other, and chose to

ORDER GRANTING PLAINTIFF'S
MOTION FOR RECONSIDERATION - 4

resolve that conflict by abrogating the treaty." Dion, 476 U.S. at 739-40.[3] That type of evidence does not exist here.

For all of the foregoing reasons, the Tribe's motion for reconsideration (Dkt. # 77) is GRANTED. The Tribe's contract and trespass claims arise under federal law and are based on the right of exclusive use granted by the Treaty of Point Elliott. The preemption analysis that applies to state law claims is therefore inapplicable. Because Congress has not clearly abrogated the Tribe's treaty right of exclusive use, that right remains enforceable in federal court. The Tribe's "Amended Motion for Summary Judgment" (Dkt. # 58) is GRANTED: preemption is not a defense to any of the claims asserted in this litigation.

BNSF's motion for summary judgment regarding the breach of contract and trespass claims was denied because the Court determined that certain breaches had occurred as a matter of law. The full extent of BNSF's breaches has not yet been considered or determined. Now that the cross-motions for summary judgment have been resolved, the parties shall, within fourteen days of the date of this Order, confer and file a joint status report regarding the scope of remaining discovery and an appropriate trail date in this matter. A revised case management order will be issued after the Court has reviewed the parties' submission.

Dated this 8th day of June, 2017.

*Robert S. Lasnik*

Robert S. Lasnik
United States District Judge

---

[3] Even if there were an ambiguity regarding congressional intent in this matter (and the Court finds no such ambiguity), the ambiguity must be resolved in favor of tribal rights. Dkt. # 75 at 12 ("When construing statutes that touch on Indian law, special principles of construction apply that 'are rooted in the unique trust relationship between the United States and the Indians.' Oneida County v. Oneida Indian Nation, 470 U.S. 226, 247 (1985). At least one such canon is relevant here: that 'statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.' Mont. v. Blackfeet Tribe of Indians, 471 U.S. 759, 766 (1985).").

ORDER GRANTING PLAINTIFF'S
MOTION FOR RECONSIDERATION - 5