THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SWINOMISH INDIAN TRIBAL
COMMUNITY, a federally recognized Indian
Tribe,

             Plaintiff,

     v.

BNSF RAILWAY COMPANY, a Delaware
corporation,

             Defendant.

NO. 2:15-cv-00543-RSL

SWINOMISH TRIBAL
COMMUNITY'S RESPONSE TO
BNSF RAILWAY COMPANY'S
MOTION FOR CLARIFICATION
AND, IF NECESSARY,
RECONSIDERATION

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - i

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   THE UNDISPUTED FACTS AND PROCEDURAL HISTORY BELIE THE
      PROPRIETY OF BNSF'S REQUEST ............................................................... 1

      A.    The Tribe Was Granted Summary Judgment Based on Federal Law,
            Statutes and Treaty Rights .................................................................... 1

      B.    The Trespass Litigation Resolved All Claims By and Between the Tribe
            and BN/BNSF ........................................................................................ 5

            1.    The United States and the Tribe have consistently and clearly
                  claimed and maintained that the railroad crossed the Reservation ........... 5

            2.    The issue of whether the Treaty included the tidelands in the
                  Reservation was a fundamental claim in the Trespass Litigation ............ 7

            3.    During negotiations of the Settlement Agreement and Easement
                  Agreement, BN acknowledged that the railroad crossed the
                  Reservation ..................................................................................... 8

            4.    The Settlement Agreement and Easement Agreement established
                  that the railroad crosses the Reservation ................................... 9

      C.    BNSF Did Not Raise Arguments Regarding the Tribe's Treaty Rights or
            Title to the Land Beneath the Tracks, or Attempt to Dispute these
            Established Facts, Until this Present Motion ...................................... 10

            1.    On the cross-motions for summary judgment, the Tribe set forth
                  the Reservation's status as Treaty-reserved federal trust lands,
                  and BNSF did not dispute this .................................................. 11

            2.    BNSF repeatedly confirmed the Reservation's status through pre-
                  litigation correspondence, as well as pleadings and
                  representations to this Court and the Surface Transportation
                  Board ............................................................................................ 12

III.  LAW AND EQUITY FORECLOSE BNSF FROM THE RELIEF REQUESTED ....... 15

      A.    As a Matter of Law, BN/BNSF Cannot Re-Litigate Claims Expressly
            Released in the Final Adjudication of the Trespass Litigation ......................... 16

      B.    The Doctrines of Waiver, Laches/Acquiescence, and Estoppel Foreclose
            Any Escape from Res Judicata .......................................................... 19

IV.   CONCLUSION ............................................................................................... 22

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - ii

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) ...................................................................................14

*Baughman v. Walt Disney World Co.*,
    685 F.3d 1131 (9th Cir. 2012) .................................................................................21

*Clements v. Airport Auth.*,
    69 F.3d 321, (9th Cir. 1995) ...................................................................................19

*Constantini v. Trans World Airlines*,
    681 F.2d 1199 (9th Cir. 1982), *cert. denied*, 459 U.S. 1087 (1982) ......................18

*Estate of Jeffrey Randall v. First Solar, Inc.*, EDCV 15-1066-VAP (DTBx),
    2016 WL 6089816, slip op. (C.D. Cal Mar. 9, 2016)............................................22

*Goldman v. Northrop Corp.*,
    603 F.2d 106 (9th Cir. 1979) ............................................................................17, 19

*Goode v. Gaines*,
    145 U.S. 141 (1892) ................................................................................................20

*Green v. Ancora-Citronelle Corp.*,
    577 F.2d 1380 (9th Cir. 1978) .................................................................................17

*Haphey v. Linn County*,
    924 F.2d 1512 (9th Cir. 1991) .................................................................................19

*Harris v. Jacobs*,
    621 F.2d 341 (9th Cir. 1980) ...................................................................................18

*Helfand v. Gerson*,
    105 F.3d 530 (9th Cir. 1997) ...................................................................................21

*Int'l Union of Operating Engineers v. Karr*,
    No. C90-1209D, 1991 WL 5307057 (W.D. Wash. May 31, 1991), *aff'd*,
    994 F.2d 1426 (9th Cir. 1993) .................................................................................18

*Int'l Union of Operating Engineers-Employers Construction Industry Pension,*
    *Welfare and Training Trust Funds v. Karr*,
    994 F.2d 1426 (9th Cir. 1993) ............................................................................17, 19

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - iii

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

*Johnson v. Zerbst,*
    304 U.S. 458 (1939) ........................................................................................................19

*Kale v. Obuchowski,*
    985 F2d 360 (7th Cir. 1993) ...........................................................................................21

*Lawrence v. Steinford Holding B.V. (in re Dominelli),*
    820 F.2d 313 (9th Cir. 197) ............................................................................................17

*Maryatt v. American Casualty Co. of Reading, PA,*
    No. C06-5011RBL, 2006 WL 691802 (W.D. Wash. Mar. 10, 2006) ...............................16

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) .......................................................................................................21

*Ohio v. Kentucky,*
    410 U.S. 641 (1973) .......................................................................................................20

*Pacific Supply Co-op. v. Farmers Union Central Exchange Inc.,*
    318 F.2d 894 (9th Cir. 1963), *cert. denied,* 375 U.S. 965 (1964) ...............................20

*Richardson v. Van Dolah,*
    429 F.2d 912 (9th Cir. 1970) ..........................................................................................20

*Rissetto v. Plumbers and Steamfitters Local 343,*
    94 F.3d 597 (9th Cir. 1996) ............................................................................................21

*Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,*
    322 F.3d 1065 (9th Cir. 2003) ..................................................................................16, 19

*Williams v. Morris,*
    95 U.S. 444 (1877) .........................................................................................................20

**Statutes**

Indian Right of Way Act of 1948, 25 U.S.C. § 213 *et seq.* .................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 11 ...........................................................................................................21, 22

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - iv

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

# I.    INTRODUCTION

The BNSF Railway Company's ("BNSF") Motion for Reconsideration/Clarification ("Motion") is, for all intents and purposes, an attempt by BNSF to re-litigate and re-open the issues before the Court in the *Swinomish Tribal Community v. Burlington Northern Railroad, et al*. litigation filed in the United States District Court for the Western District of Washington, Cause No. C76-550V (the "Trespass Litigation").  As set forth below, whether or not the railroad tracks crossed the Swinomish Indian Tribal Community's (the "Tribe") Reservation was the fundamental issue of that Litigation.  That Litigation was settled pursuant to the terms and conditions of the Settlement Agreement dated September 24, 1990 and the issuance of the Right of Way Easement (the "Easement Agreement") by the Department of Interior to Burlington Northern Railway ("BN") to cross the Reservation pursuant to the terms, conditions and restrictions in the Easement Agreement.  BNSF's present Motion for relief is belied by the record and barred by the doctrines of res judicata, waiver, laches/acquiescence, and estoppel.

