UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>Defendant. | Case No. C15-0543RSL<br><br>ORDER CLARIFYING PREVIOUS ORDER AND DENYING DEFENDANT'S MOTION FOR RECONSIDERATION |

This matter comes before the Court on "BNSF Railway Company's Motion for Clarification and, if Necessary, Reconsideration." Dkt. # 88. The Swinomish Indian Tribal Community filed this lawsuit in April 2015 alleging that BNSF Railway Company breached provisions of a Right-of-Way Easement Agreement ("Easement Agreement") that governed BNSF's access to tribal lands. The Tribe asserted breach of contract and trespass claims and sought damages, declaratory judgment, and injunctive relief. In its answer, BNSF admitted that "the Right-of-Way is on the north end of the Reservation" and "crosses a bridge over the Swinomish Channel and a bridge across Padilla Bay, both of which are within the Reservation." Dkt. # 21 at ¶ 3.4 and ¶ 3.7. BNSF also raised preemption as an affirmative defense, arguing that the Tribe's claims are barred by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10501 *et seq*.

ORDER - 1

The parties filed cross-motions for summary judgment regarding the preemption defense. In support of its motion, the Tribe set forth facts relevant to the enforceability of the Easement Agreement, the Court's jurisdiction, and the nature of its claims, including that:

- The Swinomish Indian Tribal Community is a federally-recognized Indian tribe organized under the Indian Reorganization Act of 1934, 25 U.S.C. § 476.
- The Tribe is a successor to the signatories of the Treaty of Point Elliott of 1855, which established the Swinomish Reservation on Fidalgo Island, Washington, for the Tribe's "exclusive use." 12 Stat. 927, 1859 WL 10138 at *2 (signed Jan. 22, 1855).
- The reservation lands are held by the United States in trust for the Tribe.
- The Tribe objected in or around 1889 when the Seattle and Northern Railway Company began constructing a rail line across the northern edge of the Swinomish Reservation. BNSF's predecessor unsuccessfully sought the Office of Indian Affair's consent to the right-of-way.
- The right of way crosses the Swinomish Reservation.
- In the 1970's, the Tribe again objected to the railway's presence on the Reservation. BNSF's predecessor applied for a right-of-way from the Bureau of Indian Affairs ("BIA") and was told that a right-of-way could not issue without the Tribe's consent.
- Litigation between the parties ensued, with the Tribe seeking to enjoin a continuing trespass and BNSF's predecessor arguing that the rail line was not on tribal lands. The Tribe and the railroad company eventually negotiated a settlement of all outstanding matters through which the company would submit to the BIA an application for a right-of-way easement on terms and conditions agreed to by the parties, and the Tribe would notify the BIA that it consented to the specified terms. The BIA approved the settlement and granted the right-of-way on the terms described in the Easement Agreement negotiated by the parties.

These facts were not disputed in the summary judgment memoranda. Although BNSF noted that a contested issue in the prior litigation was whether the rail line was within the boundaries of the Reservation (Dkt. # 63 at 14), it admitted the fact for purposes of this litigation (Dkt. # 21 at ¶ 3.4 and ¶ 3.7) and offered no evidence that would suggest a genuine dispute. At

ORDER - 2

oral argument, however, counsel announced that BNSF was, in fact, contesting whether the Tribe had any rights in the land underlying the railway. Again, no evidence was identified or provided in support of the supposed disputed issue of fact. BNSF openly acknowledged that it could not obtain a right-of-way across the land without the Tribe's consent, but made no effort to explain why that would be so if the right-of-way were not part of the Reservation. Dkt. # 81 at 45. The Court was caught unawares and chastised BNSF's counsel for needlessly provoking and infuriating the Tribe where the previously universal assumption in this litigation had been that the track crosses the Reservation. Id. at 47-48. When pushed, counsel admitted ignorance of any facts which would support his extraordinary assertion: "I haven't a clue whether the track is on Burlington Northern -- or Burlington Northern's operations are on the Tribe's property or not. I didn't litigate that case, you know." Id. at 48.

In ruling on the cross-motions for summary judgment, the Court initially misconstrued plaintiff's breach of contract and trespass claims as arising under state law. The Tribe filed a motion for reconsideration, arguing that it was "suing to protect its interests in land that, pursuant to treaty, is held in trust for the Tribe by the United States government" and that its claims were therefore grounded in federal common law, not state law. Dkt. # 77 at 6. The Tribe clearly linked the resolution of the preemption issue to its treaty rights in the land underlying BNSF's tracks, arguing that the treaty gave rise to a federally-protected interest and fundamentally changed the preemption analysis. Again, BNSF did not produce any evidence that the right-of-way fell outside the Reservation boundaries. It did not even state as much. Rather, it noted that this issue had not been fully briefed and reserved "all rights to make future arguments regarding the Treaty." Dkt. # 79 at 16 n.9.

Based on the record before it, the Court found that it had erred in its preemption analysis. A federal right arising from a treaty is, under the Supremacy Clause of the United States Constitution, Art. VI cl. 2, on equal legal footing with federal statutes: preemption was simply not an issue. Thus, the Court implicitly adopted the admitted and factually undisputed allegation that BNSF's tracks are on tribal land.

ORDER - 3

BNSF, having now lost the preemption battle, intends to contest a key fact underlying that analysis, even though it was admitted in its answer and regarding which it has not provided a shred of evidence. BNSF admits that its goal is to overturn the Court's preemption decision by showing that the Tribe has no treaty rights to the land under the tracks, that the Tribe's right is therefore merely a contract right arising under state law, and that the contract and trespass claims are preempted. This very issue has been resolved based on a record developed by the parties with full knowledge that the genesis of the Tribe's contractual right -- whether it arose from a Treaty right or under state law -- was a critical issue. BNSF chose not to submit evidence on that issue, instead asserting a right to litigate this fact on its own schedule. It will not be permitted to do so.

For all of the foregoing reasons, BNSF's request for clarification is GRANTED. As part of the preemption analysis, the Court relied on the record evidence showing that the Tribe has a treaty right to the land under BNSF's tracks. That counsel can imagine a factual dispute regarding ownership -- or the fact that BNSF's predecessor raised the issue in a prior litigation -- does not mean that there is a genuine issue of disputed fact in this litigation. The Tribe's allegation of ownership was admitted, and BNSF declined to provide any evidence to support its periodic assertions that there may be some doubt regarding the issue. Its request for reconsideration is DENIED.

DATED this 15th day of March, 2018.

*Robert S. Lasnik*

Robert S. Lasnik
United States District Judge

ORDER - 4