NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 22 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian Tribe,<br><br>          Plaintiff-Appellee,<br><br>  v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>          Defendant-Appellant. | No.   18-35704<br><br>D.C. No. 2:15-cv-00543-RSL<br>Western District of Washington,<br>Seattle<br><br><br>ORDER |

Before: HAWKINS, W. FLETCHER, and BENNETT, Circuit Judges.

Counsel ("Counsel") for Appellant BNSF Railway Company ("Appellant") shall address the following portions of its briefs, as well as any others it deems appropriate. Bold text indicates language about which the panel is particularly concerned.

I. <u>Substitution of Words in the Easement</u>

On page 15, Appellant's Opening Brief states:

The Easement provides that BNSF may run, **at a minimum**, "one eastern bound train, and one western bound train, (of twenty-five (25) cars or less)" across the rail line each day.

The text of the easement reads:

> Burlington Northern agrees that, unless otherwise agreed in writing, **only** one eastern bound train, and one western bound train, (of twenty-five (25) cars or less) shall cross the Reservation each day.

Please explain how the substitution, without comment, of "at a minimum" for "only" candidly represents the terms of the easement.

II. Substitution of Words in Cases

    a.    *Thompson v. Texas-Mexican Ry. Co.*, 328 U.S. 134 (1946)

On pages 12–13, Appellant's Opening Brief states:

> Significantly, the obligation to provide continuing common-carrier service exists independently of the rail carrier's property rights in the tracks themselves or the land beneath, and therefore continues regardless of whether those property rights have terminated. *Tex-Mex*, 328 U.S. at 144–45 ("Though the [**land**] contract were terminated pursuant to its terms, a certificate [of abandonment or discontinuance] would still be required.")[.]

*See also* Appellant's Opening Brief at 71 ("Just two years earlier, in *Tex-Mex*, 328 U.S. 134 (1946), the Supreme Court had held that, absent an abandonment order from the ICC, a railroad must continue providing common-carrier service—even if a landowner terminates the property right that allowed the railroad to occupy the land in the first place.").

2

The text of *Texas-Mexican Railway* reads:

> Though the contract were terminated pursuant to its terms, a certificate would still be required[.]

*Thompson v. Texas-Mexican Ry. Co.*, 328 U.S. 134, 145. The word "land" does not appear in *Texas-Mexican Railway*, which involves a "trackage" contract, *Texas-Mexican Ry.*, 328 U.S. at 137, "whereby, for payment of specified rentals, Tex-Mex granted Brownsville the right to operate its trains over the tracks of Tex-Mex between Robstown and Corpus Christi, Texas, and to make use of terminal facilities of Tex-Mex at Corpus Christi," *id.* at 136.

Please explain how the insertion, without comment, of the word "land" candidly represents the holding of *Texas-Mexican Railway*.

    b.    <u>*CSX Transp., Inc.*, FD 34662, 2005 WL 584026 (STB Mar. 14, 2005)</u>

On page 28, Appellant's Opening Brief states:

> Consistent with the statutory text, "[e]very court that has examined [Section 10501(b)] has concluded that [its] preemptive effect . . . is broad and sweeping," **forbidding** "impinge[ment] on the [STB]'s jurisdiction or a railroad's ability to conduct its rail operations." *CSX Transp., Inc.*, FD 34662, 2005 WL 584026, at *6 (STB Mar. 14, 2005)[.]

The text of *CSX Transportation* reads:

> Every court that has examined the statutory language has concluded that the preemptive effect of section 10501(b) is broad and sweeping, **and that it blocks actions by states or localities** that would impinge

3

on the Board's jurisdiction or a railroad's ability to conduct its rail operations.

*CSX Transp.*, 2005 WL 584026, at *6.

Please explain how the omission of the qualifying language referring to "actions by states or localities," without comment, candidly represents the Order in *CSX Transportation*.

> c. *Ass'n of Am. R.R.s v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094 (9th Cir. 2010)

On pages 28–29, Appellant's Opening Brief states:

> This Court, too, has held that ICCTA squarely preempts **remedies** that "may reasonably be said to have the effect of managing or governing rail transportation." *Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097 (9th Cir. 2010)[.]

The text of *Association of American Railroads* reads:

> As stated by our sister circuits, ICCTA "preempts **all 'state laws** that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.'

*Ass'n of Am. R.R.s*, 622 F.3d at 1097.

Please explain how the omission of the qualifying language referring to "state laws," without comment, candidly represents the opinion in *Association of American Railroads*.

