UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY,<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br><br>Defendant. | Cause No. C15-0543RSL<br><br>ORDER REGARDING THE SCOPE OF THE PROPOSED WAIVER AND LEAVE TO DISCLOSE EXPERT WITNESS |

This matter comes before the Court on "Defendant BNSF Railway Company's Motion (1) Regarding Scope of Proposed Waiver of Privilege and (2) For Leave to Disclose Expert Witness." Dkt. # 181. In the context of determining whether either party was entitled to summary judgment regarding plaintiff's claim that BNSF's intentional trespass was willful, the Court stated:

> There is still, however, a question of fact regarding BNSF's consciousness of wrongdoing. If, as it repeatedly asserts, BNSF had a good faith belief that its role as a common carrier compelled it to exceed the limitations of the Easement Agreement, BNSF may not have been conscious of wrongdoing. Outside counsel for BNSF asserts that, throughout the negotiations between the parties, "BNSF believed that it was obligated to serve Marathon's cargo needs as required by its federal common carrier obligation." Dkt. # 148 at 3. BNSF made similar assertions in its 2015 correspondence with the Tribe. The basis for the purported belief is unclear, however. We now know that BNSF's common carrier obligations

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 1

do not, in fact, trump the promises it made to the Tribe in order to gain a right of access across the Reservation in the first place. There is also reason to suspect that common carrier obligations are inapplicable to cargo transported under a contract and/or where the limitation on carriage arises from the nature of the cargo or restrictions in capacity (as opposed to discrimination among shippers). The lack of evidence regarding BNSF's evaluation of its common carrier obligations combined with the significant income associated with the transportation of Bakken crude oil for Tesoro/Marathon creates a fact issue regarding BNSF's consciousness that the Court declines to resolve in the context of a motion for summary judgment. Thus, whether disgorgement is an available remedy for the trespass at issue here will have to be decided at trial.

Dkt. # 174 at 26. In order to address the evidentiary gap, BNSF seeks to have its outside counsel, Stephen DiJulio, testify at trial regarding his communications with BNSF regarding its common carrier obligations and would like to disclose a new expert, John Scheib, to testify regarding the railroad industry's understanding of the common carrier obligation during the relevant time period.

**A. Proposed Waiver of the Attorney-Client Privilege**

Pursuant to Federal Rule of Evidence 502(a), when a party voluntarily waives the attorney-client privilege with regards to a particular communication or document, the waiver extends to other undisclosed communications only if "(1) the waiver is intentional; (2) the disclosed material and the undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." The waiver of privilege "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502(a) advisory committee's note. BNSF

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 2

requests that the Court establish the scope of the waiver that would occur if Mr. DiJulio were called to testify as to BNSF's understanding and consideration of its common carrier obligations and its impact on the Easement Agreement, arguing that the waiver should reach only the universe of communications that (1) Mr. DiJulio sent or received *and* (2) which involved a discussion of either common carrier obligations or preemption issues. Neither limitation is appropriate. The issue is not whether Mr. DiJulio believed or was told that BNSF's role as a common carrier compelled it to exceed the limitations of the Easement Agreement,[1] but rather whether BNSF actually held that belief based on a reasonable investigation and evaluation of the competing obligations imposed by the Easement Agreement, the Indian Right of Way Act, and BNSF's common carrier status. This inquiry must be asked and answered at various points in time, particularly in the year before BNSF began running unit trains over the Reservation in September 2012, when BNSF first raised the common carrier argument in its discussions with the Tribe, and throughout the trespass as more and more information came to light.

