1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  SWINOMISH INDIAN TRIBAL
9  COMMUNITY,

10               Plaintiff,
11         v.
12  BNSF RAILWAY COMPANY,
13               Defendant.
14

CASE NO. 2:15-cv-00543-RSL

ORDER GRANTING IN PART
BNSF'S MOTIONS IN LIMINE

15        This matter comes before the Court on "Defendant BNSF Railway Company's
16  Motions in Limine." Dkt. # 192. Having reviewed the memoranda, declarations, and
17  exhibits submitted by the parties,[1] the Court finds as follows:

18        Prior to ruling on the parties' motions for summary judgment, the Court identified
19  the remaining liability issues as whether BNSF's breaches of the Easement Agreement
20  were material, whether BNSF intentionally and willfully trespassed on tribal lands, and
21  whether the Tribe acted arbitrarily when it rejected BNSF's request to increase rail traffic
22  over the easement. Dkt. # 174. The Court found as a matter of law that BNSF engaged in
23  an intentional trespass under federal common law (Dkt. # 174 at 23) and that the Tribe's
24  decision to enforce the limits imposed by the Easement Agreement was not arbitrary (Dkt.
25  # 174 at 18-22). The parties subsequently stipulated that materiality is no longer at issue.

26

---

[1] The matter can be decided on the papers submitted. Plaintiff's request for oral argument is DENIED.

Dkt. # 180. Thus, the only issue to be tried later this month is whether BNSF's intentional trespass was knowing, conscious, and willful.

### A. Irrelevant and Prejudicial Evidence

BNSF argues that evidence regarding the Tribe's governance structure, history and philosophies, the Tribe's economic resources and enterprises, funding of Tribal government services, interactions between the Tribe and other local governmental entities, formation of the Easement Agreement, impacts of the unit train traffic, information pertaining to the easement appraisal process, and the Tribe's decision to commence litigation is irrelevant to determining whether BNSF had a good faith belief about its common carrier obligations, would cause undue delay, and would prejudice BNSF. BNSF oversimplifies the issue that must be decided in this phase of the trial, which involves the railway's state of mind over a significant period of time. While BNSF will attempt to show that it was motivated by a good faith belief that it had to violate the Easement Agreement in order to satisfy its obligations as a common carrier, the Tribe must attempt to prove a negative, namely that BNSF did not have the good faith belief it now claims. In order to do that, the Tribe must be permitted to offer evidence tending to show that the common carrier theory was an afterthought, that it never came up during the Easement Agreement negotiations, was never discussed internally as a justification for overstepping the easement limitations, that no research was performed to evaluate the interplay between BNSF's common carrier duties and Indian law, that common carrier obligations were mentioned only a handful of times before the Tribe filed suit, and that other considerations – such as profit – played a more visible role in BNSF's decision-making.

The only evidence BNSF specifically identifies in its first motion in limine is the anticipated testimony of Steve Edwards, Elissa Kalla, and Brian Cladoosby. Chairman Edwards' testimony does not appear to have any relationship to BNSF's state of mind: the general history and philosophy of the Swinomish Indian Tribal Community and its

economic resources/enterprises will not bring BNSF's motivations into focus. Ms. Kalla and Mr. Cladoosby were involved in communications with BNSF during the relevant timeframe, however, and can testify regarding the topics discussed and not discussed during those exchanges, including common carrier obligations. Given the relevance of this testimony, the time it takes to present it is not "undue," and BNSF does not articulate any prejudice that will arise from its admission.[2]

BNSF also argues that the evidence should be excluded because it was already considered by the Court when ruling on the summary judgment motions. The fact that documents or testimony were considered while ruling on other causes of action does not make it irrelevant or inadmissible at a trial on the trespass claim. The Tribe must prove the elements of the remaining claim, and all supporting evidence must be presented in open court, by stipulation or otherwise, even if the Court has already seen the evidence in pretrial motions practice.

**B. Temporal Limitations**

BNSF seeks to exclude evidence from before July 1, 2011, when discussions about Tesoro's expanded shipper needs commenced,[3] and after April 7, 2015, when this lawsuit was filed. A purely temporal limitation is not appropriate. If, for example, BNSF negotiated limitations on the use of the easement without ever raising a concern that the limitations would interfere with its common carrier obligations and/or declined previous shipper requests despite those obligations before July 2011, the evidence may be relevant

___

[2] BNSF's reply argument suggests that, while some evidence regarding the communications between the parties may be relevant to show BNSF's motivations, admitting "all of the communications" is inappropriate. The Court can imagine situations in which the topic of the communication is so wholly removed from the decision to run (and continue running) unit trains over the right-of-way that the absence of any discussion regarding BNSF's motives raises no inference in favor or against a finding of willfulness. It is also possible that communications will be duplicative of evidence that has already been admitted. BNSF has not identified any such evidence, however. The irrelevance or redundancy of specific exhibits or testimony will have to be evaluated at trial.

[3] The Pretrial Statement submitted by the parties on March 8, 2023, indicates that BNSF had discussions with Tesoro about transporting Bakken crude oil from North Dakota by unit train across the easement as early as February 2011. Dkt. # 201 at 6.

ORDER GRANTING IN PART BNSF'S MOTIONS IN
LIMINE - 3

to evaluating BNSF's motives in breaching the Easement Agreement. Likewise, evidence of BNSF's conduct throughout the post-filing years in the face of increasing questions regarding the validity of its common carrier justification – such as whether it evaluated the Tribe's treaty and statutory rights when responding to the Tribe's claims, whether it continued to exceed the Easement Agreement limitations even after the courts called the justification into question, and whether the profits in the offing actually drove the continuing trespass – is clearly relevant to determining whether and when the trespass was knowing, conscious, and willful. See Dkt. # 190 at 3-4.[4] Given the relevance of this evidence, the time it takes to present it is not "undue."

### C. Tribal Rights and History

BNSF seeks to exclude from evidence documents and testimony regarding the Tribe's history, including its fishing activities and its treaty rights. As discussed above, a general discussion of who the Swinomish are, how they govern themselves, their funding mechanisms and enterprises, and their inter-governmental relationships is not relevant to BNSF's motivations. The Tribe's treaty and statutory rights are, however, relevant: whether BNSF conducted a reasonable investigation and evaluation of the various obligations imposed by the Easement Agreement, the Indian Right of Way Act, and its

---

[4] BNSF's citation to the Court's "Order Regarding BNSF's Motion to Compel Discovery," Dkt. # 47, is inapposite. In its motion to compel, BNSF sought the production of post-filing documents to show how the Easement Agreement should be interpreted, that the Tribe's claims were preempted, and that the Tribe acted arbitrarily in refusing consent to the expansion of BNSF's use of the right-of-way. None of those issues involved the Tribe's post-filing, non-privileged documents, and the motion to compel was denied. The Court specifically noted, however, that "[t]here are a vast array of situations in which evidence supporting or disproving a claim could come into existence after litigation is joined and be subject to discovery. For example, an insured that has asserted a bad faith claim is permitted to take discovery regarding the manner in which an insurer is handling its claim, and an alleged tortfeasor in a personal injury suit is entitled to discover whether the plaintiff has engaged in activities that are incompatible with the injuries alleged." Dkt. # 47 at 5-6. Here, the Tribe has shown an on-going, intentional trespass, and the issue is whether and when that trespass was willful. Post-filing evidence that tends to show BNSF's state of mind during the trespass is relevant.

ORDER GRANTING IN PART BNSF'S MOTIONS IN
LIMINE - 4

common carrier obligations is relevant to whether it held a good faith belief that it had to breach the agreed limitations.[5]

### D. Tribal Senate's Executive Sessions

The parties agree that evidence of or regarding the Tribal Senate's Executive Sessions should not be admitted at trial.

### E. BNSF's Revenues and Costs

BNSF seeks to exclude evidence of or reference to the revenues and costs associated with the railway's use of the right-of-way. Evidence of a significant financial motive for breaching the Easement Agreement is relevant to evaluating BNSF's claim that its conduct was prompted by its common carrier obligations. While extensive or redundant profit data is not necessary, the Tribe must prove the elements of the remaining claim, and supporting evidence must be presented in open court, by stipulation or otherwise, even if the Court has already seen the evidence in pretrial motions practice.

### F. Relative Size of the Parties

The parties agree not to make arguments based on their relative sizes. Evidence tending to reveal the size of the parties is not inadmissible when offered to establish some other fact or in support of some other argument.

### G. Unjust Enrichment Claim

BNSF argues that the Tribe is not entitled to pursue an unjust enrichment claim in this litigation. The Tribe agrees, and the Court has already concluded that there is no separate unjust enrichment claim at issue. The concept informs the damages analysis for the trespass and breach of contract claims, however, and it is unclear what evidence BNSF seeks to exclude. To the extent BNSF is objecting to the use of the phrases "unjust enrichment" or "unjustly enriched," its motion in limine is denied.

---

[5] If BNSF argues that the Tribe's trespass claim is barred by the doctrines of waiver and estoppel, evidence of the Tribe's governance, history, and philosophy may be admitted as rebuttal.

ORDER GRANTING IN PART BNSF'S MOTIONS IN
LIMINE - 5

**H. Deposition Testimony of James Tangaro**

Non-party Tesoro designated Mr. Tangaro to testify under Rule 30(b)(6). His deposition testimony is not admissible under Rule 32(a)(2)-(8). Mr. Tangaro must, therefore, testify in person. Given the limited scope of his anticipated testimony, the Court is not opposed to having him testify remotely through Zoom. The parties shall confer to see if they can reach agreement on this issue.

For all of the foregoing reasons, BNSF's motions in limine (Dkt. # 192) are GRANTED in part and DENIED in part.

Dated this 14th day of March, 2023.

*Robert S Lasnik*
Robert S. Lasnik
United States District Judge