UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY,<br><br>                 Plaintiff,<br><br>      v.<br><br>BNSF RAILWAY COMPANY,<br><br>                 Defendant. | CASE NO. 2:15-cv-00543-RSL<br><br>ORDER REGARDING PLAINTIFF'S MOTIONS IN LIMINE |

This matter comes before the Court on the Swinomish Indian Tribal Community's "Motion in Limine." Dkt. # 194. Having reviewed the memoranda submitted by the parties,[1] the Court finds as follows:

**1. Testimony Regarding Privileged Documents**

In November 2022, BNSF requested leave to have its outside counsel, Stephen DiJulio, testify regarding his communications with BNSF regarding its common carrier obligations. The testimony would be offered in support of BNSF's claim that it had a good faith belief that its common carrier obligations compelled it to exceed the limitations imposed by the Easement Agreement. Dkt. # 181. BNSF acknowledged that Mr. DiJulio's representations to the Tribe regarding BNSF's understanding of its common carrier

---

[1] The matter can be decided on the papers submitted. Plaintiff's request for oral argument is DENIED.

ORDER REGARDING PLAINTIFF'S MOTIONS IN LIMINE - 1

obligations was "[b]ased on his privileged communications with BNSF" and recognized that his testimony would work a voluntary waiver of attorney-client privilege. Dkt. # 181 at 1-2. Before deciding whether or not to waive the privilege, BNSF sought a judicial determination regarding the scope of the proposed waiver, arguing that it should be limited to only those documents that Mr. DiJulio sent or received and which involved a discussion of either common carrier obligations or preemption. The Court declined to issue such a ruling, finding that if Mr. DiJulio testified regarding the reason BNSF felt it had to exceed the Easement Agreement limitations, the testimony would waive the privilege as to all communications related to the decision to run unit trains over the easement, regardless whether the communications supported or contradicted Mr. DiJulio's testimony. The Court reasoned that:

> [T]here were undoubtedly conversations regarding the pros and cons of running unit trains that did not involve Mr. DiJulio, and the Tribe is not unreasonable in thinking that there may be communications and documents suggesting that something other than the imperatives of its common carrier status motivated BNSF's decision. BNSF cannot rely on communications with counsel to prove its intent or motivation while depriving the opposing party of other privileged materials that may contradict its claim. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

Dkt. # 181 at 3-4. If BNSF intended to waive the privilege over the identified communications, it would also have to produce all communications regarding its decision to run unit trains over the easement within 21 days of the Court's order.

BNSF chose not to make any additional production and instead retained its privilege intact. BNSF has nevertheless listed Mr. DiJulio as a trial witness who will testify regarding "BNSF's good faith belief that it had an obligation as a common carrier to provide services that met shipper needs; his discussions with the marketing department about the common carrier obligation, . . . and the basis for his representation to the Tribe that BNSF had such an obligation." Dkt. # 201 at 17. The Tribe seeks an order precluding

ORDER REGARDING PLAINTIFF'S MOTIONS IN
LIMINE - 2

Mr. DiJulio from testifying about any privileged analyses and communications with BNSF employees because they were not timely disclosed.[2] BNSF argues in response that (1) the testimony is directly and highly relevant to the primary issue in this phase of the litigation, (2) the testimony is not privileged because Mr. DiJulio's communicated BNSF's belief that its common carrier obligations required it to breach the easement limitations to the Tribe and he should be permitted to testify regarding those communications and his "analysis" of or "basis for his representations" to the Tribe, and (3) Mr. DiJulio's communications with BNSF employees are not privileged because they were not for the primary purpose of requesting or providing legal advice but rather for the primary purpose of obtaining "business and/or negotiations advice for BNSF's dealing with the Tribe." Dkt. # 198 at 3.

       The fact that Mr. DiJulio's testimony is highly relevant to the issues to be decided at trial has been apparent since the Court issued its summary judgment order in August 2022. The Court noted that although BNSF had asserted a good faith belief in the primacy of its common carrier obligations, "[t]he basis for the purported belief is unclear." Dkt. # 174 at 26. The Court recognized that common carrier obligations do not, in fact, trump the Tribe's contractual, treaty, and statutory rights, that those rights imposed external limitations on BNSF's ability to carry goods, and that, in this context, there was no issue of discrimination between shippers. The Court specifically called out the "lack of evidence regarding BNSF's evaluation of its common carrier obligations." *Id*. BNSF knew that Mr. DiJulio's testimony regarding privileged communications he had with its employees would be key to filling the identified evidentiary gap, and the Court was willing to reopen discovery to allow the production of documents that had been withheld on privilege grounds. BNSF chose not to waive the privilege or produce the withheld documents. The

---

[2] In its motion, the Tribe also raised objections based on a failure to disclose expert testimony and hearsay. These arguments were not pursued in reply and have not been considered here.

ORDER REGARDING PLAINTIFF'S MOTIONS IN LIMINE - 3

relevance and relative importance of this testimony is not a justification for its admission at trial in the circumstances presented here.

The parties agree that non-privileged communications – such as Mr. DiJulio's statements to the Tribe – are admissible, but they disagree as to whether his analysis of the common carrier obligation and/or his communications with BNSF employees regarding that obligation are privileged. This matter is taken under advisement. While Mr. DiJulio's testimony will be limited to non-privileged matters, the scope of that testimony will have to be determined on a question-by-question basis at trial.

**2. Testimony of Katie Hower and Cary Hutchings**

BNSF plans to call Ms. Hower to testify regarding "BNSF's marketing department's understanding of its common carrier obligations" while Mr. Hutchings will be asked about "BNSF's economic development department's understanding of its common carrier obligations." Dkt. # 201 at 16. The Tribe seeks an order precluding these witnesses from testifying about any "understanding" that arose from communications with counsel because to do so would allow BNSF to evade the repercussions of its decision to withhold privileged communications on the subject during discovery. BNSF maintains that the common carrier obligations are fundamental to the way these departments conduct their business, not as a function of the advice of counsel, but rather as a "bedrock principle baked into the company's DNA that guides its business decisions." Dkt. # 198 at 2.

The Court takes this matter under advisement. The personal knowledge of the witnesses, the source of their information, and the nature of the question asked will likely determine whether particular testimony is admissible or not. The scope of the testimony will have to be resolved at trial.

//

ORDER REGARDING PLAINTIFF'S MOTIONS IN LIMINE - 4

For all of the foregoing reasons, the Tribe's motions in limine (Dkt. # 194) are GRANTED in part.

Dated this 14th day of March, 2023.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge