HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian Tribe,<br><br>                      Plaintiff,<br><br>    v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>                  Defendant. | No. 2:15-cv-00543-RSL<br><br>BNSF RAILWAY COMPANY'S MOTION TO COMPEL ARBITRATION<br><br>NOTE ON MOTION CALENDAR: June 16, 2023 |

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION
Cause No. 2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

# TABLE OF CONTENTS

I.      INTRODUCTION AND RELIEF REQUESTED...................................................1

II.     BACKGROUND .................................................................................................2

    A.    The Tribe Agreed to Arbitrate Claims for Compensation for Increased Traffic Over the Easement ....................................................................................................... 2

    B.    Rather than Demand Arbitration, the Tribe Sued BNSF for Increased Traffic......... .. 3

    C.    BNSF Preserved Moving to Compel Arbitration ........................................... 4

    D.    The Tribe Demands Arbitration for a Rental Adjustment Based on the Easement Limitations ....................................................................................................... 5

    E.    BNSF Demands that the Tribe Arbitrate its Damages Claims ........................ 5

III.    STATEMENT OF THE ISSUES........................................................................6

IV.     EVIDENCE RELIED UPON .............................................................................6

V.      ARGUMENT ......................................................................................................7

    A.    Legal Standard ................................................................................................ 7

    B.    The FAA Governs the Arbitration Agreement ............................................... 8

    C.    The Parties Agreed to Arbitrate "Gateway" Arbitrability Issues. ................... 8

    D.    The Federal Arbitration Act Requires Arbitration of this Matter. ........................... 10

        1.    The parties entered into a valid agreement to arbitrate.................................... 11

        2.    The Tribe's claims fall within the scope of the Arbitration Agreement. ......... 11

        3.    The Easement did not enumerate trespass damages as a claim that could be sought outside of arbitration .......................................................................... 14

VI.     CONCLUSION...................................................................................................14

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - i
Cause No. 2:15-cv-00543-RSL i

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

## I.    INTRODUCTION AND RELIEF REQUESTED

The sole remaining issue in this litigation is the compensation due to the Swinomish Indian Tribal Community ("Tribe") as a result of BNSF Railway Company's ("BNSF") operation of rail traffic in excess of the limitations set forth in the Right-of-Way Easement ("Easement"). The Easement contemplates that the Tribe is entitled to an increase in compensation if rail traffic increases over the right-of-way ("Right-of-Way"). The Easement further provides that any dispute over such compensation is to be resolved in binding arbitration. Specifically, the parties agreed that "if the number of crossings or number of cars is increased, the annual rental will be subject to adjustment" and disputes about rental adjustments are to be "determined in accordance with the Commercial Arbitration Rules of the American Arbitration Association and the provisions set forth herein by binding arbitration." Easement, §§ 3(b)(iii), 7(c) (collectively, "Arbitration Agreement"). The Arbitration Agreement is not limited to claims arising directly under the Easement, and applies to any claim relating to compensation due from an increase in rail traffic. While the extent of compensation due differs with respect to the Tribe's breach of Easement claim and trespass claim, the compensation is based on the same underlying events: the increase in rail traffic over the limit permitted in the Easement. The Tribe and BNSF dispute the amount of compensation that BNSF owes the Tribe. Under the plain terms of the Easement and the Federal Arbitration Act ("FAA"), which governs here, the current dispute about compensation is subject to binding arbitration.

At a minimum, the Court should refer the question of arbitrability of the claims or scope of the Arbitration Agreement to the arbitrator to decide in the first instance. As noted above, the Arbitration Agreement provides that any arbitration shall proceed under the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules"). By invoking these

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 1
Cause No. 2:15-cv-00543-RSL 1

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

rules, the parties agreed that such threshold questions would be submitted to the arbitrator in the first instance. *See Munning v. Nordstrom, Inc.,* C19-1810RSL, 2020 WL 1528477, at *2 (W.D. Wash. Mar. 31, 2020) (Lasnik, J.) (ordering arbitration even for claims that appeared to fall outside the scope of the arbitration agreement).

The Tribe and BNSF have agreed to use Judge (Ret.) Ronald Leighton as the arbitrator for any disputes relating to increased compensation. BNSF's motion to compel should be granted and this matter referred to Judge Leighton for determination.

## II.     BACKGROUND

The Court is familiar with the facts as a result of the trial and the various rulings on summary judgment. BNSF provides this brief supplemental factual statement to recap essential facts most relevant to this motion.

### A.     The Tribe Agreed to Arbitrate Claims for Compensation for Increased Traffic Over the Easement

BNSF operates trains over the Swinomish Reservation pursuant to an Easement that was signed by the Tribe, the United States of America, and Burlington Northern Railway Company, BNSF's predecessor, in 1991. *See* Dkt. # 216 at 2; Tr. Ex. 3 (Easement). The Easement permits BNSF to run one train of up to 25 cars per day in each direction. Easement, § 7(c).

If the number of trains or cars is increased above this limit, the Tribe is entitled to an adjustment in rent. *Id*. To that end, the Easement has detailed provisions that govern how to determine the compensation the Tribe is entitled to receive for increased traffic. *Id.*, §§ 3, 7(c). Section 7(c) provides:

> Burlington Northern agrees that, unless otherwise agreed in writing, only one eastern bound train, and one western bound train, (or twenty-five (25) cars or less) shall cross the Reservation each day. The number of trains and cars shall not be increased unless required by shipper needs. The Tribe agrees not to arbitrarily

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 2
Cause No. 2:15-cv-00543-RSL 2

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

withhold permission to increase the number of trains or cars when necessary to meet shipper needs. *It is understood and agreed that if the number of crossings or the number of cars is increased, the annual rental will be subject to adjustment in accordance with paragraph 3(b)(iii) of this Right-of-Way Easement and paragraph 2(b)iii of the Settlement Agreement.*

Easement § 7(c) (emphasis added). Section 3(b)(iii), in turn, requires that any dispute over compensation be resolved via binding arbitration: "If the parties are unable to agree upon a rental adjustment, such adjustment shall be determined in accordance with the Commercial Arbitration Rules of the American Arbitration Association and the provisions set forth herein by binding arbitration."[1] *Id.* § 3(b)(iii). The Arbitration Agreement also sets forth in detail how an arbitration may be initiated by a party and how the arbitrator(s) is to be selected. *Id.*

In sum, the Arbitration Agreement requires the parties to arbitrate any dispute regarding compensation for BNSF's excess use of the Right-of-Way, incorporates the AAA Rules, and sets forth in detail the process for initiating arbitration.

**B.      Rather than Demand Arbitration, the Tribe Sued BNSF for Increased Traffic**

In September 2012, BNSF began running 100-car unit trains across the Right-of-Way and continued to do so through May 2021, in excess of the Easement limitations and without the consent of the Tribe. Dkt. # 216 at 4–5, 15.

On April 7, 2015, the Tribe filed this lawsuit and then amended it on August 17, 2020. Dkt. ## 1; 124. The Tribe's claims boil down to one central allegation: the Tribe is entitled to compensation for BNSF's increased traffic over the Easement without the parties coming to an agreement, in violation of the Easement limitations. All of the Tribe's claims for damages stem

---

[1] The Settlement contains the same provisions to arbitrate compensation for increases in train traffic. *See* Settlement, ¶ 2(b)(iii).

BNSF RAILWAY COMPANY'S MOTION TO COMPEL ARBITRATION - 3
Cause No. 2:15-cv-00543-RSL 3

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

from this increase of traffic without an agreement. *See, e.g.*, Dkt. # 124 ¶ 3.14 ("The Tribe has never granted BNSF permission to exceed the express limitations contained in Paragraph 7(c) of the Easement Agreement."). In particular, the Tribe's damages claims for breach of the Easement and trespass arise from BNSF "overburdening the Right-of-Way," being "in material breach of the Easement," and "running trains over the Right-of-Way in excess of the number permitted by the Agreement." Dkt. # 124 ¶¶ 9, 12, 15. The Tribe filed the lawsuit despite the Arbitration Agreement.

### C.    BNSF Preserved Moving to Compel Arbitration

Because BNSF believed itself to be in negotiations related to compensation for the increased use of the Easement, BNSF did not demand arbitration before the litigation was filed. After the lawsuit was initiated, however, BNSF filed a motion to dismiss that argued, in part, that "[t]he Tribe's damages claims belong in arbitration." Dkt. # 8 at 10.

The parties then agreed to bifurcate the case, with substantive issues and injunctive relief to be decided in the first phase and damages to be determined in the second phase. Dkt. # 19 at 6. In ruling on BNSF's motion to dismiss, the Court noted BNSF's arbitration defense and concluded that BNSF could raise the argument again should the issues in the first phase of trial be resolved in the Tribe's favor. *Id.* BNSF continued to raise and preserve this argument throughout the first phase of the case. *See, e.g.*, Dkt. ## 23 ¶ 12, 176 at 4–6.

In the first phase of the trial, the Court determined that the Easement traffic limitation was enforceable; that BNSF breached the Easement, Dkt. ## 85; 111; that BNSF was liable for willful, knowing, and conscious intentional trespass, Dkt. ## 174 at 22–23; 216; and that the Tribe did not act arbitrarily in refusing to allow BNSF to transport unit trains of Bakken Crude

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 4
Cause No. 2:15-cv-00543-RSL 4

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

oil over the Right-of-Way. Dkt. # 174 at 18-22. All that remains for the second phase is a determination of damages for BNSF's increased traffic across the Right-of-Way.[2]

**D.    The Tribe Demands Arbitration for a Rental Adjustment Based on the Easement Limitations**

On May 31, 2022, the Tribe invoked the Arbitration Agreement to resolve the dispute between the Tribe and BNSF over the adjustment of the annual rent for BNSF transporting 25 cars each way per day over the Right-of-Way. Declaration of Paul Lawrence ("Lawrence Decl."), Ex. A. After discussion, the Tribe and BNSF agreed to appoint Judge Leighton as arbitrator. Lawrence Decl. ¶ 3. Subsequently, the Tribe and BNSF agreed to defer the arbitration until the resolution of this motion to compel. *Id.* The Tribe and BNSF further agreed that if BNSF's motion is granted, Judge Leighton would serve as arbitrator on both the annual rent adjustment for BNSF transporting within the existing Easement limitations and the compensation due for BNSF's breach of the Easement and trespass for operating rail traffic in excess of the Easement limitations. *Id.*

**E.    BNSF Demands that the Tribe Arbitrate its Damages Claims**

Following the Court's direction to reserve the issue of arbitration until the conclusion of phase one of this case and taking into account the Court's rulings in phase one, on May 1, 2023, BNSF sent a letter to the Tribe proposing a rental adjustment to account for BNSF's increased use of the Easement. Lawrence Decl., Ex. B. The amount reflected the "Court's holding on equitable damages" and was made "in the interest of trying to reach a resolution that fairly compensates the Tribe for BNSF's past use of the Easement without the Tribe's consent." *Id.*

---

[2] Upon receiving notice from BNSF in a letter dated December 18, 2020 that BNSF would comply with the traffic limitations, the Tribe withdrew its claim for injunctive relief. Dkt # 134 at 34. The parties later stipulated that the materiality of BNSF's breach of the Easement was not relevant to the remaining issues to be tried. Dkt. # 180.

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 5
Cause No. 2:15-cv-00543-RSL 5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

In the event the Tribe rejects BNSF's proposal, the letter demands that such adjustment be determined by arbitration. *Id.* BNSF nominated as the arbitrator Judge Leighton, who as noted the parties previously had selected to arbitrate their dispute regarding the rental adjustment amount. *Id.* The letter further informed the Tribe that if the Tribe refuses to arbitrate, BNSF would file a motion to compel arbitration. *Id.*

As of May 12, 2023, the Tribe has not formally responded to BNSF's letter. More importantly, the Tribe previously made clear that they opposed arbitrating the compensation for the breach of Easement and trespass claims. Accordingly, the parties had included a schedule for briefing in this Court's April 25, 2023 Amended Order. Dkt. # 218. BNSF now moves this court to compel arbitration.

## III.  STATEMENT OF THE ISSUES

**1.**  The Tribe and BNSF agreed that any arbitration will be governed by the Commercial Arbitration Rules of the American Arbitration Association. Those rules state that the arbitrator has the authority to rule on threshold questions regarding arbitrability of claims and the scope of an agreement to arbitrate. Should the Court allow the arbitrator to determine these gateway issues?

**2.**  The Tribe and BNSF agreed to arbitrate disputes regarding adjustments to compensation for rail traffic in excess of the agreed Easement limitations. The Tribe's damages claims all stem from BNSF's increased use of the Right-of-Way in excess of the Easement limitations. Do the Tribe's claims fall within the scope of the Arbitration Agreement?

## IV.  EVIDENCE RELIED UPON

This motion relies on the papers and pleadings on file in this matter, and the accompanying Declaration of Paul J. Lawrence and exhibits thereto.

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 6
Cause No. 2:15-cv-00543-RSL 6

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

# V.    ARGUMENT

## A.    Legal Standard

The FAA reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (holding that agreements to arbitrate "must be rigorously enforced") (cleaned up). Its purpose is "to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). As such, "parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Id.* at 1157 (citing *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24–25.

The FAA broadly applies to any contract "evidencing a transaction involving commerce" that is subject to a written agreement to arbitrate. *See* 9 U.S.C. § 2. When a party refuses to arbitrate despite the existence of such an agreement, the other party may petition a court for an order compelling arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (cleaned up). Thus, once the applicability of the FAA is established, a court's role is "limited" to determining (1) whether a valid written agreement to arbitrate exists and (2) whether the agreement encompasses the dispute at issue. *Id.*

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 7
Cause No. 2:15-cv-00543-RSL 7

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

**B.     The FAA Governs the Arbitration Agreement**

As an initial matter, there can be no dispute that the FAA governs here because the Arbitration Agreement "evidences a transaction involving interstate commerce." *See* 9 U.S.C. §§ 1–2. The Supreme Court has held that the phrase "involving commerce" is the "functional equivalent of the more familiar term 'affecting commerce,'" which signals the broadest permissible exercise of Congress' Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995)).

BNSF owns and operates a railroad that serves as a vital conduit for interstate commerce. Dkt. # 201 at 3. Specific to this case, BNSF transported Bakken Crude oil across its Northern Rail Corridor to refineries at March Point from September 2012 through May 2021. Dkt. # 201 at 8; 216 at 15. These shipments traversed multiple states in moves of approximately 1,500 miles on average. Dkt. # 201 at 8. The final leg of the route, approximately 0.72 miles, crossed the Tribe's Reservation. *Id*. The Easement facilitated this traffic, including permitting trains over the Swinomish Reservation. In sum, the Arbitration Agreement affects interstate commerce. The FAA thus governs.

**C.     The Parties Agreed to Arbitrate "Gateway" Arbitrability Issues.**

When an agreement is governed by the FAA, courts are required to compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. §4. And when the parties "clearly and unmistakably" demonstrate an intent to arbitrate decisions on arbitrability, the court must refer the matter to the arbitrator. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Henry Schein, Inc. v. Archer & White Sales, Inc.*,139 S. Ct. 524, 529 (2019) ("[W]hen "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."). Indeed, even if the court believes that the argument that the arbitration agreement

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 8
Cause No. 2:15-cv-00543-RSL 8

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

applies to the dispute is "wholly groundless," the FAA mandates that the question of arbitrability be decided by the arbitrator in such instances. *Henry Schein, Inc.*, 139 S. Ct. at 529; *see also Munning*, 2020 WL 1528477, at *1 (W.D. Wash. Mar. 31, 2020) (Lasnik, J.) (compelling arbitration "even where there is no colorable claim that [the party] agreed to do so.").

Here, the parties clearly agreed to arbitrate questions of arbitrability and scope by incorporating the AAA Rules into the Arbitration Agreement. Specifically, the Easement provides that any disputed rental adjustment "shall be determined in accordance with the Commercial Arbitration Rules of the American Arbitration Association and the provisions set forth herein by binding arbitration." Easement, § 3(b)(iii). One of those AAA Rules is that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061 (9th Cir. 2018) (quoting American Arbitration Association Commercial Arbitration Rule 7).

The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Roszak v. U.S. Food Service Inc.*, 628 Fed. Appx. 513, 514 (9th Cir. 2016) ("[T]he parties incorporated the [AAA R]ules into their agreement and therefore agreed to arbitrate the question of arbitrability."). Indeed, "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc., v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).

Decisions from this Court comport. For example, in *Reynolds v. Safeway, Inc*., C22-0197TL, 2023 WL 2560853, (W.D. Wash. Mar. 17, 2023), the court examined an arbitration

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 9
Cause No. 2:15-cv-00543-RSL 9

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

agreement that exempted "cases involving claims for public injunctive relief." *Id.* at *4. The arbitration agreement also stated that any arbitration would be in accordance with the "JAMS Streamlined Arbitration Rules and Procedures." *Id.* The plaintiff argued that, even though the arbitration agreement incorporated rules of arbitration, the question of arbitrability should be resolved by the court because plaintiff's claim was for public injunctive relief. *Id.* The court rejected this argument: "whether [plaintiff]'s claim for an injunction . . . is an excluded request for 'public injunctive relief' and whether his remaining claims are within the scope of the parties' agreement to arbitrate are exactly the types of questions that the Parties have delegated to the arbitrator to decide." *Id.*; *see also A.C. by & through Carbajal v. Nintendo of Am. Inc.*, C20-1694 TSZ, 2021 WL 1840835, at *2 (W.D. Wash. Apr. 29, 2021) (noting the AAA Rules "state that an arbitrator has the power to determine the scope of the arbitration agreement and the arbitrability of any claim or counterclaim."); *see also Tempe Hosp. Ventures, LLC v. Highgate Hotels, L.P.*, CV-22-00647-PHX-SPL, 2022 WL 3098995, at *3 (D. Ariz. Aug. 4, 2022) (concluding that contract that incorporated AAA Rules had delegated question of arbitrability despite potential exceptions in the contract).

Here, too, the incorporation of the AAA Rules is clear and unmistakable evidence that the parties agreed to delegate the questions of arbitrability and scope to the arbitrator. Accordingly, any objection by the Tribe on these grounds should be heard first by Judge Leighton.

**D.      The Federal Arbitration Act Requires Arbitration of this Matter.**

Even if this Court determines that it, rather than the arbitrator, should decide these gateway questions, the Court should nonetheless compel arbitration. As noted above, in considering a motion to compel arbitration a court is limited under the FAA to two determinations: (1) whether there is a valid written agreement to arbitrate and (2) whether the

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 10
Cause No. 2:15-cv-00543-RSL 10

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

agreement encompasses the dispute. *Chiron Corp.*, 207 F.3d at 1130. Both requirements are satisfied here.

### 1. The parties entered into a valid agreement to arbitrate.

There can be no dispute that the parties entered into a valid agreement to arbitrate. Indeed, on May 31, 2022, the Tribe invoked the Arbitration Agreement regarding the value of the Easement area and rental adjustment amount, and the parties have since selected Judge Leighton to arbitrate that dispute. Lawrence Decl., Ex. A. Although the Tribe may raise other arguments in opposition to this motion, the Tribe cannot argue that the Arbitration Agreement is invalid.

### 2. The Tribe's claims fall within the scope of the Arbitration Agreement.

The Arbitration Agreement also encompasses the Tribe's claims for compensation for BNSF's increased use of the Easement. Under the FAA, courts must compel arbitration "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis added) (citation omitted). In conducting this analysis, "[t]he standard for demonstrating arbitrability is not high" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). Indeed, the Court need not conclude that this is the only, or even the clearest, interpretation of the arbitration agreement. *See CixxFive Concepts, LLC v. Getty Images, Inc.*, C19-386-RSL, 2020 WL 3798926, at *4 (W.D. Wash. July 7, 2020) ("[E]ven if plaintiff had convincingly identified some ambiguity as to the arbitrability of its claims, controlling federal law instructs that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]'") (quoting *Chiron Corp.*, 207 F.3d at 1131)).

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 11
Cause No. 2:15-cv-00543-RSL 11

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

In determining whether a dispute falls within the scope of an arbitration clause, courts look at the content of the arbitration agreement and "the factual allegations raised in the complaint." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023). To require arbitration, the allegations need only "touch matters" covered by the contract containing the arbitration clause. *See Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13, 105 S. Ct. 3346 (noting that "insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, [we] properly resolve[] any doubts in favor of arbitrability"); *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987*), abrogated on other grounds by*, *Rodriguez-Depena v. Parts Authority, Inc.*, 877 F.3d 122 (2d Cir. 2017) (holding that factual allegations need only touch matters covered by agreements).

Here, the Arbitration Agreement entitles the Tribe to an adjustment in compensation for traffic in excess of the Easement limitations. Specifically, the parties "understood and agreed that if the number of crossings or the number of cars is increased, the annual rental will be subject to adjustment in accordance with paragraph 3(b)(iii) of this Right-of-Way Easement." Easement § 7(c). Under Section 3(b)(iii), "[i]f the parties are unable to agree upon a rental adjustment, such adjustment shall be determined in accordance with the [AAA Rules] and the provisions set forth herein by binding arbitration." *Id*. § 3(b)(iii).

The Tribe's claims not only "touch matters" covered by these provisions, they fall squarely within its scope. The Tribe has two claims for damages—breach of the Easement and trespass—both of which boil down to one central allegation: BNSF's increased traffic over the Easement without consent exceeded the Easement traffic limitations and entitle the Tribe to increased compensation. If the parties do not agree on such increased compensation, the Easement provides for arbitration. The Tribe cannot avoid arbitration simply by refusing to

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 12
Cause No. 2:15-cv-00543-RSL 12

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

consent to such increased traffic and then failing to engage on compensation. If that were true, the Tribe could always have avoided arbitration by refusing to consent and engage.

It is also no answer that the Tribe has raised a claim not only for breach of contract but also trespass. As noted above, to require arbitration the Tribe's factual allegations need only "touch matters" covered by the Arbitration Agreement. That is regardless of the presence of tort or non-contract based claims. For example, in *Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1459, 1461 (4th Cir. 1992), the plaintiffs, a group of authors, sued their publisher and other defendants despite an agreement to arbitrate. The plaintiffs asserted sixteen causes of action, including fraud, conspiracy, conversion, and tortious interference with contractual rights. *Id.* The court concluded that the "gravamen" of the complaint and "heart of the dispute" was breach of contract, and thus held that all of plaintiffs' claims were arbitrable (except for certain claims expressly exempted). *Id.*

Similarly, in *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, all of the plaintiffs' various claims—e.g., civil conspiracy, unfair trade practices, conversion, libel—were found to be arbitrable despite the fact that some were tort-based. 863 F.2d 315, 317, 319 (4th Cir. 1992) (noting that the arbitration clause "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id*. at 321 (quoted and cited in *Simula, Inc.*, 175 F.3d at 720 (9th Cir. 1999)).

Likewise, here the "gravamen" of the Tribe's damages claims is that BNSF violated the Easement limitations. *See, e.g.*, Dkt. # 216 at 11 ("It is undisputed that BNSF's intentional crossings of the Reservation exceeded the conditions and restrictions imposed by the Easement Agreement. It has, therefore, trespassed on Indian lands and is liable for the damages caused by its overburdening of the easement."). The Arbitration Agreement embraces such a claim,

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 13
Cause No. 2:15-cv-00543-RSL 13

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

notwithstanding the label the Tribe has attributed to it. *See Summer Rain,* 964 F.2d at 1459; *J.J. Ryan*, 863 F.2d at 321.

### 3. The Easement did not enumerate trespass damages as a claim that could be sought outside of arbitration

Finally, BNSF expects the Tribe to raise, as it did in response to BNSF's motion to dismiss, that the Easement allows the Tribe to seek relief in court in two specific circumstances. But under the principle of *expressio unius est exclusion alterius*, these provisions actually underscore that questions regarding compensation for increased traffic must be arbitrated. This rule of contract interpretation states that "to express or include one thing implies the exclusion of the other, or of the alternative." *Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*, 39 F. Supp.3d 1103, 1107 (C.D. Cal. 2014) (quoting Black's Law Dictionary (9th ed. 2009)). Here, there are two limited instances under the Easement in which the Tribe may seek relief in court. First, in the event BNSF fails to surrender and vacate the Easement area, the Easement contemplates the Tribe instituting a "proceeding . . . to evict [BNSF] and/or seek damages for [BNSF's] failure to surrender." Easement, § 4. Second, in the event BNSF fails to make rental payments, the Easement authorizes the Tribe to seek "injunctive relief to compel such payments." *Id*. Identifying two specific instances in which relief may be sought outside of arbitration underscores that all other claims—including any claim for adjustment to compensation—must be resolved via binding arbitration.

## VI.   CONCLUSION

The Easement requires arbitration of claims regarding adjustments to compensation for increased traffic across the Easement. The Arbitration Agreement applies to both the Tribe's breach and trespass claims as the breach of the Easement by overburdening is a prerequisite to the trespass claim. Indeed, without the breach of the Easement limitation, there would be no

BNSF RAILWAY COMPANY'S MOTION TO
COMPLEL ARBITRATION - 14
Cause No. 2:15-cv-00543-RSL 14

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

trespass. The Court, to the extent it reaches the question, should conclude that the Tribe's claims for damages are subject to binding arbitration. At a minimum, the Court should honor the parties' incorporation of the AAA Rules and refer the matter to Judge Leighton to hear any objections from the Tribe on gateway issues.

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 15
Cause No. 2:15-cv-00543-RSL 15

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

I certify that this memorandum contains 4,362 words, in compliance with the Local Civil Rules.

DATED this 12th day of May, 2023.

PACIFICA LAW GROUP LLP

By: /s/ Paul J. Lawrence
    Paul J. Lawrence, WSBA #13557
    Kai A. Smith, WSBA #54749
    Meha Goyal, WSBA #56058
    *Attorneys for Defendant BNSF Railway*

BNSF RAILWAY COMPANY'S MOTION TO
COMPEL ARBITRATION - 16
Cause No. 2:15-cv-00543-RSL 16

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750