HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian Tribe,<br><br>                                    Plaintiff,<br><br>        v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>                                    Defendant. | No. 2:15-cv-00543-RSL<br><br>BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR: APRIL 26, 2024<br><br>ORAL ARGUMENT REQUESTED |

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF THE CASE................................................................................3

III.    ARGUMENT ......................................................................................................6

        A.      The Tribe Failed To Carry Its Burden To Properly Apportion
                Disgorgement To BNSF's Trespass..................................................... 7

                1.      A plaintiff may disgorge only profits attributable to the
                        underlying wrong. ...................................................................... 7

                2.      The Tribe failed to carry its burden to prove damages
                        attributable to the underlying wrong........................................ 13

        B.      The Tribe Failed To Carry Its Burden To Properly Measure
                BNSF's Costs............................................................................... 18

        C.      The Tribe's Supplemental Enrichment Measurements Are
                Erroneous. ................................................................................... 21

IV.     CONCLUSION...................................................................................................23

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## <u>TABLE OF AUTHORITIES</u>

### **Federal Cases**

*Allstate Ins. Co. v. Receivable Fin. Co.*,
    501 F.3d 398 (5th Cir. 2007) .................................................................... 8, 10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................... 6

*Bad River Band of Lake Superior Tribe of Chippewa Indians v. Enbridge Energy Co.*,
    626 F. Supp. 3d 1030 (W.D. Wis. 2022) ...................................................... 6

*Bad River Band of Lake Superior Tribe of Chippewa Indians v. Enbridge Energy Co.*,
    No. 19-cv-602-wmc, 2022 WL 6105482 (W.D. Wis. Oct. 7, 2022) .......... 2, 3, 4, 12

*Bad River Band of Lake Superior Tribe of Chippewa Indians v. Enbridge Energy Co.*,
    No. 19-cv-602-wmc, 2023 WL 4043961 (W.D. Wisc. June 16, 2023) ...... 11, 12, 19

*Bald v. Wells Fargo Bank, N.A.*,
    No. 21-16680, 2022 WL 17583052 (9th Cir. Dec. 12, 2022)...................... 6, 7

*Beck v. N. Nat. Gas Co.*,
    170 F.3d 1018 (10th Cir. 1999) .................................................................. 11

*BMW of North America, Inc. v. Gore*,
    517 U.S. 559 (1996)..................................................................................... 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)....................................................................................... 6

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Pathology Lab'ys of Ark., P.A.*,
    71 F.3d 1251 (7th Cir. 1995) ........................................................................ 6

*Davilla v. Enable Midstream Partners, L.P.*,
    No. CIV-15-1262-M, 2016 WL 6952356 (W.D. Okla. Nov. 28, 2016)...... 12

*Faria v. M/V Louise V*,
    945 F.2d 1142 (9th Cir. 1991) .................................................................... 10

*Garretson v. Clark*,
    111 U.S. 120 (1884)............................................................................... 10, 14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93 (2016)........................................................................................ 8

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Jong v. JLE-04 Parker, L.L.C. (In re de Jong)*,
    588 B.R. 879 (B.A.P. 9th Cir. 2018)........................................................................ 15

*King Jewelry, Inc. v. Fed. Express Corp.*,
    316 F.3d 961 (9th Cir. 2003) ..................................................................................... 7

*Liu v. SEC*,
    140 S. Ct. 1936 (2020).................................................................................... 6, 9, 18

*Livingston v. Woodworth*,
    56 U.S. (15 How.) 546 (1853) .................................................................................. 7

*Moser v. Las Vegas Metro. Police Dep't*,
    984 F.3d 900 (9th Cir. 2021) ..................................................................................... 6

*Mowry v. Whitney*,
    81 U.S. (14 Wall.) 620 (1871) .................................................................................. 9

*Pizani v. M/V Cotton Blossom*,
    669 F.2d 1084 (5th Cir. 1982) ................................................................................ 10

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    140 S. Ct. 1492 (2020)............................................................................................... 9

*Rubber Co. v. Goodyear*,
    76 U.S. (9 Wall.) 788 (1869) ................................................................................. 20

*SEC v. First City Fin. Corp.*,
    890 F.2d 1215 (D.C. Cir. 1989)................................................................................ 8

*Seymour v. McCormick*,
    57 U.S. (16 How.) 480 (1853) ................................................................. 8, 9, 10, 15

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    309 U.S. 390 (1940).................................................................................................. 7

*Siebel v. Scott*,
    725 F.2d 995 (5th Cir. 1984) .................................................................................. 21

*State Farm Mutual Automobile Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)................................................................................................ 17

*United States v. Consol. Edison Co. of N.Y., Inc.*,
    452 F. Supp. 638 (S.D.N.Y. 1977).......................................................................... 23

*United States v. Milner*,
    583 F.3d 1174 (9th Cir. 2009) ................................................................................. 6

BNSF'S MOTION FOR SUMMARY JUDGMENT- iii
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**State Cases**

*Edwards v. Lee's Adm'r*,
    96 S.W.2d 1028 (Ky. 1936) ................................................................. 2, 11

*Olwell v. Nye & Nissen Co.*,
    26 Wash. 2d 282 (1946) ....................................................................... 13

**Other Authorities**

Restatement (Second) of Torts § 929 ............................................................. 6

Restatement (Third) of Restitution & Unjust Enrichment § 51(4) (2011) ............................ passim

Restatement (Third) of Restitution § 40 ......................................................... 13, 17

Restatement (Third) of Restitution § 53(1) ......................................................... 21

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I.   INTRODUCTION

The sole unresolved question in this case is the remedy due to the Swinomish Indian Tribal Community as a result of BNSF Railway Co. "willfully, consciously, and knowingly exceed[ing] the limitations on its right of access" to an approximately one mile long stretch of tribal land. Dkt. No. 216 at 15. The Tribe—which claims no monetary damages—seeks the equitable remedy of disgorgement. The parties are at odds on a discrete question about the amount of disgorgement to which Tribe is entitled: Should the Court award disgorgement of all of BNSF's profits for the entirety of the 1,500-mile route (of which the trespassing portion accounts for a small fraction), as the Tribe argues, or should the Court limit an award of disgorgement to reflect only the profits attributable to the portion of the route over which BNSF unlawfully trespassed, as BNSF argues?

Federal common law, which both parties agree must apply, supplies the answer: Although disgorgement is an equitable remedy, the Court is limited to awarding "the net profit attributable to the underlying wrong." Restatement (Third) of Restitution & Unjust Enrichment § 51(4) (2011). This limitation furthers "[t]he object of restitution," which "is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty." *Id.* And it avoids the inequitable result of permitting plaintiffs to disgorge more than their property fairly contributed to those profits.

Courts have thus limited disgorgement awards to reflect only the portion of a broader enterprise that is trespassing. So, for example, "where 15 percent of defendant's underground storage capacity is situated on claimant's property, 15 percent of defendant's profits from underground storage are attributable to defendant's trespass." *Id.* § 51, cmt. e. Or, where "30 percent of [a] cave" exploited as a tourist attraction "lies under the adjoining land of [a third party]," the operator "is held liable [to the third party] for 30 percent of the net profits realized

BNSF'S MOTION FOR SUMMARY JUDGMENT- 1
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

from exhibiting the cave." *Id.* § 51, cmt. f, ill. 13 (describing *Edwards v. Lee's Adm'r*, 96 S.W.2d 1028 (Ky. 1936)). This principle applies even where the trespass is part of a continuous transportation of goods, as another federal district court recently explained in a case involving a pipeline trespass over tribal land, holding that "any award beyond a proportional share" would produce an unreasonable recovery. *See* Opinion and Order, *Bad River Band of Lake Superior Tribe of Chippewa Indians v. Enbridge Energy Co.*, No. 19-cv-602-wmc, 2022 WL 6105482, at *1 (W.D. Wis. Oct. 7, 2022) ("*Bad River* Order"), *appeal filed*, No. 23-2467 (7th Cir.).

The Tribe's request for damages—which seeks the entirety of BNSF's profits for the 1,500 mile route and offers no measure appropriately apportioned to the actual trespass—violates this rule of equity. Having put all its eggs into a basket that the Court cannot award, the Tribe has failed to carry its "burden of producing evidence permitting at least a reasonable approximation of the amount *of the wrongful gain*." Restatement (Third) of Restitution § 51(5)(d) (emphasis added). The Court should therefore enter summary judgment in BNSF's favor. At a minimum, the Tribe's damage theory should be dismissed and the Court should limit any measure of disgorgement to reflect only the net profits attributable to the portion of the route that BNSF trespassed, rather than the entirety of BNSF's profits over the 1,500 mile route.

The Tribe's request for damages, moreover, is deficient on two other grounds. First, the Tribe fails to account adequately for all of the costs BNSF must incur in connection with the profits the Tribe seeks—thus inflating the Tribe's request for disgorgement and penalizing BNSF by requiring it to pay to the Tribe costs it has already incurred. And second, the Tribe improperly seeks an additional disgorgement of supplemental enrichment from BNSF's profits calculated at a rate equal to BNSF's cost of capital—which does not reflect BNSF's actual use of the relevant

BNSF'S MOTION FOR SUMMARY JUDGMENT- 2
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

proceeds. Accordingly, the Court should rule that the Tribe's disgorgement award must be based on an appropriate measure of net profit and supplemental enrichment.

## II.        STATEMENT OF THE CASE

The Tribe filed this action in April 2015. Dkt. No. 1 at 14. The Tribe alleged that BNSF breached a Right-of-Way Easement Agreement and trespassed over a 0.72 mile long portion of the Tribe's reservation, as part of a roughly 1,500 mile rail route delivering crude oil from Fryburg and Epping in North Dakota to March Point, Washington. *See* Dkt. No. 124 at 3–6. The refineries on March Point that received the crude oil are not on the Easement.

After a bench trial, this Court ruled on March 27, 2023, that "BNSF willfully, consciously, and knowingly exceeded the limitations on its right of access from September 2012 to May 2021," and concluded that "the Tribe is entitled to equitable remedies, including the recovery from BNSF of profits made by the unlawful entry." Dkt. No. 216 at 15. The Court specifically noted the "extent to which equity supports disgorgement will be determined in the next phase of trial." *Id.* (While BNSF preserves its right to later appeal the Court's ruling on the issue of liability, it accepts that ruling for the purposes of this phase of the proceedings.) The trial on the issue of remedy is set for June 3, 2024.

In connection with the remedy phase of this litigation, each party submitted an expert report setting out their view of the appropriate measure of disgorgement. The Tribe submitted the opening and rebuttal reports of Mr. Daniel L. Fapp and BNSF submitted the opening and rebuttal reports of Mr. Michael Baranowski. *See* Declaration of Paul J. Lawrence ("Lawrence Decl."), Ex. A (Fapp Opening); Ex. B (Baranowski Opening); Ex. C (Fapp Rebuttal); Ex. D (Baranowski Rebuttal). Mr. Fapp's and Mr. Baranowski's views of the appropriate measure of damages varied substantially in three key respects.

BNSF'S MOTION FOR SUMMARY JUDGMENT- 3
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*First*, and most significantly, Mr. Fapp measured the total "profits that [BNSF] earned for the transportation of [oil] trains from origins in the Bakken oil fields of North Dakota to the Tesoro Corporation refinery at Fidalgo, WA." Fapp Opening at 1–2. Mr. Fapp provided no opinion on the portion of these total profits that is attributable to BNSF's trespass. Mr. Baranowski, in contrast, provided an opinion on "the portion of the profits earned by BNSF on the unit train crude oil shipments that are reasonably attributable to the Easement." Baranowski Opening at 2. Mr. Baranowski offered three methodologies for valuing the portion of the profits attributable to the Easement based on a calculation of profits per mile and on allocation methods used by the Surface Transportation Board ("STB"), including an average total cost approach and an approach based on 100-mile blocks. *See* Baranowski Opening at 3. To further support his calculation of the profits attributable to the Easement, Mr. Baranowski also calculated the hypothetical maximum contract rent payable under the Easement assuming a total diminution in the property's value as a proxy for a reasonable disgorgement amount. *See id.* He also looked at the relative profit BNSF is making on its alternative route used to deliver Bakken crude to Marathon after the Ninth Circuit decision in this case—rail shipment to Portland and then barge to destinations such as Fidalgo. And he addressed other movements that use the same rail facilities as the movement to Fidalgo and likewise generate a profit, thereby demonstrating the value of BNSF's network as a whole. Both of these analyses provide context that BNSF's profits on Bakken crude delivery to Fidalgo cannot be 100% attributed to BNSF's trespass. *See* Baranowski Opening at 17–21; Baranowski Rebuttal at 17–21.

Mr. Fapp made no effort to determine the profits specifically attributable to the trespass—he instead stated only that he "was informed by Counsel for the Swinomish Tribe that proration of BNSF's profits from its transport of traffic over the Easement is not called for under controlling

BNSF'S MOTION FOR SUMMARY JUDGMENT- 4
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

legal precedent." Fapp Rebuttal at 36. Mr. Fapp confirmed in his deposition that he did not make any estimate of the portion of BNSF's total profits attributable to the trespass, although he admitted that he could have done so if asked. *See* Lawrence Decl., Ex. E, (Fapp Dep. Tr.) 124:7-11, 137:15-24.

*Second*, Mr. Fapp and Mr. Baranowski took divergent views of how to measure BNSF's profits. Mr. Baranowski examined the total costs (variable and fixed costs plus interest expense and income taxes) allocated to each shipment passing over the Easement, to measure "BNSF's profits attributable" to those shipments. Baranowski Opening at 7-9. Mr. Baranowski noted that simple "contribution above variable costs is not equivalent to profit." *Id.* at 7. Mr. Fapp, to the contrary, deducted only the variable costs. Fapp Opening at 15–16. Mr. Fapp admitted in his deposition that contribution is not the equivalent to profit as used in a normal accounting sense. Fapp Dep. Tr. 43:1-3.

*Third*, Mr. Fapp and Mr. Baranowski took different approaches to measuring the additional disgorgement of profits, or "supplemental enrichment," earned from BNSF's use of profits attributable to its trespass. Mr. Fapp offered three possible measures: (1) 5%, a "modest" measure; (2) 10%, nearing returns from the S&P 500; and (3) 9.85% to 17.06%, representing BNSF's pre-tax cost of capital. Fapp Opening at 26–27. The pre-tax cost of capital measure, Mr. Fapp contended, approximates "the rate of return that a railroad would expect to generate" from its investments. Fapp Rebuttal at 32, 37. All three represent a hypothetical return on BNSF's use of the trespass profits. Mr. Baranowski offered two different measures: (1) the one-year treasury rate, representing "the federal court rate of interest on judgments"; and (2) "the actual interest rate BNSF earned on its cash reserve deposits," which best reflects BNSF's actual historical use of the relevant proceeds. Baranowski Rebuttal at 27–28.

BNSF'S MOTION FOR SUMMARY JUDGMENT- 5
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

### III.    ARGUMENT

2      Summary judgment must be granted if there is "no genuine issue as to any material fact"

3  and "the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby,*

4  *Inc.*, 477 U.S. 242, 247 (1986). In reviewing a motion for summary judgment, the court should

5  view "the facts and inferences drawn from the facts in the nonmovant's favor." *Moser v. Las Vegas*

6  *Metro. Police Dep't*, 984 F.3d 900, 904 (9th Cir. 2021). But, where the plaintiff bears the burden

7  of proof at trial, the moving defendant "need only show an absence of evidence to support an

8  essential element of the non-moving party's case to move the burden to the non-moving party to

9  show a genuine issue for trial." *Bald v. Wells Fargo Bank, N.A.*, No. 21-16680, 2022 WL

10 17583052, at *2 (9th Cir. Dec. 12, 2022) (unpublished mem. disp.) (citing *Celotex Corp. v. Catrett*,

11 477 U.S. 317, 324–25 (1986)).

12     "Federal common law governs an action for trespass on Indian lands." *United States v.*

13 *Milner*, 583 F.3d 1174, 1182 (9th Cir. 2009). "That law generally comports with the Restatement

14 of Torts," *id.*, which in turn looks to the Restatement of Restitution to determine the appropriate

15 "measure of recovery" for disgorgement, Restatement (Second) of Torts § 929, cmt. c. *See Bad*

16 *River Band of Lake Superior Tribe of Chippewa Indians v. Enbridge Energy Co.*, 626 F. Supp. 3d

17 1030, 1049 (W.D. Wis. 2022) (noting that federal common law "'tracks the consensus of the

18 states,' which is summarized in the Restatement of Restitution." (quoting *Cent. States, Se. & Sw.*

19 *Areas Health & Welfare Fund v. Pathology Lab'ys of Ark., P.A.*, 71 F.3d 1251, 1254 (7th Cir.

20 1995))), *appeal filed*, No. 23-2467 (7th Cir.). To that end, the U.S. Supreme Court has recently

21 relied on the Restatement (Third) of Restitution to determine the contours of the equitable remedy

22 of disgorgement. *See Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020).

BNSF'S MOTION FOR SUMMARY JUDGMENT- 6
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

To prove disgorgement here, the Tribe "has the burden of producing evidence permitting at least a reasonable approximation of the amount *of the wrongful gain*." Restatement (Third) of Restitution § 51(5)(d) (emphasis added). Thus, if the Tribe fails to produce evidence that proves such an approximation, summary judgment should be granted in BNSF's favor. *See, e.g.*, *Bald*, 2022 WL 17583052, at *1–3 (affirming summary judgment where plaintiffs "failed to account" for an important component of damages that complied with the proper legal standard no matter "what other components of damages plaintiffs might also have alleged" (quotation marks and citation omitted)). It is likewise axiomatic that when a plaintiff fails to carry the burden with respect to proving a portion of his damages, partial summary judgment may be entered appropriately limiting the damages available. *See, e.g.*, *King Jewelry, Inc. v. Fed. Express Corp.*, 316 F.3d 961, 966 (9th Cir. 2003) (affirming grant of partial summary judgment limiting damages to $500). Furthermore, the relevant facts surrounding the trespass have all been resolved at this point. The Court has already concluded that BNSF's trespass was willful, and all that remains is to apply the principles governing disgorgement. No further factual development is needed at this stage to decide the threshold question of whether some measure of apportionment is necessary, and therefore summary judgment is appropriate.

A.     **The Tribe Failed To Carry Its Burden To Properly Apportion Disgorgement To BNSF's Trespass.**

1.     **A plaintiff may disgorge only profits attributable to the underlying wrong.**

Disgorgement is limited only to "the net profit attributable to the underlying wrong." Restatement (Third) of Restitution § 51(4). "[I]njured complainants" seeking the equitable remedy of disgorgement thus may "claim 'that which, *ex aequo et bono*, is theirs, and nothing beyond this.'" *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940) (quoting *Livingston*

BNSF'S MOTION FOR SUMMARY JUDGMENT- 7
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*v. Woodworth*, 56 U.S. (15 How.) 546, 560 (1853)); *see also* Black's Law Dictionary 557 (6th ed. 1990) (defining *ex aequo et bono* as "according to what is just and good"). "The object of restitution in such cases," and the reason for limiting disgorgement to only profits attributable to the wrong, "is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty." Restatement (Third) of Restitution § 51(4); *see also Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) ("Because disgorgement is meant to be remedial and not punitive, it is limited to 'property causally related to the wrongdoing.'" (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989))).

The Supreme Court has long recognized the harmful results that would flow from awarding disgorgement in an amount that exceeds the plaintiff's or their property's contribution to the defendant's profits. As the Court explained in an 1854 patent case addressing the equitable remedy of disgorgement:

> If the measure of damages be the same whether a patent be for an entire machine or for some improvement in some part of it, then it follows that each one who has patented an improvement in any portion of a steam engine or other complex machines may recover the whole profits arising from the skill, labor, material, and capital employed in making the whole machine, and the unfortunate mechanic may be compelled to pay treble his whole profits to each of a dozen or more several inventors of some small improvement in the engine he has built. By this doctrine even the smallest part is made equal to the whole, and "actual damages" to the plaintiff may be converted into an unlimited series of penalties on the defendant.

*Seymour v. McCormick*, 57 U.S. (16 How.) 480, 490 (1853).[1]

Patent cases are instructive for the question here because, as the Supreme Court has recognized, patent cases historically relied on general principles of equity jurisdiction, thereby

---

[1] The Court's reference to treble damages refers to a distinctive feature of patent law: Unlike in common-law disgorgement cases, the statutes governing patent damages have additionally allowed for treble damages awards in certain circumstances. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 97–100 (2016) (summarizing the statutory history of enhanced damages in patent law).

BNSF'S MOTION FOR SUMMARY JUDGMENT- 8
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

leading to "'transsubstantive guidance on broad and fundamental' equitable principles." *Liu*, 140 S. Ct. at 1944 (quoting *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1496 (2020)). Indeed, the Supreme Court's recent decision in *Liu*, which addressed the scope of the disgorgement remedy in the securities context, relied on early patent cases for the proposition that "courts limited awards to the net profits from wrongdoing." *See id.* at 1945. Specifically, the Court in *Liu* noted that *Seymour* (quoted above) "reject[ed] a blanket rule that infringing one component of a machine warranted a remedy measured by the full amounts of the profits earned from the machine." *Id.* (citing *Seymour*, 57 U.S. at 490). Similarly, *Liu* observed that *Mowry v. Whitney*, an 1871 patent case, had "vacat[ed] an accounting that exceeded the profits from infringement alone." *Id.* (citing *Mowry v. Whitney*, 81 U.S. (14 Wall.) 620, 649 (1871)); *see Mowry*, 81 U.S. at 649 (observing the defendant was "held liable far above" "the additional advantage the defendant derived" from the infringement). *Liu* thereby confirmed that these cases reflect fundamental and persistent features of the federal common law of disgorgement.

These rules apply just as clearly in the context of a trespass on Native land, which is governed by federal common law and involves the same remedy of disgorgement. Just as patent cases like *Seymour* involved one infringing component of a multi-component product, where each component is necessary and adds value to the complete product, this case involves one trespassing component of an integrated railroad network, where "each mile of BNSF's system used in providing service contributes to the generation of any profits earned." Baranowski Opening at 10–11. For a railroad network, each mile of track upon which a train travels and the crew works, each switching station, each train dispatcher, and so on, all contribute to the value of a route. And, just as it would make little sense to award "the whole profits arising from the skill, labor, material, and capital employed in making the whole machine" to the "inventors of some small improvement" in

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the invention, *Seymour*, 57 U.S. at 490, so, too, it would make little sense to award the entire profits associated with a 1,500-mile railroad route to plaintiffs seeking to recover for a 0.7-mile trespass. To do so, as in the patent cases, could effectively generate an "unlimited series of penalties on the defendant." *Id.* at 491.

To avoid subjecting a defendant to this risk of an unlimited series of damage awards, a plaintiff bears the burden to prove what is referred to as *apportionment*, that is, the plaintiff bears the burden of "distinguish[ing] between that which has been legally and illegally obtained." *Receivable Fin.*, 501 F.3d at 413; *see* Restatement (Third) of Restitution § 51, cmt. e ("[T]he application of the disgorgement remedy turns on problems of *attribution*" between the portion of the defendant's profits "attributable to the underlying wrong to the claimant" and the portion attributable to the "defendant's legitimate activities") (emphasis in original). Or, as the Supreme Court put it over a century ago in another patent case: The plaintiff "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented [*i.e.* unlawful] feature and the unpatented [*i.e.* lawful] features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). When faced with a case where apportionment is required, courts have held that a plaintiff fails to carry its burden when the plaintiff's "sole proof of the amount of damages" is "a lump sum estimate." *Faria v. M/V Louise V*, 945 F.2d 1142, 1143–44 (9th Cir. 1991) (citing *Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1086–87 (5th Cir. 1982) (addressing the apportionment of an indemnity claim)); *see generally Garretson*, 111 U.S. at 121 (affirming the award of nominal damages where the plaintiff "produced no evidence to apportion the profits or damages between the improvement constituting the patented feature and the other features").

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The Restatement describes how apportionment can be done in cases like this, where the trespass represents an essential but limited portion of the total enterprise. The Restatement offers the following example: "[W]here 15 percent of defendant's underground storage capacity is situated on claimant's property, 15 percent of defendant's profits from underground storage are attributable to defendant's trespass." Restatement (Third) of Restitution § 51, cmt. e (citing *Beck v. N. Nat. Gas Co.*, 170 F.3d 1018 (10th Cir. 1999)). In fact, the Restatement states, the plaintiff would be entitled only to a proportional share of defendant's profits even where plaintiff's property is essential to the entire enterprise and the defendant would be "obliged to abandon the gas storage business" entirely without a license from the plaintiffs. *See id.* § 40, cmt. c, ill. 5. Nor is this the Restatement's only example, as another seminal case cited in the Restatement describes an analogous approach to apportionment: Where a defendant exploited a cave under his land as a tourist attraction, but about a third of the points of interest in the cave were located under the plaintiff's land, the court held that "one-third of the net profits received alone from the exhibition of the cave is a fair determination of the direct benefits accruing to the [defendant] from the use of the [plaintiff's] property." *Edwards*, 96 S.W.2d at 1033; *see* Restatement (Third) of Restitution § 51, cmt. f, ill. 13. This was so even though the evidence in that case "clearly indicate[d] that the trespasses were willful, and not innocent." *Edwards*, 96 S.W.2d at 1030; *see also* Restatement (Third) of Restitution § 51, cmt. f, ill. 13 (explaining this is the correct outcome where a trespasser is "aware" that "30 percent of the exhibited portion of the cave lies under the adjoining land" of the plaintiff).

This prorated approach suggested by the Restatement and the common law was applied in a more recent case involving a "conscious and willful trespass" over tribal land by a company operating a pipeline. *See Bad River Band of Lake Superior Tribe of Chippewa Indians v. Enbridge*

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Energy Co.*, No. 19-cv-602-wmc, 2023 WL 4043961, at *14 (W.D. Wisc. June 16, 2023) ("*Bad River* Order II"), *appeal filed*, No. 23-2467 (7th Cir. 2023).[2] In *Bad River*, the court held that the profit to be disgorged for the trespass "should be calculated using a pro-rata share of [defendant's] profits from the operation of the pipeline during the relevant time period," attributable to the trespassing parcel as "compared to the pipeline as a whole." *Bad River* Order, 2022 WL 6105482, at *1. Following the Restatement, the court concluded that the "Band ha[d] no reasonable claim to the profits that [the defendant] earned during the period of trespass by operation of the pipeline *as a whole*" because that would "be disproportional to the trespass that occurred *and* the Band's harm." *Id.* at *1 (emphases in original). "[A]ny award beyond a proportional share" would produce an unreasonable recovery. *Id.* The court thus limited the "testimony, evidence and cross-examination at trial" to evidence of "annual profits and the specific portion" of the land owned by the Band. *Id.* at *2. The court grounded these conclusions in the law governing the disgorgement remedy, as set forth in the Restatement, not in any facts specific to the conduct at issue in *Bad River* or in the equities of that particular case. *See id.* at *1 (explaining such an award "will reasonably compensate the Band for Enbridge's past, unauthorized use of its property and deprive Enbridge of the profits it obtained through its trespass" and citing Restatement (Third) on Restitution § 49 for the proposition that the "appropriate remedy for unjust enrichment is 'amount of profit wrongfully obtained'").[3]

---

[2] For this Court's convenience, the two *Bad River* orders are included as Exhibits I and J to the Lawrence Declaration.

[3] Indeed, another tribe in a similar situation sought *only* pro rata disgorgement and did not even argue for a greater measure of disgorgement. *Davilla v. Enable Midstream Partners, L.P.*, No. CIV-15-1262-M, 2016 WL 6952356, at *1, *3 (W.D. Okla. Nov. 28, 2016) (ordering "an accounting of defendants' profits from the operation of their pipeline and recovery of the pro-rata share of those profits that is attributable to the portion of the pipeline that has been located on their property"); *see also id.*, ECF No. 37 (May 3, 2016), at 18 ("Plaintiffs are not seeking to recover all of Defendants' profits from the use of the pipeline. Plaintiffs only seek a pro-rata recovery of the profits attributable to the portion of the pipeline located on the .73 acre expired easement. This will admittedly be a small fraction of Defendants' profits from that pipeline, which Plaintiffs believe extends for hundreds of miles.").

BNSF'S MOTION FOR SUMMARY JUDGMENT- 12
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

As an alternative to prorated approaches, the Restatement acknowledges that a plaintiff can satisfy its burden to prove apportionment with other evidence—for example, evidence of the fair market value of the services received or the costs avoided by engaging in the trespass as compared to other non-trespassing alternatives. *See* Restatement (Third) of Restitution § 40, reps. note c (measuring disgorgement by the fair market value of the services unlawfully received); *Olwell v. Nye & Nissen Co.*, 26 Wash. 2d 282 (1946) (measuring disgorgement by avoided costs). All of these approaches share a common, critical feature: they comport with the requirement that a plaintiff's evidence of disgorgement must prove the defendant's profits attributable to the unlawful activity and nothing more.

Governing law accordingly provides that the Tribe bears the burden to prove the damages attributable only to BNSF's wrongful conduct and nothing more. Or, put another way, the Restatement and governing case law establish that the Court should not award disgorgement of BNSF's profits for the entire route of which the trespass represents only a small portion.

### 2. The Tribe failed to carry its burden to prove damages attributable to the underlying wrong.

The Tribe seeks the entirety of BNSF's profits for a roughly 1,500 mile route—which the Tribe calculates to be $1.3 billion (including supplemental enrichment)—as damages for a trespass over a 0.7-mile Easement that caused no claimed harm. As the Tribe sees it, 100 percent of the profits from the 1,500 mile route are directly attributable to the Easement while the remaining 1,499-plus miles of the route contribute nothing whatsoever to the route's profits. This result defies governing law. Thus, the Tribe fails to meet its burden to "produc[e] evidence permitting at least a reasonable approximation of the amount *of the wrongful gain*" and no more. Restatement (Third) of Restitution § 51(5)(d) (emphasis added).

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The Tribe provides no "evidence tending to separate or apportion the defendant's profits" between the unlawful trespass and the lawful movement over the route to Fidalgo. *Garretson*, 111 U.S. at 121. Mr. Fapp explained that he calculated only BNSF's *total* profits from transporting crude oil over more than 1,500 miles of track on tens of thousands of railcars. *See* Fapp Opening at 11, 27. He accordingly calculated $436.2 million in contribution (his proxy for profits) generated for the full 1,500 mile journey from North Dakota, including over more than 1,499 miles of land not owned by the Tribe. The Tribe's expert, moreover, explained that his failure to provide any evidence of apportionment was on direction from counsel: Mr. Fapp stated he "was informed by Counsel for the Swinomish Tribe that proration of BNSF's profits from its transport of traffic over the Easement is not called for under controlling legal precedent in this proceeding." Fapp Rebuttal at 36. The authority discussed above, however, makes clear that apportionment is not merely called for—it is a requirement for a plaintiff to carry its burden to prove disgorgement.

It is no response that the Easement was essential to the 1,500-mile route. The same could be said of each and every mile of track on a continuous route; if any one mile were removed, the continuous journey would be incomplete. But it would be wrong to conclude that the value of each mile is thus equal to the value of the entire route, because this would result in a valuation of the route worth many hundreds of times its actual value. This sort of reasoning is particularly illogical here, where there is evidence in the record showing that the trespass is not, in fact, essential to the journey, as neither the origin of the shipments nor their destination is on the Easement, and BNSF has continued to earn profits transporting crude oil from North Dakota to the Pacific Northwest without crossing the Easement. *See* Baranowski Rebuttal at 14. As the Supreme Court warned over a century-and-a-half ago, "[b]y this doctrine even the smallest part is made equal to the whole, and

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

'actual damages' to the plaintiff may be converted into an unlimited series of penalties on the defendant." *Seymour*, 57 U.S. at 490–91.

This but-for reasoning has been rejected in several analogous cases. Just because the defendant in the Restatement's example would have been "obliged to abandon the gas storage business" if he could not use the plaintiff's fifteen percent of the storage capacity did not entitle the plaintiff to the entirety of the business's proceeds; rather, the plaintiff received only fifteen percent, commensurate with his contribution to the enterprise. Restatement (Third) of Restitution § 51, cmt. e. So, too, for the underground cave: even though the plaintiff's third of the cave was integral to the whole, the plaintiff was entitled only to a third of the profits—not the whole. *See supra* at 8–9.[4] And so, too, in *Bad River*, where the pipeline would be incomplete without the portion trespassing over tribal land, the plaintiff nonetheless was entitled only to the fraction of profits corresponding to the length of the trespass relative to the whole pipeline. *See supra* at 9–10. And, as described above, but-for reasoning has been rejected as an appropriate approach to disgorgement in patent cases. Cases permit an award of the entirety of a defendant's profits where the entirety of the enterprise is trespassing—such as where the defendant ran an entire dairy farm on the plaintiff's property, which the defendant refused to vacate. *See, e.g.*, *de Jong v. JLE-04 Parker, L.L.C.* (*In re de Jong*), 588 B.R. 879, 893 n.11 (B.A.P. 9th Cir. 2018) ("The Debtors' wrongful trespass affected and enabled their entire dairy business, not a mere component of a larger enterprise."), *aff'd*, 793 F. App'x 659 (9th Cir. 2020). This is plainly a different case. Where an entire dairy farm is trespassing, the profits of the entire dairy farm will be disgorged. Where

---

[4] That case further reinforced that profits unduly remote from the trespass should not be disgorged by refusing to award disgorgement of profits from a hotel the defendant operated near the mouth of the cave, even though there would be little reason to visit the hotel absent the attraction of the cave: "[T]he hotel profits are visibly and predominantly the product of factors other than the underground trespass, with the consequence that an award to [plaintiff] of a share of these profits would [be] confiscatory rather than restitutionary." Restatement (Third) of Restitution § 51, cmt. f, ill. 13.

BNSF'S MOTION FOR SUMMARY JUDGMENT- 15
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

only a one-mile section of a railway is trespassed upon, it would be improper to disgorge the profits of the entire route. Awarding the entirety of BNSF's profits would violate longstanding principles governing the disgorgement remedy.

The only evidence in the record of profits apportioned to the trespass—all of it provided by BNSF's expert—confirms that the Tribe's un-apportioned damages request does not comport with applicable law and would result in an improper penalty to BNSF. BNSF's expert offers several different approaches to estimating the amount of profits properly apportioned to the trespass, all of which result in proportionate and appropriate measures of damages in contrast to the Tribe's requested damages. First, Mr. Baranowski adopted the pro rata approach referenced by the Restatement and adopted in *Bad River*, calculating the entire profit from the crude oil shipments and dividing those profits, pro rata, to get the profits attributable to the specific portion of land owned by the Tribe. *See* Baranowski Rebuttal at 27. To support this estimate, Mr. Baranowski offered two alternative approaches to the proration consistent with the STB's approach to allocating revenue among carriers on a single route.[5] *See* Baranowski Opening at 12–17. Second, Mr. Baranowski looked at the hypothetical maximum rental value for the Easement—another method for estimating the "value of the use" of the trespass to BNSF. *Id.* at 17–21. These approaches share two essential features: for one thing, they attempt to estimate the profits attributable only to the Easement and not to the hundreds of miles of the route lawfully used, and for another, they all result in proportionate measures of damages significantly different from the Tribe's unapportioned demand.

---

[5] As Mr. Baranowski explains, "[a]lthough the STB developed [Average Total Cost] as a revenue allocation tool, it can also be used to allocate profit." Baranowski Opening at 12; *see id.* at 12 n.17 (explaining the details of this approach).

BNSF'S MOTION FOR SUMMARY JUDGMENT- 16
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Allowing the Tribe to seek the entirety of BNSF's profits for the route would violate important limits on disgorgement (and damages awards more generally). First, such an approach would contradict this Court's statement—quoting the Restatement—that: "Even with regards to a conscious wrongdoer, however, equitable remedies 'may be limited to avoid a liability for gains that are unduly remote . . . or disproportionate to the loss on which liability is based.'" Dkt. No. 216 at 12 (alteration in original) (quoting Restatement (Third) of Restitution § 40, cmt. b (2011)); *see also* Restatement (Third) of Restitution § 51, cmt. f ("a court may deny recovery of particular elements of profit on the ground of remoteness" where "the causal connection with wrongdoing is unduly attenuated"). Liability in this case is based on a one-mile trespass. Awarding disgorgement that includes profits attributable to portions of track over a thousand miles away from the trespass and encompassing profits from a route more than 1,500 times longer than the trespass would be both unduly remote and disproportionate. Mr. Fapp does not justify why an award of total profits—plus supplemental enrichment—would be proportional to the Tribe's loss.

Moreover, the Tribe's approach would improperly turn the disgorgement remedy into a penalty—which the Restatement advises courts to "avoid[,] so far as possible." *id.* § 51(4) ("The object of restitution in such cases is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty."). In *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, 425 (2003), the Supreme Court explained that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *See generally BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568–74 (1996). If such an award constitutes an unreasonable award of punitive damages, an award requesting an even greater ratio should be deemed punitive and thus beyond the scope of a proper disgorgement. Here, under Mr. Baranowski's calculation, the maximum annual rent owed to the Tribe for the

BNSF'S MOTION FOR SUMMARY JUDGMENT- 17
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

trespass—a proxy for compensatory damages—would amount to $7.3 million. The amounts sought by the Tribe are not merely greater than the single-digit ratio required by *Gore* (which would limit recovery to around $73 million, based on Mr. Baranowski's calculation) but in fact seek an award *more than a hundred* times larger than a compensatory amount. An award of the scale requested by the Tribe is more than would be permitted as a punitive award and thus violates the requirement that a disgorgement award cannot be punitive.

The Tribe's decision not to provide any evidence of disgorgement apportioned to BNSF's unlawful conduct calls for judgment in BNSF's favor. At a minimum, the Court should grant partial summary judgment holding that the damages available to the Tribe at trial are limited to the properly apportioned estimates provided by BNSF's expert.

### B.     The Tribe Failed To Carry Its Burden To Properly Measure BNSF's Costs.

The requirement that disgorgement be limited only to "the net profit attributable to the underlying wrong" also requires that all relevant costs be taken into account in measuring that net profit. Restatement (Third) of Restitution § 51(4). "A rule to the contrary that make[s] no allowance for the cost and expense of conducting [a] business would be inconsistent with the ordinary principles and practice of courts of chancery." *Liu*, 140 S. Ct. at 1950 (quotation marks and citation omitted). Failing to deduct all relevant costs would award the plaintiff more than reasonably attributable to the underlying wrong and would "result[] in a punitive sanction [against the defendant] that the law of restitution normally attempts to avoid." Restatement (Third) of Restitution § 51, cmt. h.

Relevant here, the Restatement does not draw a distinction between what are sometimes referred to as "fixed" or "variable" costs and instead requires deduction of any and all costs included in the "net profit" attributable to the trespass. The Restatement and case law provide

BNSF'S MOTION FOR SUMMARY JUDGMENT- 18
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

examples of which costs should be included in this calculation of "net profit." For example, in the illustration discussing the defendant's development of the cave, the Restatement explains that, in calculating net profit, the plaintiff must deduct costs including "the cost of building walkways and installing electric lights" as well as "wages and utilities," many of which are regarded as fixed costs. *Id.* § 51, cmt. h, ill. 19. Similarly, in *Bad River*, the court concluded that net profits would have to be offset by both income tax and depreciation of the underlying assets. *See Bad River* Order II, 2023 WL 4043961, at *16.

Instead, the Tribe's expert excludes *all* fixed costs on the ground that "one cannot say how much of the fixed costs is attributable to any given unit of output." Fapp Opening at 16. This explanation, however, cannot be reconciled with Mr. Fapp's own calculations, as illustrated by the fact that he excludes only the fixed portions—but not the variable portions—of costs (like crew and railway maintenance costs) that BNSF characterizes as partially variable and partially fixed. *Compare, e.g.*, Fapp Opening at 17 (considering only the variable portion of BNSF's crew cost)*, with, e.g.*, Baranowski Opening at 6 n.9 (explaining that "BNSF has determined that its cost for the crews that operate the trains are 88% variable, meaning that ABS assigns only 88% of the train crew costs incurred by BNSF to individual shipments"). Given Mr. Fapp was able to attribute the variable portions of those costs, his failure to offer any attribution for the fixed portions of the very same costs is unreasonable. Moreover, Mr. Fapp acknowledged that he himself in other cases provided expert opinions that included calculation of fixed costs. Fapp Dep. Tr. 30:11-31:1 (describing giving opinions), 41:2-5 (acknowledging that in making such an opinion, he could see using Mr. Baranowski's approach).

And Mr. Fapp's limited explanation cannot justify his approach. Even had Mr. Fapp consistently applied and justified his standard, that standard is incorrect. The Restatement requires

BNSF'S MOTION FOR SUMMARY JUDGMENT- 19
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

deduction of all costs that would not have been incurred without the trespassing enterprise. *See* Restatement (Third) of Restitution § 51, cmt. h. The Tribe improbably seeks disgorgement measured by the profits from 266,877 train cars but without accounting for any fixed costs related to those profits. BNSF's expert, by contrast, examined the total costs (variable and fixed) from fuel, crew, cars, trailers, locomotive depreciation and repairs, maintenance of property, loss and damage, and office support, among other sources, as well as both interest expenses and income taxes. Baranowski Opening at 7. All of these costs would have been lower if BNSF were operating 266,877 fewer train cars. Take "[f]ixed general office support expenses" which include "operations support," "information systems," and "law expenses." *Id.* at 8. These are fixed costs because they are not explicitly tied to any individual shipment, the way fuel or a particular crew might be. Nonetheless, when considering the volume of traffic over an almost ten-year period, BNSF would have spent less on each of these items—by employing fewer employees, for example—if the North Dakota-Fidalgo route evaporated.

Denying deduction of *any and all* fixed costs would grant a windfall to the Tribe. BNSF paid for additional operations support, information systems, legal expenses, facilities, and innumerable other things that were necessary to operate the North Dakota to Fidalgo route. Even if it were impossible, as the Tribe's expert claims, to assign fixed costs "to individual shipments," Fapp Rebuttal at 24, fixed costs must still be deducted from aggregation of shipments over a ten-year period lest the Court turn all of these costs into a penalty on BNSF. *See Rubber Co. v. Goodyear*, 76 U.S. (9 Wall.) 788, 802–03 (1869) (allowing "deductions from profits, for bad debts, for rents, and interest paid" as well as "for the market value of the materials" and "the usual salaries of the managing officers" but not "extraordinary salaries" and unreasonable repairs). As Mr. Baranowski explains, this is the approach employed by the STB, which accounts for total operating

BNSF'S MOTION FOR SUMMARY JUDGMENT- 20
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

expenses in its own proceedings and requires BNSF to report its total costs to the STB on an annual basis. *See* Baranowski Rebuttal at 13.

Finally, it is telling that Mr. Fapp admits that his definition of profit including only variable costs does not comport with the commonly understood definition of "accounting profit." Fapp Dep. Tr. 43:1-3. Moreover, Mr. Fapp admitted that when he prepared financial reports as an employee of a short-line railroad, he accounted for total costs plus interest and income tax in reporting net profit. *See* Fapp Dep. Tr. 7:23-8:4.

Here, the movement from North Dakota to Fidalgo generated the profit it did only because of the legitimate time and labor of BNSF and its thousands of employees and the costs—whether fixed or variable—that were incurred to support that profit. The Court should accordingly grant summary judgment adopting BNSF's measure of profitability and rejecting the Tribe's measure.

### C. The Tribe's Supplemental Enrichment Measurements Are Erroneous.

In the case of restitution for a conscious, willful trespass, the defendant is "liable for supplemental enrichment in the form of interest, rent, or other measure of use value." Restatement (Third) of Restitution § 53(1). Because the purpose of restitution is not to punish, but to eliminate gains earned by the defendant, the appropriate measure of this supplemental enrichment is ordinarily the interest in fact gained from the use of the proceeds, not a hypothetical estimate. *See id.* § 53, cmt e ("When liability in restitution stems from the claimant's payment of money to the defendant," prejudgment interest is usually available, but "[e]lsewhere the issue of prejudgment interest must be decided by reference to general principles of unjust enrichment."). Even where supplemental enrichment must be estimated, it cannot include gains "unduly remote" from the trespass itself, *id.* § 51(5)(a), and must exclude "profits attributable to the defendant's 'special or unique efforts,'" *Siebel v. Scott*, 725 F.2d 995, 1002 (5th Cir. 1984). If evidence of the trespasser's

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

actual supplemental enrichment is missing, the Restatement suggests that the applicable pre-judgment interest rate can, in some circumstances, be an appropriate alternative value to measure supplemental enrichment. Restatement (Third) of Restitution § 53, cmt. e.

Here, the Tribe fails to carry its burden to prove its entitlement to a measure of supplemental enrichment. The Tribe's expert does not attempt to discern the supplemental enrichment gained in fact from BNSF's profits. Testimony suggests that BNSF would invest any surplus profits in its cash reserves in low-yield money market accounts. *See* Lawrence Decl., Ex. F (Candace Palmarozzi Dep. Tr.) 57:25-58:1. That rate would have been straightforward to calculate based on "the actual interest rate BNSF earned on its cash reserve deposits over the relevant timeframe," as BNSF's expert explains. Baranowski Opening at 28.

Even the estimates the Tribe's expert does provide are unrealistic and would improperly award the Tribe the benefit of unduly remote gains not attributable to the trespass itself. For example, the Tribe's pre-tax "cost of capital" measure—which ranges from 9.85% to 17.06% per annum—reflects the "U.S. railroads' return on investment." *See* Fapp Opening at 27. Such a return is based on the hypothesis that BNSF actually invested all its proceeds from the trespass in capital assets. But Mr. Fapp made no inquiry and has no idea what use BNSF made of its profits from its trespass. Fapp Dep. Tr. 83:8-18. Moreover, as Mr. Baranowski explains, "Mr. Fapp's use of a *pre-tax* cost of capital rate is inappropriate and ignores the undisputed fact that BNSF paid a portion of the profits earned for the trespass shipments over the Easement as income taxes." Baranowski Rebuttal at 28 (emphasis added). A pre-tax measure is thus not appropriate to determine supplemental enrichment.

The Tribe's expert's hypothetical measures of market returns—5% to represent "modest" gains and 10% to resemble investment in the S&P 500—are also unjustified, as there is no

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

indication that BNSF invested the relevant funds in the market. *See* Fapp Opening at 26. In fact, as noted above, the evidence is to the contrary. *See* Palmarozzi Dep. Tr. 57:25-58:1.

Moreover, a cost of capital measure would be disproportionate to the Tribe's injury. The Tribe has lost, at most, the fair market value BNSF should have paid per the terms of the Easement: the $7.3 million calculated as contract damages by Mr. Baranowski. But the outsized returns the Tribe seeks would provide enormous returns on an already enormous sum of profits, those returns being generated by BNSF's country-wide business with tens of thousands of employees and unique expertise. Permitting the Tribe to recover damages based on such profits, which are earned remotely from the trespass and as a result of distinct business efforts, would be akin to allowing recovery from profits generated by the hotel near the underground cave in *Edwards*—which the Restatement explains is not permitted. *See* Restatement (Third) of Restitution § 51, cmt. f, ill. 13; *supra* at n.3. And the policy consequences of adopting the Tribe's approach would be harmful, as it would lead to an anomaly where a plaintiff who delays in seeking to stop a trespass would *increase* their recovery, even though a plaintiff's delay in bringing suit should *decrease* the plaintiff's interest award. *See, e.g.*, *United States v. Consol. Edison Co. of N.Y., Inc.*, 452 F. Supp. 638, 659 (S.D.N.Y. 1977) ("[P]laintiff's long delay in filing this action militates against any award of interest."), *aff'd*, 580 F.2d 1122 (2d Cir. 1978).

Based on ordinary principles of restitution, the supplemental enrichment should be limited to what BNSF actually received—the interest rate on cash reserves during the relevant timeframe. In the alternative, the Court should rule out the Tribe's cost of capital measure, which is "unduly remote" from the trespass, and represents the separate, legitimate investments of BNSF.

## IV.    CONCLUSION

The Court should grant summary judgment in favor of BNSF on damages, rejecting the

BNSF'S MOTION FOR SUMMARY JUDGMENT- 23
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Tribe's claim of entitlement to 100% of the profits for the entire route. In the alternative, the Court should grant partial summary judgment and hold that the only genuine issue of material fact remaining is which of the apportioned measures of damages presented by BNSF's expert is the most appropriate.

I certify that this memorandum contains 7,878 words, in compliance with the Local Civil Rules.

DATED this 29th day of March, 2024.

PACIFICA LAW GROUP LLP

By: /s/ Paul J. Lawrence
      Paul J. Lawrence, WSBA #13557
      Kai A. Smith, WSBA #54749
      Meha Goyal, WSBA #56058

*Attorneys for Defendant BNSF Railway*

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750