HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SWINOMISH INDIAN TRIBAL
COMMUNITY, a federally recognized
Indian Tribe,

                                    Plaintiff,

        v.

BNSF RAILWAY COMPANY, a
Delaware corporation,

                                    Defendant.

No. 2:15-cv-00543-RSL

DEFENDANT BNSF RAILWAY
COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION TO
PARTIALLY EXCLUDE EXPERT
TESTIMONY OF MICHAEL
BARANOWSKI

NOTED ON MOTION
CALENDAR:
April 26, 2024

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................2

III.    ARGUMENT ....................................................................................................4

       A.      Mr. Baranowski's Opinions On Alternative Routes and BNSF's
            Capital Charge Are Appropriate Rebuttal Testimony. ........................... 5

       B.      Mr. Baranowski's Conclusions Are Not Speculative, Unreliable, or
            Irrelevant. ................................................................................................ 9

IV.     CONCLUSION.................................................................................................12

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI- i
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I.     INTRODUCTION

Two of the most significant disputes between the parties at this stage of the litigation are at issue in the Tribe's Motion to Partially Exclude Expert Testimony of Michael Baranowski, BNSF's expert. The first concerns whether the Tribe is entitled to disgorgement of all of the profits from the entirety of the 1,500 mile route from North Dakota to Fidalgo or to disgorgement of only a portion of those profits. The parties' experts—Baranowski for BNSF and Daniel Fapp for the Tribe—disagreed on this question in their opening reports: Mr. Fapp calculated disgorgement measured by the profits from the entire route, while Mr. Baranowski provided several different measures of apportionment. In rebuttal, part of Mr. Baranowski's critique of Mr. Fapp's opinion is that Mr. Fapp failed to acknowledge that a significant portion of BNSF's profits should be attributed to transport over BNSF's network that does not involve crossing the Easement. The Tribe seeks to exclude Mr. Baranowski's critique. But that critique is classic rebuttal testimony undermining the Tribe's expert's opinion. Indeed, Mr. Fapp opined on exactly the same issue (but reached the opposite conclusion), speculating that, absent trespass over the Easement, "there would be no unit train crude oil delivery from North Dakota to Fidalgo." Fapp Rebuttal, Dkt. No. 235-3, at 42. Moreover, the fact that BNSF was able to deliver Bakken Crude to Marathon/Tesoro's Fidalgo refinery is known and not disputed. There is no basis to exclude that part of Mr. Baranowski's rebuttal opinion.

The second issue of dispute concerns whether the calculation of BNSF's profits should take into account BNSF's total operating costs (i.e. variable and fixed), as Mr. Baranowski opines, or only BNSF's attributed variable costs (i.e. "contribution"), as Mr. Fapp opines. In rebuttal, Mr. Baranowski criticizes Mr. Fapp's opinion of how BNSF uses "contribution" and does so in part by explaining that BNSF does not rely on "contribution" alone in its pricing of particular

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI - 1
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

movements. Rather, BNSF also adds a capital charge in determining pricing, which demonstrates that BNSF does not see "contribution" itself as a proxy for determining the profitability of a particular movement. The concept of a capital charge is not new to the Tribe. Trial Exhibit 13 shows the capital charge that BNSF attributed to the Tesoro/Marathon movement when BNSF first considered that business. And capital charge is one of the elements found in BNSF's ABS system, which was provided to the Tribe and used by Mr. Fapp to determine contribution. There is no basis to exclude Mr. Baranowski's discussion of capital charge in his rebuttal report.

Finally, the Tribe also suggests that Mr. Baranowski's testimony is speculative and unreliable, but this argument misunderstands the purpose of Mr. Baranowski's discussion of alternative routes and the capital charge. Mr. Baranowski was, contrary to the Tribe's argument, not asking the Court to determine or adjust profits based on the ability to earn a profit on alternative routes or based on the capital charge. Instead, these opinions served to rebut Mr. Fapp's premise that BNSF would have earned *no* profits from the route in a counterfactual world and that BNSF uses only contribution to assess pricing or profitability of a particular movement. Mr. Baranowski's rebuttal of Mr. Fapp's testimony on these two points is proper and should not be excluded.

## II.   BACKGROUND

The parties exchanged expert reports simultaneously on December 15, 2023. BNSF's expert, Michael Baranowski, apportioned damages from BNSF's trespass and estimated disgorgement-related damages of up to $9,759,010. Baranowski Opening, Dkt. No. 235-2, at 3. By contrast, the Tribe's expert, Daniel Fapp, did not apportion damages and instead gave estimates starting at $634,957,555 based on his calculation of profits earned over BNSF's entire 1,500 mile route that included the 0.7 miles of the Easement. Fapp Opening, Dkt. No. 235-1, Ex. 3

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI - 2
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The experts disagreed in their rebuttal reports as to whether this key methodological decision—whether to apportion profits or not—was appropriate. For instance, Mr. Fapp suggested that apportionment could not be done in a non-arbitrary way, and that it was not appropriate to rely on the factually analogous *Bad River* case because of purported "distinctions in operations and economics between the pipeline in the [*Bad River*] case and BNSF's handling of the issue traffic." Fapp Rebuttal at 40. And Mr. Fapp emphasized his view that an apportionment would be improper given that "as BNSF testified, the trains moving to Fidalgo could not directly reach the refinery if they could not cross the Easement. Simply put, there would be no unit train crude oil delivery from North Dakota to Fidalgo and therefore no unit trains crossing the Easement over the Reservation." *Id.* at 42.

Conversely, Mr. Baranowski criticized Mr. Fapp's failure to apportion. Mr. Baranowski explained that "Mr. Fapp's report relies on a presumption that does not comport with settled principles of apportionment by failing to apportion any profits to BNSF's lawful conduct and identify what portion of BNSF's profit would have been realized in the absence of the trespass." Baranowski Rebuttal, Dkt. No. 235-4, at 15. Mr. Baranowski explained that railroads are "network industries" and that "every mile of BNSF's route" between North Dakota and Washington "contributes at some level to the profitability of providing the end-to-end transportation service and, accordingly, every mile must be recognized as generating some portion of the profits." *Id.* at 15–16. To "put into perspective why attributing all profits related to BNSF's trespass to the Easement is nonsensical," Mr. Baranowski: (1) examined the profits BNSF has earned by moving crude traffic over BNSF rail to destinations other than Fidalgo, *see id.* at 17–19; and (2) explained that BNSF continues to move crude oil to Fidalgo by moving shipments by rail to Portland,

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI - 3
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Oregon, and then to Fidalgo by barge, earning a similar but somewhat reduced profit compared to the direct shipments by rail to Fidalgo, *see id.* at 19–21.

The experts also disagreed in their opening reports on whether some measure of fixed costs (in addition to variable costs) should be allocated to the trespassing shipments and deducted from the revenues associated with those shipments to calculate the disgorgement award. Mr. Baranowski opined that a proper measure of profits would account for such fixed costs, *see* Baranowski Opening at 6, while Mr. Fapp opined that "fixed costs are not relevant to this analysis," *see* Fapp Opening at 15. In contrast, Mr. Fapp opined that "contribution" was the only measure BNSF utilized to measure the profitability of a particular movement in BNSF's network. In Mr. Baranowski's rebuttal report, Mr. Baranowski criticized Mr. Fapp's understanding of the definition of profits, by observing that BNSF internally calculates profits using measures of total operating costs that are not limited to variable costs. And he critiqued Mr. Fapp's description of how BNSF uses "contribution." For instance, Mr. Baranowski observed that BNSF evaluates "newly proposed rail services" not just based on contribution, but also by applying a capital charge and that "[a]ny prospective new business is evaluated by BNSF in light of its ability to cover its variable cost and associated capital charges." Baranowski Rebuttal at 8.

### III.    ARGUMENT

The Tribe seeks to exclude two narrow aspects of Mr. Baranowski's opinions that appear in his rebuttal report—his testimony about alternatives to the trespass and about BNSF's capital charge—on the ground that these opinions are improper rebuttal and otherwise unreliable or irrelevant. The Tribe is wrong on both grounds.

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI - 4
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**A.      Mr. Baranowski's Opinions On Alternative Routes and BNSF's Capital Charge Are Appropriate Rebuttal Testimony.**

The Tribe seeks to prevent Mr. Baranowski from testifying "about any alternative routes to transport crude oil from North Dakota" or "about BNSF's capital charge." *See* Proposed Order, Dkt. No. 232-1. The Tribe first suggests that these opinions fall outside the scope of a permissible expert rebuttal report. *See* Plaintiff's Motion to Partially Exclude Expert Testimony of Michael Baranowski ("Tribe's Motion"), Dkt. No. 232, at 4–5.

This is mistaken. These opinions fall squarely within the range of a permissible rebuttal report, because they were "intended solely to contradict or rebut evidence on the same subject matter" identified by Mr. Fapp. Fed. R. Civ. Pro. 26(a)(2)(D)(ii). Courts have adopted "various approaches in drawing the line between rebuttal expert testimony and non-rebuttal testimony," *Theoharis v. Rongen*, No. C13-1345 RAJ, 2014 WL 3563386, at *3 (W.D. Wash. July 18, 2014), but under any of these approaches the challenged aspects of Mr. Baranowski's rebuttal were permissible. Under the broader approach adopted by some courts in this Circuit, "as long as an expert contradicts or rebuts the same 'subject matter' as an opposing party's expert, she has offered rebuttal evidence." *Id.* (quoting *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 637 (D. Haw. 2008)). Under a stricter approach employed by other courts in this Circuit, "expert testimony is not rebuttal testimony where it addresses an anticipated (or reasonably anticipatable) portion of the other party's case." *See id.* at *3–4 (collecting cases).

Under either formulation, Mr. Baranowski's rebuttal report is acceptable because he criticized an *actual premise* of Mr. Fapp's testimony. The core methodological difference between Mr. Fapp and Mr. Baranowski was whether apportionment is required. Every one of Mr. Fapp's calculations was premised on the assumption that it is not and that BNSF would not have earned

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

any profits absent the trespass, and that the entire value of BNSF's operation over a 1,500 mile route over ten years should be attributed to the Tribe's 0.7 mile Easement. Mr. Baranowski was therefore entitled to provide opinions that rebut this methodological approach, just as Mr. Fapp was entitled to (and did) provide his opinions on Mr. Baranowski's competing decision to apportion. *See Theoharis*, 2014 WL 3563386, at *4 (permitting testimony from rebuttal expert and noting: "that [the rebuttal expert] announced his own methodology for reaching his opinion is not improper, it is a requirement of valid expert testimony"). And since expert reports were served simultaneously, neither expert had the opportunity to critique the methodological decisions of the other expert in their own opening report.

As Mr. Baranowski explained, his opinions on alternative routes served "[t]o further put into perspective why attributing all profits related to BNSF's trespass to the Easement is nonsensical." Baranowski Rebuttal at 17. Mr. Baranowski did not offer these opinions as a freestanding basis for the Court's disgorgement calculation, and BNSF does not intend to offer such information at trial for that purpose. Rather, the fact that BNSF could have earned profits without trespassing by finding alternative routes to ship crude to Fidalgo, or by finding alternative destinations for the crude, demonstrates that Mr. Fapp's failure to engage in some sort of apportionment is unsound. Indeed, Mr. Fapp opined on very similar issues in his rebuttal report in direct contrast to Mr. Baranowski, arguing that railway networks operate differently from the pipeline networks at issue in *Bad River*, and that BNSF could not deliver crude oil from North Dakota to Fidalgo by train without unit trains crossing the Easement. Fapp Rebuttal at 42 ("Simply put there would be no unit train crude oil delivery from North Dakota to Fidalgo.").

Similarly, Mr. Baranowski's opinions on capital charges served to rebut Mr. Fapp's testimony that the term "contribution" equals "profits." In his opening report, Mr. Fapp opined

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI - 6
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

that "BNSF's profit associated with transporting traffic over the Easement is measured by the difference between BNSF's revenues generated by the movements and those movements' variable costs." Fapp Opening at 15. Mr. Baranowski's explanation of capital charges in his rebuttal report served to illustrate that BNSF, like other railroads, considers factors other than variable costs when determining whether a new route would be profitable. *See* Baranowski Rebuttal at 8–9.

It is instructive to compare the rebuttal report here with cases where rebuttal reports have been found to be improper, such as in the two cases cited by the Tribe. *See* Tribe's Motion at 5. In *Daly v. Far Eastern Shipping Co.*, a central question in the case was the validity of a report by the United States Navy. *See* 238 F. Supp. 2d 1231, 1239 (W.D. Wash. 2003), *aff'd sub nom. Daly v. Fesco Agencies NA Inc.*, 108 F. App'x 476 (9th Cir. 2004). The plaintiff's expert report identified flaws in the Navy's methodology and stated in a footnote that the expert "was in the process of conducting his own experiment," with results to be described "in a subsequent report." *Id.* The expert then produced these results in an addendum to his report. *Id.* at 1240. As the court noted, this addendum had nothing whatsoever to do with the defendant's opening expert report, and the expert "could not make new challenges to the [Navy] report" on rebuttal "that did not relate to [the defendant's expert's] opinions." *Id.* at 1240–41. Similarly, in *Theoharis*, "many of Defendant's expert reports were explicitly incomplete, in that the experts admitted that they had not reviewed critical medical records, evidence from Plaintiff himself describing the shooting incident at the core of the case, and other evidence necessary to form complete opinions." 2014 WL 3563386, at *1. When the defendant attempted to remedy these defects both in rebuttal reports from newly disclosed rebuttal experts and in new reports from the experts who had offered initial reports, the court held these reports contained improper rebuttal. *Id.* at *4–7.

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

In both *Daly* and *Theoharis*, then, the rebuttal reports involved completely novel analyses deployed to remedy an obvious deficiency in that expert's own opening report, rather than to engage with the premises and opinions articulated in the opposing expert's report. Here, by contrast, the contents of Mr. Baranowski's rebuttal report were directed solely at rebutting the methodology employed in Mr. Fapp's opening report. There is no basis to exclude Mr. Baranowski's testimony as outside the scope of rebuttal.

Finally, the Tribe suggests that BNSF was required to produce the information relied upon by Mr. Baranowski in discovery, citing Rule 26(a)(1)(A)(ii). Tribe's Motion at 6. Initially, information about capital charges was fully disclosed to the Tribe. Trial Exhibit 13 shows that BNSF's analysis of capital charges was considered in addition to contribution in assessing the new route to Tesoro's refinery. *See* Declaration of Paul J. Lawrence (Lawrence Decl.), Ex. A. In addition, the capital charges attributed to the route are part of the ABS information provided to the Tribe during discovery in Phase II of this case. Next, the alternative means of getting Bakken crude to Tesoro has been known to the Tribe and indeed has been proposed by the Tribe as an admitted fact in its proposed Phase II Pre-Trial Order. Lawrence Decl., Ex. B at 12–13. Regardless, as courts have held, "Fed. R. Civ. P. 26(a)*(2)*—and not 26(a)*(1)*—governs expert disclosures. Under that rule, 'the facts and data' considered by an expert in forming an opinion must be disclosed 'at the time and in the sequence that the court orders.'" *Newill v. Campbell Transp. Co.*, No. 2:12-cv-1344, 2015 WL 222430, at *2 (W.D. Pa. Jan. 14, 2015). As in *Newill*, Mr. Baranowski's rebuttal report was served on the day set by the Court, and the work papers for both Mr. Baranowski's and Mr. Fapp's rebuttal were exchanged the following week and prior to expert depositions. "This is the precise sequence envisioned by the Federal Rules" and the Tribe does not dispute that BNSF has followed it. *Id.*

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI - 8
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**B.** **Mr. Baranowski's Conclusions Are Not Speculative, Unreliable, or Irrelevant.**

In suggesting that Mr. Baranowski's opinions are speculative, unreliable, and irrelevant, the Tribe mischaracterizes the content and context of these opinions. To begin, the Tribe criticizes Mr. Baranowski's opinion that BNSF could have found alternative means to ship crude from North Dakota to Fidalgo, or to other destinations, as "wildly speculative." Tribe's Motion at 7. But the Tribe ignores Mr. Baranowski's explanation (which will be further supported by BNSF witness testimony at trial) that BNSF *currently* "continues to move unit train crude oil volumes to Fidalgo" by moving shipments "by rail from Fryburg, ND to Portland, OR, where it is then moved to the Fidalgo refinery by barge," and that "[t]his is the option BNSF has used since it stopped moving shipments over the Easement in 2021." Baranowski Rebuttal at 19. As noted above, that is not "speculative"; rather, it is admitted and is a reflection of what BNSF *in fact* does today. Similarly, the Tribe's suggestion that BNSF would not have been able to ship Tesoro crude to other Tesoro facilities is belied by the Tribe's own footnote, which observes that Marathon has 12 other refineries located across the West Coast, the Midwest, and the Gulf Coast.[1] *See* Tribe's Motion at 7 n.2.

Moreover, the Tribe misunderstands the purpose of Mr. Baranowski's rebuttal in criticizing him for not providing "the critical information about where, when, and in what quantities the crude oil would have been transported (if not to the Fidalgo refinery) or the rates that would have been

---

[1] The Tribe also suggests Mr. Baranowski's opinions on ongoing service to Fidalgo are unreliable because Mr. Baranowski stated that the "documentation provided by BNSF could not inform him where the significantly larger number of non-contract allowance shipments ended up after reaching Portland." Tribe's Motion at 9. But the Tribe admits in this same paragraph that Mr. Baranowski's core opinion—that crude oil may be shipped by barge to Fidalgo—is accurate. *See id.* (noting that "Mr. Baranowski understood that for a four-month period in 2020, BNSF transported crude by rail to Portland to be shipped by barge to Fidalgo Island (for which Marathon received a contract allowance to account for this additional barge expense)").

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI - 9
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

charged for such movements." *See* Tribe's Motion at 8. As Mr. Baranowski explained, his opinions show, contrary to Mr. Fapp's assumptions, that "attributing all profits related to BNSF's trespass to the Easement is nonsensical" and that, "[i]n a but-for world where BNSF were unable to transport crude oil over the Easement to Fidalgo, it is not reasonable to assume that BNSF would have foregone all profits from transporting that crude oil." Baranowski Rebuttal at 17, 19; *cf.* Fapp Rebuttal at 42 ("Simply put there would be no unit train crude oil delivery from North Dakota to Fidalgo."). These conclusions do not depend on the specific quantities of oil that would have been transported to Fidalgo or the rates that would have been charged absent access to the Easement. Rather, the fact that alternative routes were available provides one additional reason (out of many) why apportionment is required and why Mr. Fapp was wrong not to apportion. The Tribe does not offer any reason to doubt Mr. Baranowski's opinions on this point, let alone show that Mr. Baranowski's opinions rest on "merely assumptions and speculation." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The Tribe is also wrong to suggest that "what profits BNSF could have generated had it acted lawfully is irrelevant to determining BNSF's ill-gotten gains from its actual tortious conduct." Tribe's Motion at 8. As the Restatement explains, "the wrongdoer who is deprived of an illicit gain is ideally left in the position he would have occupied had there been no misconduct." Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. k. It is thus significant that the Tribe views as "undisputed" the "conclusion that if BNSF had not decided to consciously trespass over the Reservation, it could have devoted its locomotives and crew to other shipments that could also have generated some positive contribution." Tribe's Motion at 8. If this is true, then an unapportioned disgorgement is necessarily penal (and hence inconsistent with the Restatement)

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1  because it would put BNSF in a worse position than BNSF "would have occupied had there been

2  no misconduct." Restatement (Third) of Restitution § 51 cmt. k.

3       Finally, the Tribe mischaracterizes Mr. Baranowski's opinions on capital charges in a

4  similar manner. The Tribe suggests that "Mr. Baranowski opines that the substantial capital charge

5  *estimate* for *prospective* traffic must somehow be taken into account and deducted from revenues

6  to arrive at BNSF's actual beneficial gains," and the Tribe argues these opinions are therefore

7  irrelevant. Tribe's Motion at 9. But this was not Mr. Baranowski's contention. Rather, Mr.

8  Baranowski used the capital charge as one example of how BNSF internally evaluates the potential

9  profitability of a particular train movement, in order to rebut Mr. Fapp's suggestion that only

10  variable costs and revenues—contribution—are relevant to profitability of individual movements.

11  Mr. Baranowski did not offer the capital charge as a specific basis for this Court to calculate the

12  disgorgement award. This opinion is relevant to the question of whether only "contribution," or

13  contribution plus other costs, must be accounted for in calculating a disgorgement award, which

14  is a disputed issue. Both of Mr. Baranowski's challenged opinions, properly understood and

15  characterized, thus "logically advance a material aspect of [BNSF]'s case" and "do[] not include

16  unsubstantiated speculation and subjective beliefs"—they are relevant and reliable and there is no

17  basis for excluding them. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

18                                            ***

19       As a final matter, the Tribe does not move to exclude *any* aspect of Mr. Baranowski's

20  opening report, including his measures of apportioned profits. To the extent that the Court

21  determines that apportionment is required, as BNSF argues in its motion for summary judgment,

22  it is now undisputed that the only reliable record evidence of an appropriate disgorgement award

23  are the estimates set forth by Mr. Baranowski. The Tribe has offered no alternatives to Mr.

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI - 11
2:15-cv-00543-RSL

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Baranowski's figures, nor does it now argue that these figures should be excluded in advance of trial. For these reasons, should the Court conclude apportionment is required—which it is, for the reasons explained in BNSF's motion for summary judgment—then the Court should adopt one of Mr. Baranowski's measures.

### IV.     CONCLUSION

For the foregoing reasons, the Tribe's Motion should be denied.

I certify that this memorandum contains 3,639 words, in compliance with the Local Civil Rules.

DATED this 22nd day of April, 2024.

PACIFICA LAW GROUP LLP

By: *s/ Paul J. Lawrence*
    Paul J. Lawrence, WSBA #13557
    Kai A. Smith, WSBA #54749
    Meha Goyal, WSBA #56058

*Attorneys for Defendant BNSF Railway*

BNSF'S OPP. TO TRIBE'S MOT. TO PARTIALLY
EXCLUDE EXPERT TESTIMONY OF MICHAEL
BARANOWSKI - 12
2:15-cv-00543-RSL

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750