1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SWINOMISH INDIAN TRIBAL
COMMUNITY,

Plaintiff,

v.

BNSF RAILWAY COMPANY,

Defendant.

Cause No. C15-0543RSL

ORDER REGARDING
MOTIONS FOR SUMMARY
JUDGMENT

This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment on Disgorgement" (Dkt. # 229) and "BNSF Railway Company's Motion for Summary Judgment" (Dkt. # 233). Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial."

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 1

1  *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to

2  the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove*

3  *Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Summary judgment should be

4  granted where the nonmoving party fails to offer evidence from which a reasonable fact finder

5  could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir.

7  2019).

9       The Court has already determined that BNSF's trespass over the Swinomish Reservation

10  between September 2012 and May 2021 was willful, conscious, and knowing. The only issue to

11  be determined in this phase of the proceeding is the value of the benefits BNSF obtained as a

12  result of its interference with The Swinomish Indian Tribal Community's legally protected

13  property rights. Restatement (Third) of Restitution § 40, cmt. a.[1] Pursuant to Restatement

15  (Third) of Restitution § 51(4), a conscious trespasser is deemed to have been unjustly enriched

16  by, and must therefore disgorge, the amount of "the net profit attributable to the underlying

17  wrong."[2] The goal of restitution "is to eliminate profit from wrongdoing while avoiding, so far

---

[1] Federal common law governs an action for trespass on Indian lands, and that law generally comports with the consensus of states as summarized in the Restatements. *United States v. Milner*, 583 F.3d 1174, 1182 (9th Cir. 2009); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Pathology Lab'ys of Ark., P.A.*, 71 F.3d 1251, 1254 (7th Cir. 1995). Courts, including the United States Supreme Court, rely on the Restatement (Third) of Restitution to determine the contours of the equitable remedy of disgorgement, *see Liu v. SEC*, 591 U.S. 71, 79-80 (2020); *U.S. Commodity Futures Trading Comm'n v. Crombie*, 914 F.3d 1208, 1216 (9th Cir. 2019), and both parties cite the Restatement in support of their arguments.

[2] BNSF acknowledges that it cannot limit its liability for conscious, willful, and knowing trespass to "rent" or other contract-based damages.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 2

as possible, the imposition of a penalty." *Id*. The Supreme Court has stated that profit-based

equitable remedies for unjust enrichment – whether called restitution, disgorgement, or an

accounting – reflect the foundational principle that "it would be inequitable that [a wrongdoer]

should make a profit out of his own wrong.'" *Liu v. Securities and Exch. Comm'n*, 591 U.S. 71,

79-80 (2020) (quoting *Root v. Railway Co*., 105 U.S. 189, 207 (1882)). Any such award must,

however, be limited "to the net profits from wrongdoing, that is, 'the gain made upon any

business or investment, when both the receipts and payments are taken into the account.'" *Liu*,

591 U.S. at 83 (quoting *Providence Rubber Co. v. Goodyear*, 9 Wall. 788, 804 (1870)). The

Restatements also set forth the evidentiary burdens of the land owner and the trespasser. In this

case, The Swinomish Indian Tribal Community ("the Tribe") has the initial "burden of

producing evidence permitting at least a reasonable approximation of the amount of the

wrongful gain." Restatement (Third) of Restitution § 51(5)(d). Once that hurdle is met, BNSF

bears the "[r]esidual risk of uncertainty in calculating net profit." *Id*. *See also* Restatement

(Third) of Restitution § 51, cmt. g, illustration 14 (noting that the risk of uncertainty in

accounting for profits attributable to the wrongdoing is assigned to the wrongdoer).

      Having reviewed the memoranda, declarations, and exhibits submitted by the parties and

having heard the arguments of counsel, the Court finds as follows:

      (1) BNSF argues that it is entitled to summary judgment on the Tribe's claim for

restitution because the Tribe has not met its initial "burden of producing evidence permitting at

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 3

least a reasonable approximation of the amount of the wrongful gain." Restatement (Third) of Restitution § 51(5)(d). The Court disagrees. The Tribe has come forward with evidence to support a colorable claim to all of the net profits BNSF received from the March Point refineries for transporting cars and trains that exceeded the terms of the Easement Agreement. The Tribe's expert has carefully reviewed the shipping records and excluded from the profit calculation any amounts received for transporting authorized traffic. Thus, only profits arguably related to and arising from the trespass are claimed.

With regards to the unit trains, the profits BNSF earned were obtained directly and solely from a line of business (carrying Bakken crude oil by rail from North Dakota to the refineries between 2012 and 2021) that could be negotiated and provided only because BNSF ignored the Easement limitations and trespassed over the Reservation. BNSF was paid for completed movements to the refineries, not for completed miles or segments of the route. Bringing unit trains 1490 miles from the Bakken formation to the Swinomish Reservation would have generated no income, much less profit. In these circumstances, a restitutionary award of all net profits arising from that line of business would arguably take only what was earned as a result of the trespass and restore the *status quo*. *See Liu*, 591 U.S. at 80.[3]

---

[3] The copyright and patent cases on which BNSF relies do not compel a different result. In order "to eliminate the possibility of profit from conscious wrongdoing," the Restatements provide for apportionment of profits only when some part of the money earned "would have been realized in the absence of the wrong." Restatement (Third) of Restitution § 51, cmt. e and cmt. g. Plaintiff plausibly argues that BNSF would not have been paid anything, much less made a profit, if the unit trains had stopped on the east side of the Reservation, regardless of the distances previously traveled. The claim asserted in this case is not that a particular element of a movie or product was wrongfully used and that the court must tease out how much profit would have been realized had the element not been

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 4

Because the Tribe has produced evidence supporting a reasonable approximation of the amount of BNSF's wrongful gain, the burden shifts to BNSF to show that some portion of the profit "would have been realized in the absence of the wrong" and that apportionment of the net profits on a per mile or per segment basis is warranted. Restatement (Third) of Restitution § 51, cmt. g. BNSF has met its burden, producing evidence from which a reasonable trier of fact could find that some profit would have been realized even if it had not engaged in the wrongful

---

incorporated, but rather that an essential component of a unitary service, without which the service could not be offered at all, was taken without permission. *See Cincinnati Car Co. v. N.Y. Rapid Transit Corp.*, 66 F.2d 592, 593 (2nd Cir. 1933) (noting that the problem of apportionment arises when "the invention is not of the article as a whole, but of a small detail."). There is no reason to believe that, were the evidence to show that the stolen idea or invention were the *sine qua non* of the product and profits, equity would require attribution or apportionment in an intellectual property case. In fact, the Copyright Act makes clear that the infringer must pay all revenues arising from the infringement unless he affirmatively shows that there were "elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).

Even if apportionment were mandatory in intellectual property cases, the Restatements acknowledge a distinction between infringers of intellectual property and trespassers:

> In its allowance of deductions for defendants' contributions to the assets or profits subject to disgorgement, the law of restitution appears to be more solicitous of some conscious wrongdoers than of others. Intentional converters and trespassers are uniformly denied any allowance for improvements made to the claimant's property. See Illustrations 17-18 and § 10, Illustration 5. Yet deliberate infringers who make profitable use of others' intellectual property are liable only for the profits attributable to the infringement—obtaining, in effect, a credit for their legitimate contributions to the end result. See § 42, Illustration 16.

Restatement (Third) of Restitution § 51, cmt. h.

Nor does BNSF's claim that the failure to apportion profits based on distance would be a penalty win the day. Where "the wrongdoer . . . is deprived of an illicit gain [and] left in the position he would have occupied had there been no misconduct," disgorgement, while burdensome, is not punitive. *Id.*, cmt. k. If, as the Tribe posits, BNSF would not have been able to earn any profit except for its willingness to consciously trespass across the Reservation, the loss of all of the net profits would leave BNSF where it started and serve the deterrence purpose for which a restitution remedy is designed.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 5

trespass. The routes BNSF used to get rail shipments from Epping and Fryburg, North Dakota, to Fidalgo Bay, Washington, go through Vancouver, Washington, at which point the shipments head north through Seattle to the March Point refineries. Dkt. # 236-1 at 10. Since 2021, the rail shipments stop at the Columbia River, where the crude oil is loaded onto vessels for the last leg of the journey. Dkt. # 236-3 at 5 and 20. *See also* Tr. Testimony of James Tangaro (3/21/23). According to its expert, Michael R. Baranowski, BNSF continues to make at least some profit on the shipment of Bakken crude to the March Point refineries without trespassing on the Reservation. BNSF has raised a triable issue of fact regarding apportionment.

(2) The parties and their experts fundamentally disagree on how to calculate "net profits" for a restitutionary award under the Restatements. The underlying data is largely undisputed. The parties have reached an agreement regarding the number of trespassing cars that operated over the Easement between 2012 and 2021, the revenues generated by those cars, and the costs BNSF attributes to those shipments in its activity-based costing system ("ABS"). Dkt. # 231-4. The parties also agree that the ABS system captures what are commonly referred to in the railway industry as variable costs, *i.e.*, those that "vary with changes in traffic volumes that can be attributed directly to individual shipments." Dkt. # 236-3 at 6. Daniel L. Fapp, the Tribe's expert, calculated the net profits subject to disgorgement by subtracting from gross revenues the ABS costs, which include but are not limited to costs related to fuel, crews, railway maintenance, loss and damage, unloading/loading, drayage, administration, and haulage. Dkt. # 231 at 20. BNSF's expert, Mr. Baranowski, argues that the calculation overstates BNSF's net

profits because it does not take into account interest or fixed costs that BNSF has to pay to run

and manage the overall railway business and without which BNSF could not have provided

services to the March Point refineries at all.

Mr. Baranowski's calculation is not consistent with the Restatement, which uses the

phrase "marginal costs" to describe the deductions a defendant is allowed to take. *See*

Restatement (Third) of Restitution § 51, cmt. h ("As a general rule, the defendant is entitled to a

deduction for all marginal costs incurred in producing the revenues that are subject to

disgorgement."). Marginal cost is the change in total costs that results from producing one

additional unit and can be approximated by the average variable cost of the unit. *Janich Bros. v.*

*Am. Distilling Co*., 570 F.2d 848, 857 n.8, 858 & n.11 (9th Cir. 1977) (citing Areeda & Turner,

*Predatory Pricing and Related Practices Under Section 2 of the Sherman Act*, 88 Harv. L .Rev.

697, 700 & n.13, 716-17 & n.42 (1975)). Mr. Baranowski acknowledges that the ABS tool

"derives the difference between revenue and only those expenses that are deemed to vary

directly with changes in traffic volumes and are thus assignable to individual shipments." Dkt.

# 236-3 at 9. Thus, Mr. Fapp's use of the variable costs reflected in ABS to reduce BNSF's

revenues to net profits is a reasonable starting point.

While it is entirely possible that a cost or expenditure varied with individual movements

across the Easement but was not captured in ABS, BNSF has not identified them. Instead, Mr.

Baranowski looked to BNSF's internal financial accounting methods, which allocate fixed

operating expenses (such as capital expenditures, depreciation, and interest) across the

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 7

company's business units. Dkt. # 236-3 at 9. He then relied on independent accounting

principles, economic theory, industry standards, and Surface Transportation Board methods to

assign the appropriate business unit's fixed operating costs to the trespassing shipments in

proportion to their variable costs, switch events, financial metrics, and/or train miles. *Id*. at 13;

Dkt. # 236-1 at 9. While BNSF's allocations to business units undoubtedly provide a more

comprehensive view of each unit's financial picture and Mr. Baranowski's assignments to

individual shipments more accurately approximate all of the direct and indirect expenses

associated with providing the contracted services, the non-variable operating costs are not

thereby converted into marginal costs. Restatement (Third) of Restitution § 51, cmt. h is very

clear that only marginal costs are deductible: "the defendant will not be allowed to deduct

expenses (such as ordinary overhead) that would have been incurred in any event, if the result

would be that defendant's wrongful activities – by defraying a portion of overall expenses –

yield an increased profit from defendant's operations as a whole." The record shows that ABS

includes the portion of fixed-cost categories (such as wages, railway maintenance, and

administration) that changes as a result of individual rail movements. Any further deductions of

overall expenses would allow BNSF to use the revenues earned from its wrongdoing to defray

the general, non-variable costs of its business, an outcome that is specifically rejected by the

Restatements.

　　　　BNSF asserts that, over time, it undoubtedly incurred capital expenditures, depreciation,

legal expenses, and other costs related to servicing the March Point refineries that would have

been avoided if it had not run approximately a quarter million trespassing cars over the Easement. The argument appears to be that the trespass lasted such a long time that it is only reasonable to offset the profits earned between 2012-2021 by a proportionate share of the overhead that was assigned to the Industrial Products business unit during that period. Assuming, for purposes of this analysis, that the marginal cost calculation discussed in the Restatements can be made with respect to an entire line of business or years of operations, BNSF merely lists certain expenses (maintenance and vacation pay were mentioned at oral argument) that probably varied somewhat after a decade of trespass. Mr. Baranowski has not attempted to quantify those costs, instead using cost adjustment factors to spread the overhead that was assigned to the Industrial Products business segment to "gross-up the variable costs in ABS to total cost levels." Dkt. # 236-1 at 9. BNSF has the burden of showing the costs incurred in generating the revenues at issue and bears the risk of any uncertainty in the calculations. In the absence of BNSF's assistance in identifying an amount that (a) was not included in ABS and (b) fluctuated relative to the movement of cars or trains to the March Point refineries (either on an individual or cumulative level), the Court would have to guess what additional, non-variable expenses were incurred in order to operate the North Dakota to Fidalgo Bay route. The task is further complicated by the fact that BNSF made some lawful use of the Easement through the relevant time frame and would presumably have incurred non-variable expenses in support of that use. BNSF has not provided evidence to support its claim that the revenues earned as a

result of the trespass should be reduced by any allocation of fixed costs beyond that which is already included in ABS.

(3) The taxes paid on the income arising from the trespass are generally not deductible under Restatement (Third) of Restitution § 51, cmt. h and Illustration 23. BNSF has not shown any reason to depart from the general rule in this case.

(4) A person who is found liable for the disgorgement of profits is also liable for "supplemental enrichment in the form of interest, rent, or other measure of use value, to the extent that such further enrichment is either realized in fact or appropriately presumed." Restatement (Third) of Restitution § 53(1). A conscious trespasser is liable for assets received as a direct product of the trespass (in this case, the net profits discussed above) as well as the consequential gains obtained as a result of its subsequent investment or use of those profits. *Id.* at § 53(2) and (3). "[A]ny question of liability for supplemental enrichment is necessarily decided so as to exclude the possibility that the defendant might retain a benefit from the underlying wrong. The usual consequence is that use value at a market rate is readily imputed, even in the face of evidence that the actual benefit to the defendant was something less." *Id.*, cmt. b. *See also id.*, Illustration 4 (conscious wrongdoer held liable for market interest on the funds unlawfully withheld or the amount of interest actually earned on the funds, whichever is greater).

At the request of counsel, Mr. Fapp calculated potential returns on investment assuming a 5% rate of return, a 10% rate of return, and a rate of return equal to the annual railroad industry

cost of capital. Dkt. # 231 at 28-32. BNSF rightly points out that there is no factual basis for these return assumptions because Mr. Fapp made no inquiry regarding what BNSF actually did with the profits from the Bakken crude shipments. The evidence in the record suggests that the funds could have been used for capital purchases/improvements, to pay down debt, to pay shareholder dividends, or as cash reserves held in a money market account. Dkt. # 235-6 at 10-11. Mr. Baranowski (also at the request of counsel) calculated use value based on the one-year treasury rate used for post-judgment interest calculations in federal court. Dkt. # 236-3 at 28-29. He further calculated use value based on the actual interest rate BNSF earned on its money market funds during the relevant period. *Id*. at 29.

BNSF argues (a) that the Tribe is not entitled to a measure of supplemental enrichment because it did not attempt to calculate the gains BNSF actually made from investing or using the profits earned; (b) that any calculation of supplemental enrichment which does not account for income taxes paid is inaccurate; and (c) that ordering restitution related to capital projects undertaken would deprive BNSF of remote benefits attributable to its employees and their unique expertise.

(a) Pursuant to the Restatements, BNSF is liable for supplemental enrichment that approximates its actual returns or the market rate, whichever is greater. While it appears that the Tribe will be unable to show the investments and uses to which BNSF actually put its ill-gotten profits, BNSF is presumed to have acted reasonably to obtain at least the market rate. There is evidence in the record regarding returns BNSF did, or could reasonably be expected to, obtain,

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 11

such as the interest rate on BNSF's money market account, the more general returns of the S&P 500, Washington's pre-judgment interest rate, the federal post-judgment interest rate, and industry calculations of capital costs and returns on investment. Under federal common law, "the district courts retain discretion to choose the appropriate rate in a given case," *United States v. Texas*, 507 U.S. 529, 536 (1993), and "any question of liability for supplemental enrichment [will be] necessarily decided so as to exclude the possibility that the defendant might retain a benefit from the underlying wrong," Restatement (Third) of Restitution § 53, cmt. b.). The Court finds that the Tribe may pursue its claim for supplemental enrichment.

(b) To the extent that BNSF paid taxes on the profits earned from the trespass, the amount available for investment or use must be reduced. The supplemental enrichment calculation will be based on post-tax dollars.

(c) BNSF argues that allowing the Tribe to disgorge profits on investments BNSF made with ill-gotten profits would be too remote in that they resulted from distinct business efforts and the unique expertise of BNSF's employees. Dkt. # 233 at 28. The argument flies in the face of the Illustrations provided in Restatement (Third) of Restitution § 53, in which conscious wrongdoers are required to disgorge the consequential gains made on their own initiative through use of another's assets in business (Illustration 1), through lease of another's assets (Illustration 2), and through investments made with the assets (Illustrations 4, 8, and 9). BNSF's reliance on the cave illustration is misplaced. The illustration discusses and defines the proceeds of the trespass, not consequential gains. Had Edwards used the profits from the cave

exhibition to build and operate the nearby hotel, the illustration would be more apt. In those circumstances, the initial profits would be disgorged as proceeds of the wrong, while at least some portion of the profits from the hotel would be recoverable as consequential gains.

For all of the foregoing reasons, the Tribe's motion for summary judgment (Dkt. # 229) is GRANTED in part and DENIED in part. BNSF's motion for summary judgment (Dkt. # 233) is also GRANTED in part and DENIED. There are genuine issues of fact regarding the appropriate allocation of profits arising from the trespass that preclude summary judgment on that issue. The evidence currently before the Court suggests that some distance-based apportionment can be found that will ensure that BNSF is not penalized but will also not leave BNSF is a better position than it would have occupied had there been no trespass.[4] With regards to the adjustment from gross revenues to net profit, BNSF will be permitted to deduct only those expenses that are captured in ABS. BNSF may not deduct other non-variable costs, such as

---

[4] The Court acknowledges that *Bad River Band of the Lake Superior Tribe of Chippewa Indians v. Enbridge Energy Co*., No. 19-cv-602-wmc, Dkt. # 521 at 2 (W.D. Wis. Oct. 7, 2022), arguably stands for the proposition that a pro-rata award of a trespasser's profits based on distance is sufficient to deprive the trespasser of the profits obtained through the trespass. Restitution is an equitable remedy, however: the facts as presented by the parties impact both the balance of considerations and choice of remedy. The Honorable William M. Conley was faced with a situation in which there was no middle option between awarding all profits earned from a 640-mile long pipeline or awarding a proportional share based on the length of the pipeline on plaintiffs' property. The record here is different and allows for a more nuanced approach. In addition, Judge Conley's analysis emphasized the scope and nature of plaintiff's injury, allowed the trespass to continue, and ultimately compelled a license for a knowing and conscious trespass. *Id.* at 3; *Bad River Band of the Lake Superior Tribe of Chippewa Indians v. Enbridge Energy Co*., No. 19-cv-602-wmc, 2023 WL 4043961, at *2 (June 1, 2023). None of these aspects of the analysis appear to be consistent with the Restatements.

overhead and interest, or income tax. BNSF's consequential gains will be calculated on those

amounts that were available for investment and/or use after taxes were paid.

Dated this 20th day of May, 2024.

Robert S. Lasnik
United States District Judge