1
2
3
4
5
6                       UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
7                                  AT SEATTLE
8

9   SWINOMISH INDIAN TRIBAL               Cause No. C15-0543RSL
    COMMUNITY,
10                                        ORDER GRANTING IN PART
                         Plaintiff,       PLAINTIFF'S MOTION TO
11                                        EXCLUDE REBUTTAL
                  v.                      OPINIONS OF MICHAEL
12                                        BARANOWSKI
    BNSF RAILWAY COMPANY,
13
                         Defendant.
14

15
16          This matter comes before the Court on "Plaintiff's Motion to Partially Exclude Expert

17   Testimony of Michael Baranowski." Dkt. # 232. Plaintiff argues that certain opinions set forth in

18   Mr. Baranowski's rebuttal report were not timely disclosed, are speculative, and/or are

19
     irrelevant. Having reviewed the expert reports and the memoranda submitted by the parties, the
20
21   Court finds as follows:

22      **A. Timeliness of Disclosures**
23
24          Plaintiff's expert, Daniel L. Fapp, opined in December 2023 that 100% of the net profits

25   received for transporting rail cars from North Dakota to the March Point refineries was profit

26
27
28
     ORDER GRANTING IN PART PLAINTIFF'S
     MOTION TO EXCLUDE REBUTTAL OPINIONS - 1

arising from the unlawful use of Reservation lands[1] and that net profits are calculated as BNSF does it internally, by subtracting the variable costs of a particular rail movement from the net revenues generated thereby. Dkt. # 231 at 15 and 18-21. Mr. Baranowski simultaneously opined that the net profits attributable to the trespass were only a small percentage of the total received (providing three alternative calculations centered largely on the fact that the Easement covered less than a mile out of the 1,500 mile movement) and that net profits must take into account not only variable costs, but also fixed costs, interest, and income taxes. Dkt. # 236-1 at 8-9 and 12-18. Given the stark differences of opinion regarding both matters, it is not surprising that Mr. Baranowski felt the need to offer an alternative, compromise assessment of the profits attributable to the trespass and to show that BNSF internally estimated the capital costs that would be incurred if it agreed to provide rail service from North Dakota to Fidalgo Bay. While the line between opening and rebuttal testimony is not always clear, Mr. Baranowski's "new" opinions go to specific aspects of Mr. Fapp's analysis and can properly be considered as rebuttal.

Plaintiff also argues that admission of the opinions will prejudice the Tribe because it has not had an opportunity to address or otherwise rebut them. The facts that BNSF made estimates of the capital improvements that would be necessary to provide the service Tesoro requested and that Bakken crude oil can be transported to the March Point refineries without crossing the

---

[1] Plaintiff asserts that Mr. Fapp offered no opinions regarding apportionment, but the logical inference arising from his statements is that no apportionment is appropriate.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO EXCLUDE REBUTTAL OPINIONS - 2

Reservation were known at the time of the liability trial in March 2023.[2] The fundamental nature of the experts' disputes regarding allocation and the calculation of net profits has been clear for months, as have the issues that will be decided by the Court in this phase of the litigation.  Both experts will testify at trial and will have the opportunity to address rebuttal arguments and respond to questioning from counsel and the Court. While any opinions or clarifications offered in rebuttal contain some element of surprise, in the circumstances presented here, plaintiff is not prejudiced by consideration of Mr. Baranowski's discussions of alternative routes and capital charges.

### B. Relevance and Reliability

Plaintiff argues that, even if Mr. Baranowski's rebuttal opinions were timely disclosed, his opinions regarding alternative routes are speculative and all of the challenged opinions are irrelevant. Federal Rule of Evidence 702 provides that expert testimony is admissible if:

> (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

*City of Pomona v. SQM N. Am. Corp*., 750 F.3d 1036, 1043 (9th Cir. 2014). As construed in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., Rule 702 tasks a district judge with "ensuring

---

[2] As discussed below, Mr. Baranowski's opinion that Bakken crude transportation is entirely fungible, such that BNSF would have found some other refinery to take the same volume and pay the same price, is speculative and unreliable. The Court therefore need not resolve the issue of whether the introduction of that opinion into evidence would cause prejudice.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO EXCLUDE REBUTTAL OPINIONS - 3

that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."
509 U.S. 579, 597 (1993). Scientific evidence is reliable when "the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003). But "[t]he inquiry envisioned by Rule 702 is ... a flexible one," and where an expert offers non-scientific testimony, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind" the testimony. *Porter v. Martinez*, 64 F.4th 1112, 1127 (9th Cir. 2023) (quoting *Daubert*, 509 U.S. at 594, and *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F. 3d 998, 1017 (9th Cir. 2004)). The analysis "should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 588).

> Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology. The court is a gatekeeper, not a fact finder. Accordingly, the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury. If the proposed testimony meets the thresholds of relevance and reliability, its proponent is entitled to have the jury decide upon its credibility, rather than the judge. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury. This Court has previously noted that shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO EXCLUDE REBUTTAL OPINIONS - 4

*Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (internal quotation marks,

citations, and alterations omitted).[3] "Basically, the judge is supposed to screen the jury from

unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013).

### 1. Other Markets for Bakken Crude Oil

Mr. Baranowski opines that "the market for crude oil was dynamic" from 2012 to 2021,

and in an alternative universe where BNSF complied with the terms of the Easement, it "likely

would have negotiated for a contract that would have allowed [it] to deliver the crude oil to an

alternative destination in its rail network." Dkt. # 236-3 at 19-20. In Mr. Baranowski's

estimation, then, "[t]he profits BNSF earned on unit train crude oil shipments to other

destinations provides an appropriate benchmark for the profits BSNF would have realized in the

absence of the trespass." Dkt. # 236-3 at 19.

No support is offered for any of these statements: there are no citations to industry

publications or statistics, no analysis of BNSF or refinery capacity during the relevant time

frame, and no evidence of unmet service requests. What we do know is that BNSF contracted to

provide transportation services to the Tesoro refinery at March Point, and the profits at issue

arose out of those agreements. Mr. Baranowski does not identify another Tesoro refinery that

had the capacity to take the volume of crude that was shipped to Fidalgo Bay, and the fact that

---

[3] Of course, in this case, the Court is both the gatekeeper and the trier of fact. As such, the
undersigned has a dual role in first assessing the admissibility of expert testimony and later assessing the
credibility of the expert and the weight to be given his testimony.

Tesoro felt the need to build unit train off-loading facilities at its March Point refinery suggests that capacity elsewhere was insufficient. Nor does Mr. Baranowski identify another oil company that had requested transportation services from the Bakken formation but had been refused because BNSF lacked capacity. The fact that BNSF transported crude oil to destinations other than Fidalgo does not tend to show that crude could simply have been shipped somewhere else or that BNSF would have earned the profits at issue in this case (or some unstated portion thereof) even if Tesoro had not requested service to its March Point refinery. While absolute certainty is not required, expert opinions must be based on "sufficient facts or data" to allow the formation of a reliable conclusion as opposed to conjecture or speculation. Fed. R. Ev. 702(3). Mr. Baranowski's opinion that the profits generated from the North Dakota to Fidalgo Bay service were not causally related to the trespass because BNSF could have and would have shipped the crude oil elsewhere does not meet this standard and is inadmissible.

## 2. Non-Trespassing Means of Transporting Crude to Fidalgo Bay

Mr. Baranowski further opines that BNSF could have offered Tesoro an alternative route for getting Bakken crude oil from North Dakota to Fidalgo Bay, one which would not involve crossing the Easement but which would have reduced BNSF's net profits by slightly more than $200 per car.[4] This opinion is based on what actually happened in 2021 when BNSF stopped

---

[4] The rebuttal report asserts that the reduction in net profits would have been 20% if the unit trains stopped at the Columbia River and the crude were loaded onto barges for the last leg of the journey. At page 20 of the rebuttal report, Mr. Baranowski provides net profit per car data from 2021 which works out to a reduction of profits of $204 per car ($1,031 - $827 = $204). At page 18, however,

trespassing over the Easement. Mr. Baranowski's calculations, while subject to cross

examination and possible corrections if barge and rail costs varied throughout the decade of the

trespass, are based on facts and data, are not speculative, offer a reliable means of showing the

portion of the profits that were attributable to the trespass as opposed to the lawful use of rails

connecting the Bakken formation to the Columbia River, and are clearly relevant to the issue of

apportionment.

### 3. Capital Charges

In response to Mr. Fapp's assertion that BNSF uses its ABS data to evaluate the revenues

and variable costs associated with a given movement (Dkt. # 231 at 19), Mr. Baranowski points

out that when contemplating prospective new business, BNSF estimates the capital that would

be consumed in providing the requested rail service as part of its decision-making process (Dkt.

# 236-3 at 9-10). The relevance of this information is minimal. Estimates of expenses generated

while a new business opportunity is being evaluated may or may not be accurate.[5] Absent some

evidence of the capital expenditures that were actually incurred as part of servicing the March

Point refineries, the fact finder would have to speculate as to appropriate deductions from gross

_____

he asserts that the 2021 net profit per car was $1,058, which works out to a reduction of profits of
$211.60 per car ($1,058 x .2 =  $211.60).

[5] Evidence presented in the Phase I trial showed that BNSF initially estimated that transporting
Bakken crude from North Dakota to Fidalgo Bay would require approximately $5 million in capital
expenditures and generate annual revenues of approximately $65-$75 million. Mr. Baranowski,
however, asserts that BNSF anticipated $161.6 million in capital expenditures attributable to the unit
train shipments to Fidalgo. Dkt. # 236-4 at 9. The average annual revenue that was actually earned from
the shipments was $97 million. Dkt. # 236-3, Table 4.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO EXCLUDE REBUTTAL OPINIONS - 7

revenues. More importantly, regardless of the accuracy of BNSF's predictions, only the variable or marginal costs of capital are relevant to the calculation of net profits. *See* Order Regarding Motions for Summary Judgment at 6-9. BNSF asserts that capital charges are one of the elements incorporated into the ABS system, and neither it nor Mr. Baranowski has identified any capital cost or portion thereof that varied with each unit of production but was not included in the ABS system. Because it appears that any marginal capital costs have already been considered in Mr. Fapp's calculations of net profits, Mr. Baranowski's general assertions regarding how BNSF considers capital costs when evaluating prospective new business are unhelpful.

//

//

//

//

//

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO EXCLUDE REBUTTAL OPINIONS - 8

1        For all of the foregoing reasons, plaintiff's motion to exclude the rebuttal opinions of Mr.

2  Baranowski is GRANTED in part and DENIED in part. Mr. Baranowski may testify regarding

3

4  the net profits that would have been realized had BNSF avoided the Easement and off-loaded

5  the Bakken crude at the Columbia River from 2012-2021. He may not, however, speculate

6  regarding BNSF's ability to service other refineries had it never agreed to carry Bakken crude to

7

8  Fidalgo Bay, nor may he opine regarding capital cost estimates that were not actually incurred

9  and do not reflect the variable or marginal costs of carrying crude to the March Point refineries.

 

        Dated this 20th day of May, 2024.

 

 

 

                                Robert S. Lasnik
                                United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO EXCLUDE REBUTTAL OPINIONS - 9