# II.    THE UNDISPUTED FACTS AND PROCEDURAL HISTORY BELIE THE PROPRIETY OF BNSF'S REQUEST

### A.    The Tribe Was Granted Summary Judgment Based on Federal Law, Statutes and Treaty Rights.

The Tribe commenced the present litigation based on breaches of the Easement Agreement by BNSF.  Its claims were based on federal common law remedies arising from the Indian Right of Way Act of 1948 ("IRWA") codified in 25 U.S.C. § 213 *et seq.*   In the cross motions for summary judgment, three separate issues were addressed and characterized by this Court as "(1) whether there has been a breach of contract; (2) whether the ICCTA pre-empts the Tribe's state law claims; and (3) whether the ICCTA pre-empts remedies afforded by the IRWA for breach of the Easement Agreement."  Order Regarding Cross Motions for Summary Judgment, Dkt No. 75 at 6:11-14.

In its order, this Court ruled that "the rights the Tribe seeks to assert arise out of both a treaty and a federal statute."  Dkt No. 75 at 12:20.  This Court also ruled there was no evidence

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   to support a finding that Congress intended to implicitly repeal the IRWA when it enacted the

2   ICCTA and that the ICCTA did not pre-empt the IRWA.  However, this Court held the Tribe's

3   state law claims were pre-empted.

4        BNSF did not seek reconsideration of the Court's ruling that the Tribe's rights arise out

5   of both a treaty and federal statute.  The Tribe did file a Motion for Reconsideration, making

6   two points.  Dkt No 77.  First, the Tribe argued it was asserting claims under federal law, not

7   state law.  The Tribe cited not only the federal IRWA statute under which the Easement

8   Agreement was entered into by the Tribe, the United States and BN/BNSF, but also the federal

9   court litigation that preceded and resulted in the Easement Agreement, as well as the federal

10  trust status of the land at issue.  The Tribe pointed out the statute itself safeguards federal rights

11  reserved for Swinomish by the Treaty of Point Elliott (the "Treaty"), just as the statute protects

12  federal rights reserved for other tribes by other treaties.   The Tribe's point was that all of its

13  rights under the Easement Agreement were predicated entirely upon federal law, not state law.

14  Upon reconsideration, the Court agreed with the Tribe in this regard.  Dkt No. 85.

15       The Tribe's second point was that it had asserted common law claims of breach of

16  contract and trespass, under federal law, to enforce the terms of the Easement Agreement, and

17  that it was not limited to statutory remedies under the IRWA and its regulations.  The trespass

18  claim is based on BNSF's overburdening of the easement, which constitutes a trespass to the

19  extent the easement is overburdened.  In this, the Tribe's claim is that BNSF's overburdening

20  of the easement is actionable as a common law trespass in the same manner as a completely

21  unauthorized use of federally-reserved Tribal trust property would be actionable.

22       It is true, of course, that federal law applicable to easements across the Tribe's trust

23  lands has its genesis in the Reservation established by the Treaty.   If there was no Reservation

24  established by the Treaty, there would have been no Trespass Litigation by the Tribe and the

25  United States or a federally-authorized Easement Agreement.  Accordingly, the Court correctly

26

27

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1  considered the context and origin of the Easement Agreement in rights reserved under the

2  Treaty, as part of the pre-emption analysis.

3         It is important, however, that the Tribe asserts only a narrow claim for trespass based

4  upon BNSF's violation of the specific limitations in the Easement Agreement; the Tribe is not

5  re-prosecuting the Trespass Litigation on a more general claim based upon violation of the

6  Tribe's possessory interests.  Thus, the Tribe's burden of proof in this litigation is to show that

7  BNSF materially breached the Easement Agreement, not that BNSF violated the Treaty.  As

8  such, possessory rights under the Treaty to the land under BNSF's tracks need not be proven or

9  adjudicated as an element of the Tribe's claims in this litigation, and BNSF is in error in

10  suggesting otherwise.[1]  *See* Motion at p. 1.  Resolution of the Tribe's actual claims does not

11  require any adjudication of the Tribe's treaty rights separate and apart from the language of the

12  Easement Agreement, because it is the Easement Agreement that the Tribe alleges (and the

13  Court has determined) that BNSF has violated.

14         BNSF styles its Motion as one for clarification or reconsideration, but in fact, it seeks

15  to fundamentally recast this litigation.  In light of the Court's ruling that the ICCTA does not

16  pre-empt the Tribe's trespass or contract claims, and that BNSF has breached the Easement

17  Agreement, BNSF now wishes to transform this lawsuit from a relatively straight-forward case

18  about overburdening the easement based on the terms of the Easement Agreement into a

19  completely different litigation about a different agreement – the Treaty of Point Elliott.

20         This diversionary tactic amounts to an attempt to re-litigate the Trespass Litigation that

21  the parties settled nearly thirty years ago.  Indeed, BNSF has now submitted to the Court

22  evidence and briefing from the Trespass Litigation, and it is surprisingly direct in

23  acknowledging its desire to re-visit issues from the prior proceeding in the present lawsuit.

24  BNSF states the parties litigated those issues "without final resolution," as if final conclusion of

25  _____

26  [1] To be clear, as addressed later in this Response, the Tribe does assert that the issue of possessory right to the
subject land of the Easement Agreement was resolved in the Trespass Litigation; it is simply not relevant to the
issues in the present litigation on which the Tribe has the burden of proof.

27

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 3

the lawsuit were prevented by forces beyond the parties' control.  But, of course, that is not the case – rather, as BNSF recites, "as the parties were preparing to again take the boundary issue to trial in the late 1980s, **they reached a settlement**, eliminating the need for final resolution of the reservation boundary and treaty scope issues."  Motion at p. 2, n. 2 (emphasis added).

BNSF is, therefore, mistaken when it contends the Court must clarify whether it ruled on two factual issues, because BNSF is mistaken in claiming that these are two issues "the Tribe has the burden of establishing to prove its claims in this lawsuit—*viz.*, the Tribe's possessory right to the at-issue property and, relatedly, the rights granted within the Treaty's scope."  Motion at p. 1.  The Tribe need not prove either issue to establish its claims that BNSF has overburdened the easement and is thereby in trespass, and has breached the Easement Agreement to the extent of the overburdening.  Even if the Tribe's ownership of the land beneath the tracks and related rights pursuant to the Treaty were actually unresolved by the Trespass Litigation and at issue in the present case, they would pertain only to BNSF's affirmative defense of pre-emption.

However, as explained further below, the settlement and dismissal of the Trespass Litigation, through which BN/BNSF intentionally relinquished and waived any right to contest the Tribe's possessory interest to its Reservation lands under any theory, bars re-litigation of these issues.  Moreover, having not only long acquiesced in, but repeatedly acknowledged, the Tribe's ownership of the Treaty-reserved land beneath the tracks, BNSF is judicially and equitably estopped from now attempting to dispute those very rights.  Finally, even if BNSF were not so precluded, this Court's pre-emption rulings, as they relate to the Tribe's ownership of the Reservation land over which the easement was granted, and the basis of that ownership in the Treaty, are fully supported by the Settlement and Easement Agreements and other undisputed evidence in the summary judgment record as detailed below.[2]

---

[2]  The only evidence in the summary judgment record before the Court that is cited or discussed by BNSF in its Motion are the Settlement and Easement Agreements and the BNSF application for the easement.  Motion at pp. 3-

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 4

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

There is thus no justifiable need to clarify or reconsider those rulings on BNSF's affirmative defense of preemption.

**B.     The Trespass Litigation Resolved All Claims By and Between the Tribe and BN/BNSF.**

BNSF attempts to challenge this Court's orders by arguing that the issues of the Reservation boundary and Treaty scope were not finally resolved in the Trespass Litigation.  It is true the Trespass Litigation did not result in a precise legal description of any Reservation boundary.  That was not necessary because the parties agreed, through the Settlement and Easement Agreements, that the railroad was on the Reservation, and that BN/BNSF would obtain the approvals of the Tribe and the Department of the Interior that are required for an easement across trust land, would comply with the terms necessary to obtain those approvals, and would compensate the Tribe for the right to maintain the railroad line across the Reservation.

1.     The United States and the Tribe have consistently and clearly claimed and maintained that the railroad crossed the Reservation.

There is no question that the Tribe has consistently claimed and maintained that the Reservation created by the Treaty included the tidelands, which also specifically included the areas occupied by the defendants in the Trespass Litigation – all of which has been admitted by BN/BNSF.

The United States has also consistently claimed and maintained that the railroad, from the time of its original construction, crossed over the Reservation.

At the inception of the construction of the railroad, the Tribe objected and the Office of Indian Affairs maintained that "Railroad is being built on the Swinomish Reservation."  Exhibit 2 (Dkt No. 33-1).[3]  The Office of Indian Affairs referred the matter to the U.S. District

---

4 and p. 4 n. 4.  BNSF's brief discussion of the Settlement and Easement Agreements omits the repeated language that supports the Court's rulings, as detailed below.

[3] All references to Exhibits herein shall be to the exhibit numbers or letters filed by the parties in support of their cross motions for summary judgment, unless otherwise specifically noted.

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 5

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  Attorney "to institute injunction proceedings to prevent the construction of the railroad across
2  the Swinomish reservation…"  Exhibit 3 (Dkt No. 33-1).

3       The Summary Judgment record also indicates the Seattle and Northern Railway
4  Company recognized that its railroad tracks crossed the Reservation, as it made application to
5  the Department of Interior in 1890 for a right-of-way access to the Reservation.  This is
6  evidenced by the April 26, 1890 letter from the Department of Interior referencing such petition
7  and indicating that tribal consent is required to grant the petition for a right-of-way across the
8  Reservation.  Exhibit 5 (Dkt No. 33-1).

9       Although the United States was not initially a party plaintiff in the Trespass Litigation
10 when it was commenced by the Tribe in 1978, the United States became a party plaintiff and
11 filed the Second Amended Complaint with the Tribe in 1983.  Exhibit 16 (Dkt No. 33-2) and
12 Exhibit G to the Declaration of Andrew R. Escobar in Support of Defendant BNSF Railway
13 Company's Motion for Clarification and, if Necessary, Reconsideration ("Escobar
14 Reconsideration Decl.") (Dkt No. 89-7).

15      Any doubt as to the consistent position of the United States and Tribe is resolved by the
16 factual contentions by both plaintiffs in the Pretrial Order entered April 17, 1978, wherein the
17 parties stated:

18           "27.    Since 1855, the United States has consistently treated the
             lands at issue as belonging to the Tribe.
19
             28.    The Tribe has consistently treated the lands at issue as its
20           own.

21                                      * * *

22           34.    The Burlington Northern Railroad crosses Swinomish
             Slough, as channelized, and the tidelands of Padilla Bay to the
23           1873 Executive Order line.  The Railroad has never received a
             right of way or easement from the Tribe or the United States.  The
24           Railroad has been in trespass since its construction in 1890."

25 Exhibit E, pp. 10 and 11 (Dkt No. 64-5).

26

27

2. <u>The issue of whether the Treaty included the tidelands in the Reservation was a fundamental claim in the Trespass Litigation.</u>

In its Complaint for Injunctive and Declaratory Relief filed in 1978, the Tribe alleged:

> "5.     The Swinomish Indian Reservation was established by the Treaty of Point Elliott between the United States and the Duwamish, Suquamish, and other allied subordinate tribes of Indians in Washington Territory, dated January 22, 1855, ratified on March 8, 1859, proclaimed by the President on April 11, 1859. 12 Stat. 927.  The Treat of Point Elliott (Article 2) secured and confirmed the Swinomish Tribal Community's predecessors in the possession of a portion of their aboriginal lands described as "the peninsula at the southeastern end of Perry's Island called Sh'ais-quihl".  The Reservation includes, at a minimum, the western one-half of the Swinomish Channel on the east and all surrounding and adjacent tidelands.
>
> 6.     During all times since the 1855, the tidelands surrounding and adjacent to the upland portions of the Swinomish Indian Reservation were, and are, held in trust by the United States on behalf of the Swinomish Tribal Community."

Exhibit 15, p. 2 (Dkt No. 33-2).

In its Answer and Counterclaim for Injunctive and Declaratory Relief filed in September 1978, BN denied these allegations, affirmatively pleaded a defense that the Tribe did not have an ownership interest in the lands occupied by the railroad, and alleged in its counterclaim that "The Tribal Community has no right, title or interest in or to said tidelands and channel…"  Exhibit 16, p. 4 ¶ V (Dkt No. 33-2).

Any doubt about the scope of the claims regarding the Reservation lands and scope of the Treaty was resolved by the Pretrial Order entered April 17, 1987, wherein the plaintiffs and defendants set forth their respective contentions.  *See*, in particular, ¶¶ 7, 17, 18, 27, 28, 30, 33 and 34 of the Plaintiffs' Contentions and Issues of Law of Exhibit E (Dkt No. 64-5), including specifically ¶ 1 of the Issues of Law, which stated:

> "1.     Whether the lands at issue were reserved to the Tribe in the Treaty of Point Elliott?

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 7

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

3.   <u>During negotiations of the Settlement Agreement and Easement Agreement, BN acknowledged that the railroad crossed the Reservation.</u>

The actual time frame for the negotiation of the Settlement Agreement and Easement Agreement occurred in the summer of 1989.  Correspondence from BN legal counsel contains repeated references to the railway crossing the Reservation.  For example, in his June 22, 1989 letter, Mr. Silvernale stated:

> "On the new matters proposed in the Right-of-Way Agreement, specifically Paragraph 7b, at Page 10, requiring BN to inform the Tribe in advance of the shippers and contents of railroad cars **crossing Reservation lands**."

Exhibit 32, p. 1 (Dkt No. 33-6) (emphasis added).  He further stated:

> "You also provide that trains shall not travel at speeds in excess of 5 miles per hour.  This limitation is extremely undesirable and in fact, will create serious hazards.  It is undesirable because the transit time **across the Reservation** will go from approximately 2 minutes to something in the vicinity of 7 minutes."

*Id.*, p. 2 (emphasis added).

In his July 10, 1989 letter, wherein he proposed the compromise language that was incorporated into the Easement Agreement and that is at issue in this case, Mr. Silvernale stated:

> "The following is the language proposed for Section 7(b) and 7(c) of Page 10 of the Right of Way Easement:
>
> '7(b)'  Burlington Northern will keep the Tribe informed as to the nature and identity of contents of placarded cars **crossing the Reservation**.  Initially, Burlington Northern shall prepare a summary of all such commodities expected to **cross the Reservation**.  Thereafter, the disclosure shall be updated periodically as different products, or commodities, are added or deleted.  Burlington Northern will comply strictly with all Federal and State Regulations regarding classifying, packaging and handling of placarded cars so as to provide the least risk and danger to persons, property and the natural environment of the Reservation.
>
> '7(c)'  Burlington Northern agrees that, unless otherwise agreed in writing, only one eastern bound train, and one western bound train, (of twenty-five (25) cars or less) shall **cross the Reservation** each day.  The number of trains and cars shall not be increased unless required by shipper needs.  The Tribe agrees not to arbitrarily withhold permission to increase the number of trains or

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 8

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

cars when necessary to meet shipper needs.  Train speeds **over Reservation grade crossings** shall not exceed ten (10) miles per hour."

Exhibit 33, p. 1 (Dkt No. 33-6) (emphasis added).  It is clear from this correspondence that, by the time of settlement, it was BN's operative and acknowledged understanding and position that the tracks crossed the Reservation.

> 4.    The Settlement Agreement and Easement Agreement established that the railroad crosses the Reservation.

It is clear the parties entered into a compromise of the positions taken in the Trespass Litigation.  That compromise resulted in an agreement that the railway crossed the Reservation.  The term "Reservation" is a defined term.  Paragraph 4 of the Settlement Agreement stated:

> "4.    **Easement**. It is the intention of the Tribe and BN that BN be granted a forty (40) year easement covering the operation, maintenance and replacement of BN's existing railroad and all facilities ancillary thereto across all lands within the Swinomish Indian Reservation (the "Reservation") and in which the Tribe or the BIA have or claim to have an ownership or beneficial interest."

Exhibit 28 (Dkt No. 33-4).

As stated in the Settlement Agreement, the Tribe and BN entered into the Settlement Agreement "in order to settle those matters in dispute between the Tribe and BIA and Burlington Northern in the" Trespass Litigation.  *Id.* at p. 1.

The Easement Agreement clearly stated the intent of the parties with respect to the Settlement in ¶¶ C and D of the Recitals, wherein it stated:

> "C.    Burlington Northern, the Tribe and the United States have now settled the dispute among them pursuant to the Settlement Agreement dated <u>September 24, 1990</u> (the "Settlement Agreement").  The Settlement Agreement provides, among other things, for a dismissal of the Action by and against BN and the granting of a forty (40) year right-of-way easement with two twenty (20) year options to Burlington Northern for its existing railroad, or successor methods provided by paragraph 5 herein, over and across any and all lands of the Tribe held in trust for its benefit by the United States that such railroad crosses.
>
> D.    This right-of-way easement is intended to grant and convey to BN, despite any questions of survey, or any uncertainty as to the location of (a) the boundaries of the Swinomish Indian Reservation, and (b) any lands within the Reservation (whether

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 9

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

tidelands, submerged lands, or uplands) held in trust by the United States for the benefit of the Tribe, a forty (40) year easement with two twenty (20) options over any and all lands comprising part of the Swinomish Indian Reservation and held in trust by the United States for the benefit of the Tribe over which the existing railway of BN passes."

Exhibit 29, pp. 1 and 2 (Dkt No. 33-5). [4]

The Settlement Agreement also contained broad form mutual releases by the Tribe, the United States and BN which included the release of all "claims, demands…cause or causes of action of whatever kind or nature…whether known or unknown." Exhibit 28, pp. 6-10, ¶¶ 7, 8 (Dkt No. 33-5).

In addition, the parties stipulated to the court presiding over the Trespass Litigation that "all claims of plaintiffs herein against defendant BN and the counterclaims against plaintiffs in these consolidated actions have been settled and compromised in full and that those claims may be dismissed with prejudice and without costs to plaintiffs or BN." Exhibit 29, at SITC 000005552 (Dkt No. 33-5).

Finally, the Easement Agreement was approved by the Department of Interior, and in the letter to the Assistant Attorney General, the Deputy Solicitor stated that under the terms of the Settlement Agreement, BN was "awarded a 40 year right of way easement across the Swinomish Indian Reservation…" Exhibit 38 (Dkt No. 33-8).

**C.  BNSF Did Not Raise Arguments Regarding the Tribe's Treaty Rights or Title to the Land Beneath the Tracks, or Attempt to Dispute these Established Facts, Until this Present Motion.**

Except for a passing comment on page 4 of its Cross-Motion for Summary Judgment/Opposition (Dkt No. 63) and a reference by counsel during oral argument that the

---

[4] The Settlement Agreement's instructions for calculation of future rental payments for the easement explicitly recognized that the lands damaged by the tracks were a part of and were surrounded by the Tribe's Reservation trust lands. In particular, the Settlement Agreement specified that future rent adjustments would be based not only on the value of the property subject to the right-of-way itself, but also on the right-of-way's impact on surrounding Tribal lands—that is, on "**damage to Reservation lands** north of State Highway 20." Exhibit 28 (Dkt No. 33-4) at p. 3, ¶ 2(b)(ii) (emphasis added). The Easement Agreement uses the same rental calculation language. Exhibit 29 at p. 3, ¶ 2(b)(ii). Moreover, the appraisal instructions in both documents explicitly acknowledge and address the Tribe's anticipated development of its surrounding lands. *Id.* Indeed, by 1987, the Tribe had prepared a conceptual Development Plan for the area north of the railway. Exhibit 30 (Dkt. No. 33-5).

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 10

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

railway might not be on Reservation land, BNSF has never challenged that the railroad crosses the Tribe's Reservation trust lands or the scope of the Treaty.

   1.   On the cross-motions for summary judgment, the Tribe set forth the Reservation's status as Treaty-reserved federal trust lands, and BNSF did not dispute this.

The Tribe's Motion for Summary Judgment on the pre-emption issue clearly set forth, in its introduction and statement of undisputed facts, that the BNSF tracks cross Tribal trust lands on the Reservation, which was established by the Treaty for the Tribe's exclusive use. Dkt. No. 58 at 1:3-12; 2:9-3:4.   Contrary to BNSF's claim that the Tribe's property rights arose only "in the parties' summation of the prior litigation" (Motion at p. 4), the Tribe submitted evidence (the very same evidence cited in this Response) with its Motion for Summary Judgment confirming that (i) the lands on the Reservation that are the subject of this lawsuit were set aside by the Treaty for the Tribe's exclusive use and are held in trust for the Tribe by the United States, and that (ii) the right-of-way established by the Easement Agreement crosses a part of the Reservation that constitutes the heart of the Tribe's economic development area. Dkt. No. 32, Declaration of Allan E. Olson, at ¶¶ 3, 4.  The Tribe's motion also expressly argued that Congress did not intend that the ICCTA abrogate or diminish existing tribal rights in such treaty-reserved trust lands or under easements across such trust lands.  Docket No. 58 at 22:6-23:3.[5]

In response, BNSF's Cross-Motion and Opposition to the Tribe's motion described the positions in the Trespass Litigation as to whether the tracks cross the Reservation.  Dkt No. 63 at 4:13-5: 2.   BNSF did not, however, identify the ownership of the land under the tracks, or the Treaty terms, as contested factual issues in the present litigation.[6]  To the contrary, BNSF

---

[5]  BNSF argues the Tribe implied that the Treaty is not relevant.  Motion at p. 4 n. 5.  BNSF's argument misstates the record in this regard.  While the Tribe contended that the litigation should be decided on the basis of the Easement Agreement, the IRWA and implementing regulations, the Tribe also cited the establishment of the Reservation by the Treaty for the Tribe's "exclusive use," and argued that the ICCTA did not abrogate its rights. Dkt. No. 58 at 22:6-23:3 and 22 n. 6.

[6]  Just two facts were identified by BNSF as contested: whether BNSF had advised the Tribe, during the Trespass Litigation settlement negotiations, as to its common-carrier obligations; and whether the Tribe would have

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 11

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

stated only that such issues had been contested in the previously-concluded Trespass

Limitation:  "A contested issue **in the prior litigation** was whether the track at issue was

actually on Reservation land."  *Id.* at p. 4 n. 8 (emphasis).

In its Omnibus Response to BNSF's Cross-Motion for Summary Judgment, the Tribe

made clear its position that the issue of the Tribe's ownership of the property over which the

tracks run was resolved "with certainty the moment they entered into the Easement Agreement,

which plainly and conclusively recognizes Tribal ownership of the property."  Dkt No. 65 at

2:8-14.  The Tribe also indicated that, at a minimum, BNSF had waived any argument to the

contrary.  *Id*. at 2:18-20.

Having declined to dispute the Tribe's statements of facts as to the establishment of the

Reservation or the Tribe's ownership of the land under BNSF's tracks, and having failed to

offer any evidence of the existence of a genuine issue as to these facts, BNSF should not be

now heard to complain that the Court's rulings relied upon those undisputed facts.  BNSF

cannot use reconsideration as a vehicle to manufacture a genuine dispute of material fact when

there is none.

    2.    <u>BNSF repeatedly confirmed the Reservation's status through pre-litigation correspondence, as well as pleadings and representations to this Court and the Surface Transportation Board.</u>

Not only is BNSF's current attempt to manufacture a dispute inappropriate

procedurally, it is also inconsistent with BNSF's repeated acknowledgments, over an extended

period and in a variety of contexts, that its tracks cross Tribal trust land of the Swinomish

Reservation.

In the correspondence and communications by BNSF to the Tribe after BNSF

commenced the shipment of oil to the refinery by unit trains in 2012, BNSF never raised any

---

consented to a right-of-way if it had known that BNSF would rely on its common-carrier obligations to exceed the limitations on train traffic in the Easement Agreement.   Dkt. No. 63 at 8:13-9:8.

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 12

1  issue with respect to whether the railroad was on the Reservation lands or the scope of the

2  Treaty.

3         In his February 13, 2013 letter to the Tribal attorney, Robert Parish, General Attorney

4  for BNSF, stated that "[t]he purpose of this letter is to provide initial information gathered by

5  BNSF regarding track usage for the line **crossing the Swinomish Indian Triable Community**

6  **(SITC) property**…"  Exhibit J, p. 1 (Dkt No. 64-10) (emphasis added).

7         In the March 13, 2015 letter to the Tribal Attorney, Vann Cunningham, AVP

8  Economics Development for BNSF, stated "although the easement only restricts speeds **over**

9  **Reservation grade crossings**…"  Exhibit M, p. 1 (Dkt No. 64-13) (emphasis added).

10        Similarly, and even more tellingly, BNSF has repeatedly acknowledged to the Court,

11  from the outset of the present litigation, that its tracks cross Swinomish Tribal lands.  In its

12  Motion to Dismiss or Stay, filed May 14, 2015, BNSF stated:

13
14              The Complaint seeks damages and other relief because of recent
                increases in the traffic that BNSF handles over a rail line that **crosses**
15              **Plaintiff's land**.

16  Dkt No. 8, 1:2-4 (emphasis added).  BNSF went on to explain:

17              For more than a century, BNSF has been serving western Skagit
                County with rail service over a rail line that extends **across a**
18              **portion of the Swinomish Tribal lands** to Fidalgo Island and
                Anacortes.

19  *Id.* at 1:13-15 (emphasis added).  Later in its motion, BNSF stated:

20
                The BNSF track **across the Swinomish property** ("Right-of-Way")
21              is part of BNSF's Anacortes Branch line that terminates at the
                Tesoro refinery at March Point.
22
23  *Id.* at 8:12-13 (emphasis added).

24        Consistent with these repeated acknowledgments that its tracks cross Swinomish Tribal

25  lands, in its subsequent Reply brief on the Motion to Dismiss or Stay, BNSF stated:

26              BNSF **has never disputed** that the Easement was properly created
                pursuant to IRWA.
27

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 13

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Dkt No. 13, 10:8-9 (emphasis added).  Of course, for an easement to be "properly created pursuant to IRWA," the easement must cross Indian lands.  *See* 25 U.S.C. § 323 ("The Secretary of the Interior be, and he is empowered to grant rights-of-way for all purposes, subject to such conditions as he may prescribe, over and across any lands now or hereafter held in trust by the United States for individual Indians or Indian tribes, communities, bands, or nations …").[7]

Also consistent with BNSF's Motion to Dismiss, "Defendant's Statement" in the parties' initial Joint Status Report and Discovery Plan began by stating:

> Plaintiff seeks declaratory and injunctive relief and compensatory damages for BNSF's use of a rail easement **across plaintiff's reservation**.

Dkt. No. 24, 3:1-3 (emphasis added).  Nowhere in its Statement does BNSF raise any issue as to whether the land under the tracks is Tribal or Treaty-reserved property.

Then, in its Cross-Motion for Summary Judgment/Opposition, even when questioning the scope of the Tribe's authority over rail transportation on its land in the context of pre-emption, BNSF did not dispute that its tracks cross the Tribe's land:

> Congress' grant of exclusive authority to the STB to regulate rail transportation cannot coexist with the Tribe's efforts to restrict rail transportation **over its land**.

Dkt. No. 63, 28:18-20 (emphasis added).  Such statements of fact contained in a brief may be considered party admissions in the discretion of the district court.  *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988).  It is particularly appropriate where BNSF itself has repeatedly made the same statements acknowledging its tracks cross Swinomish land.

Finally, even in its Motion to Intervene in Support of Petition for Declaratory Order submitted by BNSF to the Surface Transportation Board, filed a year after its Motion to

---

[7]   Similarly, at oral argument on the Motion to Dismiss or Stay, counsel for BNSF stated: "Yes, there's tribal property."  Transcript of 9/2/2015 Proceedings at 24:3-4.

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 14

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Dismiss on June 23, 2016, BNSF did not raise a challenge to the scope of the Treaty or that the railway crossed the Reservation and Tribal lands.  Indeed, BNSF stated in its introduction:

> "Can a landowner restrict the railroad's ability to move hazardous materials across the landowner's property to serve the needs of rail shippers?  Tesoro and Shell filed their requests for a declaratory order on this question after a landowner, the Swinomish Indian Tribal Community, asked a federal court to enjoin BNSF's current and future movement of crude oil **over the Tribe's land** to the Tesoro and Shell refineries.  The Swinomish Tribe sought the injunction in a case involving and easement agreement between BNSF and Swinomish Tribe for use of the Tribe's land."

Exhibit 41, p. 2 (Dkt No. 60-3) (emphasis added).

> "The Tribe's complaint (attached to Tesoro's Petition as Exhibit A) focuses on an easement granting BNSF's predecessor (referred to herein as BNSF) a right-of-way to provide rail service **over a strip of land at the northern edge of the Tribe's Reservation**."

*Id.*, p. 5 (emphasis added).  Finally:

> "**V.    Conclusion**
>
> The Board should grant Tesoro's and Shell's request for a declaratory order and make it clear that **landowners, including the Swinomish Tribe, are not permitted to use contracts with railroads to restrict rail transportation over their property**.  ICCTA protects Tesoro's and Shell's right to request and receive rail transportation over a rail line that is part of the national rail network.  The Board should also grant BNSF intervention in this case."

*Id.*, p. 16 (emphasis added).

## III.    LAW AND EQUITY FORECLOSE BNSF FROM THE RELIEF REQUESTED

In the January 13 Summary Judgment Order and June 8 Reconsideration Order, this Court ruled that the Tribe's claims "arise out of both a treaty and a federal statute."  In its June 8, 2017 Order granting the Tribe's reconsideration motion, the Court acknowledged that the Tribe's claims depend entirely on federal law.  BNSF appears to interpret these rulings to mean the Treaty and the ICCTA are the only sources of federal law at issue – to the exclusion of the IRWA and its implementing regulations and the common law rights and remedies the Tribe and the United States pursued through the federal Trespass Litigation, resulting in the Tribe's

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 15

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

consent to and negotiation of the promises embodied in the Easement Agreement.  In attempting to re-draw the playing field, BNSF's goal is clear: if it can re-write the Tribe's claims to depend solely on the Treaty at the moment of its execution, and re-write the Court's Orders to recognize only that original source of law, it can claim the possibility that both are fatally deficient.  BNSF should not be heard to manufacture a factual dispute from these false premises.  In attempting to do so, BNSF violates numerous principles of law and equity.

**A.   As a Matter of Law, BN/BNSF Cannot Re-Litigate Claims Expressly Released in the Final Adjudication of the Trespass Litigation.**

As explained further above, the Tribe seeks BNSF's compliance with the promises in the Easement Agreement – not removal of the tracks based on a possessory right under the Treaty.  Indeed, even were the Tribe inclined to re-litigate the Trespass Litigation, the law precludes it from doing so.  More specifically, the Trespass Litigation having been finally disposed of by settlement and stipulation, res judicata precludes the re-litigation of the claims, counterclaims, and defenses from the Trespass Litigation.

"The doctrine of res judicata (or claim preclusion) prevents the re-litigation of issues that have been settled by judicial decision." *Maryatt v. American Casualty Co. of Reading, PA*, No. C06-5011RBL, 2006 WL 691802, at *2 (W.D. Wash. Mar. 10, 2006).  The elements of res judicata are that: there is (1) a final judgment on the merits in a first action, (2) privity between the parties to that first judgment and the parties to a second action, and (3) an identity of claims between the actions. *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1065, 1077 (9th Cir. 2003)

Here, BNSF has never disputed privity with its predecessor-in-interest to the Settlement Agreement and Easement Agreement, BN.  *See* Dkt. No. 1, ¶ 3.3; Dkt No. 23, ¶ 3.3.

Moreover, our courts have long recognized that dismissals with prejudice entered upon settlement, stipulation or consent like the dismissal in the Trespass Litigation constitute final orders of judgment on the merits.  As the Ninth Circuit explained over 30 years ago:

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 16

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4

> There is no question here that the prior state court judgment was a final judgment on the merits of the issues raised in that action.  The fact that this judgment was the result of the parties' stipulation of settlement does not detract from its being considered a conclusive determination of the merits where, as here, it is clear that the parties intended the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action.

5
*Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1383 (9th Cir. 1978).  *See also Goldman v.*

6
*Northrop Corp.*, 603 F.2d 106, 108-9 (9th Cir. 1979) (affirming dismissal on ground of res

7
judicata of a shareholders' derivative action where the parties were the same, although

8
represented by different shareholders, as in a prior shareholders' derivative action resolved

9
upon entry of a final judgment pursuant to stipulation of settlement), and *Int'l Union of*

10
*Operating Engineers-Employers Construction Industry Pension, Welfare and Training Trust*

11
*Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) ("*Karr II*") (dismissal of action with

12
prejudice pursuant to settlement agreement constitutes a final judgment on the merits and

13
precludes parties from reasserting the same claim in a subsequent action), citing *Lawrence v.*

14
*Steinford Holding B.V. (In re Dominelli)*, 820 F.2d 313, 316-17 (9th Cir. 1987) (in a junior

15
lienholder's proceeding against a senior lienholder and bankruptcy trustee to have the senior's

16
note's interest provisions declared void under usury law, where the trustee filed a cross-

17
complaint against the senior for the same declaration of voidness, and where the trustee and

18
senior entered into a settlement of the cross-complaint, the trial court properly granted the

19
senior's motion to dismiss, on ground of res judicata, the complaint of the junior, who was in

20
privity with the trustee).

21
  With respect to the Settlement Agreement, although BNSF in its Motion carefully

22
avoids reciting its general mutual releases, they are undeniably clear and broadly written: BN,

23
the Tribe, and the United States released all "claims, demands…cause or causes of action of

24
whatever kind or nature…which exist by reason of or which are in any way related to or arise

25
out of" the location of the railway, "whether known or unknown."   Exhibit 28, pp. 6-10, ¶¶ 7, 8

26
(Dkt No. 33-4).  The parties agreed to these releases "in order to settle those matters in dispute"

27
in the Trespass Litigation "and to resolve other matters between" and among them.  *Id.*, p. 1.

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 17

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

As to the "matters" resolved, they included, at a minimum, BN's denial of the Tribe's allegations that the Treaty established the Reservation, including all adjacent tidelands; BN's affirmatively pleaded defense that the Tribe did not have an ownership interest in the lands occupied by the railroad; and BN's counterclaim that "The Tribal Community has no right, title or interest in or to said tidelands and channel…" Exhibit 16, p. 4 ¶ V (Dkt No. 33-2).

As to whether BNSF can restate today claims that BN released in resolving the Trespass Litigation, it is not a close case. To determine "identity of claims," this Circuit's courts look to the following factors:

> (1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same nucleus of facts.

*Constantini v. Trans World Airlines,* 681 F.2d 1199, 1201-2 (9th Cir. 1982), *cert. denied,* 459 U.S. 1087 (1982), quoting *Harris v. Jacobs,* 621 F.2d 341, 343 (9th Cir. 1980).

Here, as to the evidence presented, in its attempt to manufacture a dispute over the "Tribe's possessory interest" and "Treaty scope," BNSF relies entirely on the historical Trespass Litigation record. In that regard, to the extent BNSF cites to the position of the other defendants to the Trespass Litigation,[8] whether BN's own pleaded contentions were strictly coterminous with those of its co-defendants in trespass or not is of no moment, for "[a] previous judgment is res judicata not only to matters actually litigated, but also as to every other ground which the parties might have litigated incident to and within the rubric of the earlier suit." *Int'l Union of Operating Engineers v. Karr,* No. C90-1209D, 1991 WL 5307057, at *5 (W.D. Wash. May 31, 1991), *aff'd, Karr II,* 994 F.2d 1426 (9th Cir. 1993) (there is an identity of claims where "they could conveniently be tried together, so form[ing] a convenient

---

[8] BNSF, without citing any supporting evidence, cites to the Proposed Findings of Fact and Conclusions of Law of Trans Mountain Oil Pipeline Corporation and Burlington Northern. Exhibit D to Escobar Reconsideration Decl. (Dkt No. 89-4).

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 18

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

trial unit") (internal quotation marks omitted); *see also Goldman*, 603 F.2d at 109 (applying res judicata to bar claims, even where they "were not the subject of the [prior] complaint," where "they were taken into consideration during the negotiations leading to the settlement and the settlement and ultimate judgment took them into account").  Further, BN/BNSF's contentions arose from the fundamental fact, unchanged for over a century, before and after the stipulated dismissal of the Trespass Litigation, that the railway crosses Reservation land claimed by the Tribe and the United States as trustee.

Last, and most importantly, merely entertaining BNSF's "Treaty" contentions threatens to nullify the very basis for the Easement Agreement established by the Settlement Agreement and judgment that resolved the Trespass Litigation.  Permitting this would vitiate the policies behind the doctrine of res judicata, which protect both the "private values" of protection against harassing, repetitive litigation and preservation of interests in repose, as well as the "public interests" in preserving judicial economy and avoiding inconsistent results, and "protecting the moral force of court judgments from being undermined." *Tahoe-Sierra Preservation Council*, 322 F.3d at 1077, citing *Clements v. Airport Auth.*, 69 F.3d 321, 330 (9th Cir. 1995); *Karr II*, 994 F.2d at 1430, quoting *Haphey v. Linn County*, 924 F.2d 1512, 1518 (9th Cir. 1991), *rev'd in part on other grounds,* 953 F.2d 549 (9th Cir. 1992) (*en banc*).

BNSF cannot dispute any of these facts.  It is appropriate to find that BNSF is precluded from rehashing these contentions as a matter of law.

**B.      The Doctrines of Waiver, Laches/Acquiescence, and Estoppel Foreclose Any Escape from Res Judicata.**

There is no legal or equitable escape from the force of res judicata.

As a matter of law, in entering into the Settlement Agreement pursuant to which the U.S. District Court for the Western District of Washington dismissed the Trespass Litigation with prejudice, BN/BNSF intentionally relinquished its asserted right to contest the Tribe's possessory interest to its Reservation lands.  This is the very definition of waiver.  *Johnson v. Zerbst*, 304 U.S. 458, 464 (1939).

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 19

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1       As a matter of equity, having repeatedly admitted to the Tribe's long-settled legal

2  rights, this Court need not entertain BNSF's request to re-examine the premise of those rights,

3  of which BNSF has long been on notice and to which BNSF has long acquiesced.  By way of

4  analogy, in response to a state's attempt to re-draw an inter-state boundary, the Supreme Court,

5  in *Ohio v. Kentucky*, 410 U.S. 641, 648-51 (1973), denied the state's motion to amend its bill of

6  complaint given "[t]he rule, long settled and never doubted by this court, … that long

7  acquiescence by one state in the possession of territory by another and in the exercise of

8  sovereignty and dominion over it is conclusive of the later's title and rightful authority."

9       Here, given that BN/BNSF is not a sovereign entity but a private party, other estoppel

10  analogies are even more apt – specifically, for example, the general principle that "a tenant in

11  peaceful possession is estopped to question the title of his landlord," a principle that is

12  "designed to prevent a tenant from defending a suit for rent by challenging his landlord's right

13  to put him in possession."  *Richardson v. Van Dolah*, 429 F.2d 912, 917 (9th Cir. 1970); *see*

14  *also Goode v. Gaines,* 145 U.S. 141, 152 (1892) (estoppel does not depend on validity of

15  landlord's title), and *Williams v. Morris*, 95 U.S. 444, 455 (1877) (when tenant gains

16  possession, tenant is estopped from denying title of landlord).  In such a situation, estoppel

17  should arise both by contract (the Easement Agreement) and by conduct (BN/BNSF submitting

18  payment to the Tribe thereunder).  The analogy applies with even more force to the present

19  Easement Agreement dispute in the sense that BN, like a licensee who has entered into a

20  license for conduct it would otherwise be sued for, should not be permitted to enjoy the use

21  permitted under the license while at the same time challenging the license as being invalid.

22  *E.g., Pacific Supply Co-op. v. Farmers Union Central Exchange Inc*., 318 F.2d 894, 908 (9th

23  Cir. 1963), *cert. denied*, 375 U.S. 965 (1964) ("[A]ppellant fails to recognize the long settled

24  principle of law that a licensee … of a trademark or trade name may not set up any adverse

25  claim in it as against its licensor.")

26

27

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 20

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    Moreover, responding to BNSF's stated intent to move to amend its Amended Answer

2 to remove certain admissions (such as "the Right-of-Way is on the north end of the

3 Reservation" (Dkt No. 23, ¶ 3.4)), given the witnesses and physical and documentary evidence

4 lost in the decades since the stipulated dismissal of the Trespass Litigation,[9] and not in the least

5 the years the Tribe suffered the tracks (the first hundred without justification and the last thirty

6 on the understanding the railway had finally acknowledged the Tribe's ownership rights), the

7 significant prejudice to the Tribe would be sufficient basis to deny any such request.

8    Finally, BNSF's position prejudices not only the Tribe, but also the judicial system.

9 Under federal law, where prior "expressions of intention" that induced judicial action are

10 contradicted in a subsequent proceeding, not only imposing an unfair detriment on the opposing

11 party, but also creating a perception that one or the other tribunal was misled, judicial estoppel

12 forecloses the change in position.  *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997); *New

13 Hampshire v. Maine*, 532 U.S. 742, 743 (2001).  In the Ninth Circuit, for purposes of triggering

14 judicial estoppel, "obtaining a favorable settlement [in the first action] is equivalent to winning

15 a judgment," for "those who induce their opponents to surrender claims have prevailed as

16 surely as persons who induce the judge to grant summary judgment."  *Rissetto v. Plumbers and

17 Steamfitters Local 343*, 94 F.3d 597, 604-5 (9th Cir. 1996), citing *Kale v. Obuchowski*, 985

18 F.2d 360 (7th Cir. 1993) (affirming trial court's Rule 11 sanctions and also awarding sanctions

19 for frivolous appeal); *Baughman v. Walt Disney World Co*., 685 F.3d 1131, 1133-4 (9th Cir.

20 2012).  "This is because it's the coercive power of the court—the judgment it might render if

21 the case is litigated to its conclusion—that's the driving force behind such settlements."

22 *Baughman*, 685 F.3d at 1133-4.

23

---

24 [9]  BNSF has previously informed the Court of its loss of its documents and its lack of witnesses with knowledge.
Dkt No. 9, Declaration of James Obermiller.

25 Moreover, as to the historical documentation produced by the Tribe, BNSF had it in its possession for months
before filing its Cross-Motion for Summary Judgment/Opposition.  In fact, BNSF won a continuance of the
26 Tribe's originally-filed summary judgment motion to receive, examine and depose witnesses on those documents.
*See* Order at Dkt No. 43.

27

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 21

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1      For this reason, courts scrutinize the inconsistency of statements not only on the face of

2  pleadings in litigation that settles, but also within the stipulations that settle the litigation.

3  Thus, for example, in *Estate of Jeffrey Randall v. First Solar, Inc.*, EDCV 15-1066-VAP

4  (DTBx), 2016 WL 6089816, slip op. at *7-8 (C.D. Cal. Mar. 9, 2016), where plaintiff estate, in

5  a workers compensation proceeding, entered into a stipulation agreeing that the decedent had

6  sustained injury "arising out of and occurring in the course of his employment" and that "both

7  employee and employer "were subject to the provisions of the Labor Code," the estate was

8  estopped in later litigation against the employer from seeking relief outside the Labor Code by

9  claiming decedent was not acting within the scope of employment.  Absent a non-frivolous

10  basis for the change in position, and absent any evidence that would have invalidated the

11  stipulation, the trial court imposed Rule 11 sanctions on counsel.  *Id.* at *9.

12      Here, in the stipulation of dismissal with prejudice to the court presiding over the

13  Trespass Litigation, the parties represented their settlement resolved the entire litigation.  In the

14  referenced settlement, they agreed to a right-of-way across the Reservation in exchange for,

15  inter alia, broad releases of all claims – including all attacks on the Tribe's possessory rights.

16  BN won the advantage of continued use of the Tribe's lands – when it could have lost all use

17  rights had the Tribe prevailed at trial.  Now BNSF takes the contrary position that the railway

18  never intended to resolve its defenses and counterclaims as to the history and scope of the

19  Reservation or Treaty (or otherwise abide to the material stipulations in the settlement).  As

20  such, BN/SF's statements of intention to Judge McGovern, then, and to this Court, now, are

21  diametrically opposed.  BNSF should not be permitted to game the system and consume more

22  of this Court's resources at the expense of additional decades of irreparable injury to the

23  Tribe's sovereign rights.

24          IV.    CONCLUSION

25      These parties settled litigation almost 30 years ago.  The United States, Tribe and BN

26  all understood that the claims in the Litigation were fully and unconditionally settled, and the

27

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 22

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   claims and counterclaims were dismissed with prejudice.  BN and BNSF have operated and

2   benefitted from their ability to exercise their rights under the Easement Agreement.  At no time

3   since the Settlement, until this Motion, has BN or BNSF ever claimed that the terms of the

4   Settlement Agreement and Easement Agreement were not binding because the precise location

5   of Reservation boundaries were not legally defined.  To the contrary, BN/BNSF have

6   continually referred to the railroad crossing the Reservation.  The point of the Settlement

7   Agreement and Easement Agreement was to resolve that issue and grant a right of way over the

8   Reservation, pursuant to federal law authorizing the Department of Interior to approve

9   easements over tribal trust land.

10          Over those 30 years, witnesses have passed away, and documents, court records and

11   potential exhibits are missing.  For BNSF to now assert that we need to go back and re-litigate

12   the Trespass Litigation claims and counterclaims makes a mockery of the judicial process and

13   efficacy of settlements.

14          The Tribe takes seriously the agreements it signs, whether the Treaty of Point Elliott or

15   the Settlement and Easement Agreements, and expects those agreements to be honored, and the

16   Tribe, for its part, has done so. The Tribe is, therefore, understandably offended that, after

17   having used its land for 100 years without the Tribe's consent, after having contested the

18   Tribe's ownership of its land and the need for the Tribe's consent to its use through years of

19   litigation, after having then reaped the benefits of nearly 30 years of use of the Tribe's land

20   pursuant to the Settlement and Easement Agreements – agreements that acknowledged the

21   status of the land as the Tribe's Reservation land – the Tribe is offended that after all of this,

22   BNSF would now cast a doubt as to whether those lands are owned by the Tribe or are a part of

23   the Swinomish Reservation, requiring the Tribe to spend significant time and sums in response

24   to again defends its right to its lands.  Of course, the Tribe does not seek denial of BNSF's

25   Motion merely because it espouses an offensive position, but rather because the Motion is

26   contradicted by BNSF's own statements and actions before, during and after settlement, and

27

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 23

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  because the Motion is contrary to fundamental principles that have evolved to bring finality to
2  the resolution of disputes.

3        For the reasons set forth herein, the BNSF Motion should be denied.

4        DATED this 14th day of August, 2017.

5                              TOUSLEY BRAIN STEPHENS PLLC

6                            By:  */s/ Christopher I. Brain*
7                                 */s/ Chase C. Alvord*
8                                 */s/ Noelle L. Chung*
                             Christopher I. Brain, WSBA #5054
9                               cbrain@tousley.com
                             Chase C. Alvord, WSBA #26080
10                              calvord@tousley.com
                             Noelle L. Chung, WSBA #51377
11                              nchung@tousley.com
                             1700 Seventh Avenue, Suite 2200
12                              Seattle, Washington 98101
                             Telephone: 206.682.5600
13                              Fax: 206.682.2992

14                              OFFICE OF THE TRIBAL ATTORNEY, SWINOMISH
15                              INDIAN TRIBAL COMMUNITY

16                           By:  */s/ Stephen T. LeCuyer*
17                              Stephen T. LeCuyer, WSBA #36408
                             slecuyer@swinomish.nsn.us
18                              11404 Moorage Way
                             La Conner, WA 98257
19                              Telephone: 360.466.1058
                             Fax: 360.466.5309
20

21                           ***Attorneys for Plaintiff***

22

23

24

25

26

27

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 24

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on August 14, 2017, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system which will send notification of such filing to all

4  parties registered on the CM/ECF system.  All other parties (if any) shall be served in

5  accordance with the Federal Rules of Civil Procedure

6       DATED at Seattle, Washington, this 14th day of August, 2017.

7

8                                      /s/ Christopher I. Brain
                                    Christopher I. Brain, WSBA #5054
9                                   cbrain@tousley.com
                                    Attorneys for Plaintiff
10                                  TOUSLEY BRAIN STEPHENS PLLC
                                    1700 Seventh Avenue, Suite 2200
11                                  Seattle, Washington  98101
                                    Tel:    206.682.5600
12                                  Fax:    206.682.2992

13

14  5973/001/479899.1

15

16

17

18

19

20

21

22

23

24

25

26

27

SWINOMISH TRIBAL COMMUNITY'S RESPONSE TO BNSF            **TOUSLEY BRAIN STEPHENS PLLC**
RAILWAY COMPANY'S MOTION FOR CLARIFICATION AND, IF                1700 Seventh Avenue, Suite 2200
NECESSARY, RECONSIDERATION (2:15-cv-00543-RSL) - 25                  Seattle, Washington  98101
                                                        TEL. 206.682.5600 • FAX 206.682.2992