4

> d. *S. Pac. Transp. Co.—Abandonment Exemption—In Mineral & Lyon Counties, Nev.*, AB 12, 1991 WL 40203 (ICC Mar. 12, 1991)

On page 44, Appellant's Opening Brief states:

> *Cf. S. Pac.*, 1991 WL 40203, at *1 (approving abandonment so that "once the line is abandoned the [the affected shipper] will purchase the line … and contract for continued rail service over the line").

The text of *S. Pac.* reads:

> Under the terms of the agreement, once the line is abandoned the Army will purchase the line from SPT, **obtain a right-of-way across the Reservation**, and contract for continued rail service over the line, which SPT has agreed to upgrade.

Please explain how the omission of the language requiring the party to "obtain a right-of-way across the Reservation," without comment, candidly represents the full context in *S. Pac*.

### III. Characterization of Plaintiff-Appellee's Arguments

> a. Treaty

On page 47, Appellant's Opening Brief states:

> **[T]he Tribe itself** has pointed to the specific agreement between the parties—the Easement—and **has disclaimed the Treaty as determinative of its claims.** *See, e.g.,* ER0044 ("[T]he Tribe's burden of proof in this litigation is … not [to show] that BNSF violated the Treaty. As such, possessory rights under the Treaty to the land under BNSF's tracks need not be proven or adjudicated as an element of the Tribe's claims in this litigation[.]"); id. ("Resolution of the Tribe's actual claims does not require any adjudication of the Tribe's treaty rights").

5

In the sentence directly preceding the quoted material in the trial court document, Appellee Swinomish Indian Tribal Community ("Appellee") stated,

> [T]he Tribe asserts only a narrow claim for trespass based upon BNSF's violation of the specific limitations in the Easement Agreement; the Tribe is not re-prosecuting the Trespass Litigation on a more general claim based upon violation of the Tribe's possessory interests.

Please explain how this characterization of Appellee's argument below, and the omission of the accompanying clarifying language, without comment, candidly represents the content of Appellee's argument.

### b. Monetary Claims

On page 18, Appellant's Opening Brief states:

> The Tribe also **seeks increased rent**, which BNSF agrees it owes; the parties agreed to bifurcate this issue of monetary relief, which is subject to arbitration under the Easement.

*See also* Appellant's Opening Brief at 41 ("Because the Easement provides that disputes about the appropriate rent must be resolved through binding arbitration, ER0864–ER0865 ¶3(b)(iii), the parties in the district court agreed to bifurcate issues regarding monetary relief for later resolution, ER0034.").

At trial below, the Appellee stated it sought damages, not increased rent. The Appellee also contested that the arbitration clause of the Easement Agreement applies.

6

Please explain how this characterization of Appellee's argument below, and the district court's decision to bifurcate this issue, candidly represents the content of Appellee's argument.

IV. Characterization of Prior Negotiations

On page 16, Appellant's Opening Brief states:

In negotiating the Easement, BNSF insisted that it would need "flexibility with regard to the number of cars" permitted on the line, due to its common-carrier obligations under law.

On page 58, Appellant's Opening Brief states:

As BNSF's predecessor explained to the Tribe during these negotiations: "We cannot agree to a single train limitation, or to a limitation on the number of cars. At times, depending upon business at the refineries, we must have flexibility with regard to the number of cars …." ER0921. The Tribe itself acknowledged shippers' rights to common-carrier service in "agree[ing] not to arbitrarily withhold permission to increase the number of trains or cars when necessary to meet shipper needs." ER0869 ¶7(c).

The full paragraph of this quoted text reads:

We cannot agree to a single train limitation, or to a limitation on the number of cars. At times, depending upon business at the refineries, we must have flexibility with regard to the number of cars, which may exceed twenty- five or thirty. On occasion, I can imagine that more than one movement will be necessary depending upon a number of factors in railroad operations. It seems to me that our current level is one train each way per day. **If more trains should start operating (which we doubt)** it would seem to me that this could be the subject of a rent adjustment based upon the greater burden to the property adjacent to the right-of-way.

7

At no point did Appellant mention its "common carrier obligations." Please explain how Appellant's statements candidly represents the negotiations and what Appellee agreed to.

* * *

Counsel shall have twenty-eight (28) days from the date of this order to respond by letter brief not exceeding twenty-five (25) pages in length. Counsel for Appellee may, but is not required to, file a response, subject to the same page limitation, within ten (10) days of the filing of Appellant's response.

**SO ORDERED.**