      BNSF wants Mr. DiJulio to testify that BNSF mistakenly, but honestly, believed that its common carrier obligations trumped its obligations under the Easement Agreement. It is willing to waive the privilege as to conversations to which Mr. DiJulio was a party and which specifically mention common carrier or preemption issues. But there were undoubtedly conversations regarding the pros and cons of running unit trains that did not involve Mr. DiJulio,

---

[1] BNSF is not relying on an advice-of-counsel defense, but is rather intending to use Mr. DiJulio as a conduit for expressing how BNSF itself assessed its common carrier obligations. Dkt. # 185 at 8 n.4.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 3

and the Tribe is not unreasonable in thinking that there may be communications and documents suggesting that something other than the imperatives of its common carrier status motivated BNSF's decision. BNSF cannot rely on communications with counsel to prove its intent or motivation while depriving the opposing party of other privileged materials that may contradict its claim. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

If BNSF chooses to waive the attorney-client privilege with regards to its conversations with Mr. DiJulio related to common carrier and/or preemption issues, the waiver will extend to all communications regarding its decision to run unit trains over the Reservation from 2011 to the present, regardless whether Mr. DiJulio were a participant in the communications and regardless the justification, analysis, or reasoning for the decision that is reflected in the communication.

**B. Extension of Time in Which to Disclose Expert**

BNSF hopes to have Mr. Scheib testify regarding industry standards related to common carrier obligations and how a reasonable railroad executive would have understood and prioritized the competing obligations presented in this case. The deadline for disclosing expert witnesses was April 2021. The parties agree on the factors to be considered when a party seeks to reopen discovery under Federal Rule of Civil Procedure 16:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 4

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). In analyzing these factors, the primary consideration is the diligence of the party seeking to amend the case management deadlines. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

The relevant factors are fairly evenly split. Although the trial date is more than two months away, significant additional discovery will be necessary if a new expert is introduced at this point in the litigation. The request is opposed, but plaintiff's claim of prejudice is based primarily on the timing of the disclosure. With regards to diligence and foreseeability, plaintiff has the better of the argument. The deadline for expert disclosures was set after the Ninth Circuit determined the preemption issue against BNSF, and BNSF had more than eight months to meet plaintiff's assertion that it was entitled to disgorgement of any and all profits garnered from BNSF's knowing exceedances of the Easement Agreement limitations. At that point, having lost the argument that its common carrier obligations justified the breach of the Easement Agreement and realizing that its state of mind was at issue, BNSF should have predicted that merely asserting a belief in the debunked common carrier theory would not carry the day.

The Court finds that the balance of five out of six factors (including the most important of the factors) counsels against allowing the late disclosure of a new expert. The last factor, relevance, could even out the scales in favor of the late disclosure if BNSF were to offer privileged communications tending to show that it did, in fact, believe that its common carrier obligations compelled it to run unit trains over the Reservation despite the terms of the

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 5

1  Easement Agreement and the Tribe's objections. In those circumstances, Mr. Scheib's testimony
2  would support and bolster that evidence. If, on the other hand, BNSF declines to waive the
3  privilege and opts not to produce any evidence regarding its actual decision-making process,
4
5  motivations, and/or analysis during the relevant period, Mr. Scheib's abstract testimony
6  regarding what a reasonable railroad executive would have understood about her competing
7
8  obligations – untethered to any evidence about what BNSF, in fact, understood – would have
9  almost no probative value and the balance of the factors would tilt decidedly against reopening
10 discovery.
11
12
13      For all of the foregoing reasons, BNSF's motion for a determination of the scope of the
14 proposed waiver and for leave to disclose a new expert witness is conditionally GRANTED in
15
16 part. BNSF's proposed waiver of the privilege would require the disclosure of all
17 communications regarding its decision to run unit trains over the Reservation from 2011 to the
18 present, regardless whether Mr. DiJulio were a participant in the communications and regardless
19
20 the justification, analysis, or reasoning for the decision that is reflected in the communication. If
21
22 //
23
24
25 //
26
27
28

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 6

BNSF elects to proceed with the waiver, it shall produce the expert report of Mr. Scheib within three days of the date of this Order and shall produce the waived communications within twenty-one days of the date of this Order. Failure to make both productions will be deemed an election not to proceed with the waiver.

Dated this 9th day of January, 2023.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge